UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                                          Chapter 11

COSTA HOLLYWOOD PROPERTY OWNER, LLC[1]                    Case No. 19-22483-AJC

     Debtor.
_____/


**FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF THE LIQUIDATING CHAPTER 11 PLAN PROPOSED BY THE DEBTOR**

MELAND RUSSIN & BUDWICK, P.A.
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
James C. Moon, Esquire
Florida Bar No. 938211
jmoon@melandrussin.com
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida, 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for the Debtor in Possession*

Dated: April 22, 2020

---

[1] The Debtor's current mailing address is 777 North Ocean Drive, Hollywood, FL 33019. The Debtor's EIN is 47-4883778.

<u>DISCLAIMER</u>

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF *THE LIQUIDATING CHAPTER 11 PLAN PROPOSED BY THE DEBTOR* OF EVEN DATE HEREWITH (AS DEFINED HEREIN, THE "<u>PLAN</u>"),[2] AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO SOLICITATION OF VOTES TO ACCEPT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN *IN THEIR ENTIRETY* BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN SECTION VIII OF THIS DISCLOSURE STATEMENT ("RISK FACTORS IN CONNECTION WITH THE PLAN") BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. A COPY OF THE PLAN IS ANNEXED HERETO AS **EXHIBIT "1"**. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH DOCUMENTS. ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. ALTHOUGH THE PLAN PROPONENT BELIEVES AND HAS MADE EVERY EFFORT TO ENSURE THAT THIS SUMMARY PROVIDES ADEQUATE INFORMATION WITH RESPECT TO THE PLAN, IT DOES NOT PURPORT TO BE COMPLETE AND IS QUALIFIED TO THE EXTENT IT DOES NOT SET FORTH THE ENTIRE TEXT OF THE PLAN. IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE SUMMARY OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT, THE PLAN SHALL CONTROL. ACCORDINGLY, EACH HOLDER OF A CLAIM SHOULD REVIEW THE PLAN IN ITS ENTIRETY.

THE DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE LIQUIDATING PLAN OF THE

---

[2] Unless otherwise defined, capitalized terms used herein shall have the meaning ascribed to such terms in the Plan (defined herein).

DEBTOR AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR.

AS TO ANY CONTESTED MATTERS OR OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT WILL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR WILL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR AND DEBTOR-IN-POSSESSION IN THIS CHAPTER 11 CASE.

NO HOLDER OF A CLAIM SHOULD RELY ON ANY INFORMATION RELATING TO THE DEBTOR, ITS PROPERTY OR THE PLAN OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE ATTACHED EXHIBITS. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND (I) THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF, AND (II) THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.

THIS DISCLOSURE STATEMENT AND THE PLAN ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING THE PLAN. NO REPRESENTATIONS HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT CONCERNING THE DEBTOR OR THE PLAN, EXCEPT AS EXPLICITLY SET FORTH IN THE DISCLOSURE STATEMENT. APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT INDICATE THAT THE BANKRUPTCY COURT RECOMMENDS EITHER ACCEPTANCE OR REJECTION OF THE PLAN NOR DOES SUCH APPROVAL CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT OF THE FAIRNESS OR MERITS OF THE PLAN OR OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND MAY NOT HAVE BEEN PREPARED IN ACCORDANCE WITH ACCOUNTING PRINCIPLES GENERALLY ACCEPTED IN THE UNITED STATES.

ALTHOUGH THE ATTORNEYS, ADVISORS AND OTHER PROFESSIONALS EMPLOYED BY THE PLAN PROPONENT HAVE ASSISTED IN PREPARING THIS DISCLOSURE STATEMENT BASED UPON FACTUAL INFORMATION AND ASSUMPTIONS RESPECTING FINANCIAL, BUSINESS, AND ACCOUNTING DATA FOUND IN THE BOOKS AND RECORDS OF THE DEBTOR, THEY HAVE NOT INDEPENDENTLY VERIFIED SUCH INFORMATION AND MAKE NO REPRESENTATIONS AS TO THE ACCURACY THEREOF. THE ATTORNEYS, ADVISORS

AND OTHER PROFESSIONALS EMPLOYED BY THE PLAN PROPONENT SHALL HAVE NO LIABILITY FOR THE INFORMATION IN THIS DISCLOSURE STATEMENT.

PRIOR TO THE EFFECTIVE DATE, THE DEBTOR DOES NOT INTEND TO UNDERTAKE A GENERAL CLAIMS OBJECTION PROCESS WITH RESPECT TO GENERAL UNSECURED CLAIMS, BUT THE DEBTOR RESERVES THE RIGHT TO OBJECT TO ANY CLAIM PRIOR TO THE EFFECTIVE DATE. ON AND AFTER THE EFFECTIVE DATE OF THE PLAN, THE LIQUIDATING TRUSTEE (AS FURTHER DEFINED HEREIN) WILL BE VESTED WITH FULL AUTHORITY TO UNDERTAKE THE CLAIMS OBJECTION PROCESS WITH RESPECT TO ALL CLAIMS THAT HAVE NOT BEEN PREVIOUSLY RESOLVED BY COURT ORDER OR OTHERWISE (INCLUDING, BUT NOT LIMITED TO, GENERAL UNSECURED CLAIMS). THE ACTUAL AMOUNTS OF THE DISTRIBUTIONS UNDER THE PLAN TO THE HOLDERS OF ALLOWED GENERAL UNSECURED CLAIMS THAT ARE OBJECTED TO BY THE DEBTOR OR THE LIQUIDATING TRUSTEE, AS THE CASE MAY BE, WILL BE DETERMINED AFTER COMPLETION OF THE CLAIMS OBJECTION PROCESS.

ALL OF THE PROJECTED RECOVERIES TO CREDITORS ARE BASED UPON THE ANALYSES PERFORMED BY THE PLAN PROPONENT AND ITS PROFESSIONALS. ALTHOUGH THE PLAN PROPONENT HAS MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN AND IN THE EXHIBITS ATTACHED HERETO, THE PLAN PROPONENT CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE INFORMATION.

THE PLAN PROPONENT BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RESULT FOR ALL HOLDERS OF CLAIMS. THE PLAN PROPONENT ALSO BELIEVES THAT THE PLAN WILL ENABLE THE DEBTOR TO ACCOMPLISH THE OBJECTIVES OF LIQUIDATING UNDER CHAPTER 11 AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND ITS CREDITORS. THUS, IT IS THE OPINION OF THE PLAN PROPONENT THAT THE TREATMENT OF CREDITORS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED THROUGH A CHAPTER 7 LIQUIDATION OF THE DEBTOR.

IF YOU ARE ENTITLED TO VOTE TO APPROVE THE PLAN, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THIS DISCLOSURE STATEMENT. THE PLAN PROPONENT STRONGLY URGES CREDITORS TO VOTE TO ACCEPT THE PLAN.

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR EQUITY INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE TRANSACTIONS

OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. NEITHER THIS DISCLOSURE STATEMENT NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS.

## TABLE OF CONTENTS

Pages

I.  INTRODUCTION..................................................................................................... 1

   A.  **Overview of Chapter 11 and the Plan Confirmation Process** ...................................... 1

   B.  **Recommendation of the Plan Proponent and Plan Overview** ..................................... 2

   C.  **Summary of Voting Requirements for Plan Confirmation** ......................................... 2

      1.  In General. ....................................................................................................... 2

      2.  Impaired Classes Entitled to Vote. ................................................................. 3

      3.  Unimpaired Classes Deemed to Accept the Plan. .......................................... 3

      4.  Certain Classes Are Deemed to Reject the Plan and Do Not Vote. ............... 3

      5.  Voting Deadline................................................................................................ 4

      6.  Voting Instructions. ......................................................................................... 4

      7.  Ballots. ............................................................................................................. 4

      8.  Additional Information. ................................................................................... 4

II.  BACKGROUND INFORMATION ....................................................................... 4

   A.  **Overview of the Debtor's Business** ........................................................................... 4

   B.  **Organizational Structure and Management of the Debtor** ........................................... 5

III.  EVENTS LEADING TO THE CHAPTER 11 FILINGS.................................... 5

   A.  **The Reasons for the Debtor's Chapter 11 Case** ......................................................... 5

   B.  **Prepetition Secured Loan from 777 N. Ocean Drive, LLC ("*Secured Lender*")** ...... 5

   C.  **Pending Litigation** ...................................................................................................... 6

IV.  EVENTS OCCURRING DURING DEBTOR'S CHAPTER 11 CASE ...................... 7

   A.  **Bankruptcy Filings and First Day Orders and Other Initial Matters** ...................... 7

   B.  **Schedules and Statements**............................................................................................ 8

   C.  **Retention and Employment of Bankruptcy Professionals**........................................... 9

   D.  **No Appointment of Creditors' Committee** ................................................................. 9

   E.  **Post Petition DIP Loan from Secured Lender**............................................................. 9

   F.  **Bid Procedures/Sale Motion, Marketing, Auction and Sale** ....................................... 9

   G.  **Exclusivity Extension** .............................................................................................. 10

   H.  **Turnover Action** ...................................................................................................... 10

V.  EXPLANATION OF CHAPTER 11 .................................................................. 11

   A.  **Overview of Chapter 11** ........................................................................................... 11

   B.  **Liquidation Plan** ...................................................................................................... 12

   C.  **Bar Date for Filing Proofs of Claim** ......................................................................... 12

**TABLE OF CONTENTS**
**(continued)**

| | | | |
|---|---|---|---|
| D. | | Definition of Impairment | 13 |
| E. | | Confirmation of Plan | 13 |
| | 1. | Solicitation of Acceptances | 13 |
| | 2. | Requirements for Confirmation of the Plan | 14 |
| | 3. | Acceptances Necessary to Confirm the Plan | 15 |
| | 4. | Cramdown | 15 |
| VI. | | DESCRIPTION OF THE PLAN | 16 |
| A. | | Introduction | 16 |
| B. | | Designation of Claims and Equity Interests/Impairment | 16 |
| C. | | Treatment of Claims and Interests | 17 |
| | 1. | Administrative Expense Claims | 17 |
| | 2. | Priority Claims | 17 |
| | 3. | Claims for Statutory Fees | 18 |
| | 4. | Protective Advance Claim | 18 |
| D. | | Classification, Impairment and Treatment of Claims and Equity Interests | 18 |
| | 1. | Classification | 18 |
| | 2. | Separate Classes and Treatment | 22 |
| | 3. | Claims May Be in More Than One Class | 22 |
| | 4. | Summary of Claims | 23 |
| E. | | Rejection of Executory Contracts | 24 |
| F. | | Rejection Claims | 24 |
| G. | | Injunction Under the Plan | 24 |
| VII. | | MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN | 24 |
| A. | | Introduction | 24 |
| B. | | Sale of the Collateral | 25 |
| C. | | Secured Lender Settlement | 25 |
| D. | | Purpose of the Liquidating Trustee | 27 |
| E. | | Authority and Limitations of Liquidating Trustee | 27 |
| F. | | Operations of the Liquidating Debtor | 30 |
| G. | | Compensation of Liquidating Trustee | 32 |
| H. | | Dissolution of Corporate Existence | 32 |
| I. | | Termination of Employees/Limitation of Liability/Release of Professionals | 32 |
| VIII. | | RISK FACTORS IN CONNECTION WITH THE PLAN | 32 |

## TABLE OF CONTENTS
### (continued)

| | | | |
|---|---|---|---|
| A. | Bankruptcy Considerations | | 33 |
| B. | Claims Estimates May Be Incorrect | | 33 |
| C. | No Duty to Update Disclosures | | 33 |
| D. | Representations Outside this Disclosure Statement | | 33 |
| E. | No Admission | | 34 |
| F. | Tax and Other Related Considerations | | 34 |
| IX. | LEGAL PROCEEDINGS | | 34 |
| A. | Retention of Causes of Action | | 34 |
| X. | ALTERNATIVES TO PLAN AND LIQUIDATION ANALYSIS | | 36 |
| A. | Dismissal | | 36 |
| B. | Chapter 7 Liquidation | | 36 |
| C. | Alternative Plan | | 38 |
| XI. | Injunction and Releases | | 38 |
| XII. | CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | | 39 |
| A. | United States Federal Income Tax Consequences to the Debtor | | 39 |
| B. | United States Federal Income Tax Consequences to Claimholders of Debtor | | 40 |
| 1. | Gain or Loss Recognition on the Satisfaction of Claims | | 40 |
| 2. | Character of Gain or Loss | | 40 |
| 3. | Information Reporting and Backup Withholding | | 40 |
| C. | Importance of Obtaining Professional Tax Assistance | | 41 |
| XIII. | CONCLUSION | | 42 |

EXHIBITS

Exhibit 1      First Amended Chapter 11 Plan of Liquidation Proposed by the Debtor

Exhibit 2      Liquidation Analysis

## I.    INTRODUCTION

On September 19, 2019 (the *"Petition Date"*), Costa Hollywood Property Owner, LLC (the *"Debtor"*) filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as now in effect or as hereafter amended (the "*Bankruptcy Code*"), and an order for relief under section 301 of the Bankruptcy Code was entered in this case (the *"Chapter 11 Case"*).

The Debtor (the "*Plan Proponent*") submits this first amended disclosure statement (the "*Disclosure Statement*"), pursuant to section 1125 of the Bankruptcy Code, and rule 3017 of the Federal Rules of Bankruptcy Procedure, as now in effect or as hereafter amended (the "*Bankruptcy Rules*"), in connection with the solicitation of votes on its proposed *First Amended Chapter 11 Plan of Liquidation* of even date herewith (the "*Plan*") and attached hereto as "**Exhibit 1**". The Plan Proponent believes that confirmation and implementation of the Plan is in the best interests of the Debtor's estate (the *"Estate"*), its Creditors and all other interested parties.

This Disclosure Statement and the other documents described herein are being furnished by the Plan Proponent to Creditors in the Debtor's Chapter 11 Case pending before the United States Bankruptcy Court for the Southern District of Florida (the "*Bankruptcy Court*"). This Disclosure Statement is intended to provide adequate information of a kind, and in sufficient detail, to enable the Debtor's Creditors to make an informed judgment about the Plan, including whether to accept or reject the Plan. This Disclosure Statement sets forth certain information regarding: (i) the Debtor's prepetition operating and financial history; (ii) the Debtor's need to file for relief under chapter 11 of the Bankruptcy Code; (iii) significant events that have occurred during the Debtor's Chapter 11 Case; (iv) the terms of the Plan; (v) the manner in which distributions will be made under the Plan; (vi) certain effects of confirmation of the Plan; (vii) certain risk factors associated with the Plan; and (viii) the confirmation process and the voting procedures that holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

This Disclosure Statement is subject to the Bankruptcy Court's approval, as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of each of the Classes whose votes are being solicited to make an informed judgment with respect to the Plan. ALL CREDITORS ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE TO ACCEPT OR REJECT THE PLAN.

The summary of the Plan provided herein is qualified in its entirety by reference to the Plan. To the extent that the information provided in this Disclosure Statement and the Plan (including any Plan Supplements) conflict, the terms of the Plan (including any Plan Supplements) will control. Terms not otherwise specifically defined herein will have the meanings attributed to them in the Plan. Each definition in this Disclosure Statement and in the Plan includes both the singular and plural. Headings are for convenience or reference and shall not affect the meaning or interpretation of this Disclosure Statement.

### A.    Overview of Chapter 11 and the Plan Confirmation Process

Chapter 11 of the Bankruptcy Code allows a debtor to reorganize or to liquidate and wind up its affairs for the benefit of the debtor and its creditors. Upon the commencement of a chapter 11 case, an estate is created comprised of all the legal and equitable interests of a debtor as of the

date the petition is filed, and the current owner(s) and management typically remain in control of the debtor as a debtor-in-possession. The debtor remains in possession of its property without the oversight of a trustee.

Pursuant to section 362 of the Bankruptcy Code, the filing of a chapter 11 petition imposes an automatic stay of all attempts by creditors or third parties to collect or enforce prepetition claims against a debtor or otherwise interfere with its property or business, unless relief from the automatic stay is obtained from the bankruptcy court.

The Bankruptcy Code is designed to encourage the parties-in-interest in a chapter 11 case to negotiate the terms of a chapter 11 plan so that it may be confirmed. A chapter 11 plan is the vehicle for satisfying or otherwise addressing the claims against and the interests in the debtor. Confirmation of a chapter 11 plan makes it binding on the debtor and all of its creditors and the prior obligations owed by the debtor to such parties are compromised in exchange for the obligations specified in the plan.

After a chapter 11 plan has been filed, the holders of impaired claims against the debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the debtor to file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical, reasonable investor to make an informed judgment about the plan. This Disclosure Statement is presented to holders of Claims against the Debtor entitled to vote under section 1125 of the Bankruptcy Code in connection with the Plan Proponent's solicitation of votes on the Plan.

**B.    Recommendation of the Plan Proponent and Plan Overview**

The Plan contemplates that the Debtor will be liquidated and dissolved, and a liquidating trust will be formed and a Liquidating Trustee (as defined and discussed in Section VII(C) hereof) will be appointed to prosecute Causes of Action, including Avoidance Actions (in the Liquidating Trustee's business judgment), and make distributions to creditors.

The Plan Proponent believes that the Plan will allow for a prompt resolution of the Debtor's Chapter 11 Case and will achieve the best possible result for the General Unsecured Creditors who are classified in Class 8 of the Plan. The following is a brief overview of the Plan and is qualified by reference to the Plan itself.

The Plan Proponent believes the Plan is in the best interest of Creditors and the Plan Proponent urges all Creditors who are entitled to vote on the Plan to vote in favor of the Plan.

**C.    Summary of Voting Requirements for Plan Confirmation**

1.    In General.

Creditors should refer only to this Disclosure Statement and the Plan to determine whether to vote to accept or reject the Plan. Under the Bankruptcy Code, only holders of Claims that are "impaired" are entitled to vote to accept or reject the Plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (1) the plan leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles

the holder thereof; or (2) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan, among other things, cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

An impaired class of creditors votes to accept a plan if the holders of at least two-thirds (2/3) in dollar amount, and more than one-half (1/2) in number, of those creditors that actually cast ballots vote to accept such plan. Those classes that are not impaired are not entitled to vote and are deemed to accept a plan. Those classes that are not entitled to a distribution and will not retain property under a plan are deemed to reject a plan.

A class of equity interest holders is deemed to accept a plan if the holders of at least two-thirds (2/3) in amount of those interest holders that actually cast ballots vote to accept such plan. A class of equity interest holders is impaired, not entitled to vote, and deemed to reject the plan if the plan provides that they will retain no property and receive no distributions under the plan.

Any Claim in an Impaired Class that is subject to a pending objection or is scheduled as unliquidated, disputed or contingent is not entitled to vote unless the holder of such Claim has obtained an order of the Bankruptcy Court temporarily allowing the Claim for the purpose of voting on the Plan. All claims against the Debtor remain subject to review by parties-in-interest, including the Debtor and the Liquidating Trustee, and to objection, whether or not such claims are entitled to vote on the Plan as of the Voting Record Date (defined below). To the extent any claim is referred to herein as "Allowed," it is only for purposes of providing a description of such claim's treatment under the Plan *if ultimately allowed*. In the event an objection is filed to a claim deemed "Allowed" for purposes of voting on the Plan, that claim may later be disallowed by the Court (with the exception of the claims of Secured Lender).

Pursuant to the Bankruptcy Code, only creditors who actually vote on the Plan will be counted for purposes of determining whether the required number of acceptances have been obtained. Failure to deliver a properly completed ballot by the Voting Deadline (as defined herein) will result in an abstention; consequently, the vote will neither be counted as an acceptance or rejection of the Plan.

2.      Impaired Classes Entitled to Vote.

Claims in Classes 3, 4, 5, 6 and 8 are Impaired. Accordingly, only the Claims in Classes 3, 4, 5, 6 and 8 are entitled to vote to accept or reject the Plan.

3.      Unimpaired Classes Deemed to Accept the Plan.

Claims in Classes 1, 2 and 7 are Unimpaired and the vote of holders of such Claims in these Classes will not be solicited.

4.      Certain Classes Are Deemed to Reject the Plan and Do Not Vote.

Under Bankruptcy Code section 1126(g), Class 9 (Equity Interests) will receive no Distributions and is deemed to have rejected the Plan. The vote of holders of such Equity Interests in this Class will not be solicited.

5.    Voting Deadline.

If a Creditor holds a Claim classified in a voting Class of Claims under the Plan, the Creditor's acceptance or rejection of the Plan is important and must be in writing and submitted on time. The record date for determining which Creditors may vote on the Plan is [**TBD by Court Order**], (the "***Voting Record Date***"). The voting deadline is [**TBD by Court Order**] at 4:00 p.m. (prevailing Eastern Time) (the "***Voting Deadline***").

6.    Voting Instructions.

IN ORDER FOR A VOTE TO BE COUNTED, THE BALLOT MUST BE PROPERLY COMPLETED IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND RETURNED TO THE CLERK OF THE BANKRUPTCY COURT, 301 NORTH MIAMI AVENUE, ROOM 150, MIAMI, FLORIDA 33128, BY THE VOTING DEADLINE AT THE ADDRESS PRINTED ON THE BALLOT.

7.    Ballots.

Creditors must use only the Ballot or Ballots sent to them with the notice of this Disclosure Statement. If a Creditor has multiple Claims that it is entitled to vote, it should receive multiple Ballots. IF A CREDITOR RECEIVES MORE THAN ONE BALLOT, THEN THE CREDITOR SHOULD ASSUME THAT EACH BALLOT IS FOR A SEPARATE CLAIM AND SHOULD COMPLETE AND RETURN ALL OF THEM.

8.    Additional Information.

If you have any questions about (i) the procedure for voting on your Claim, (ii) the package of materials that you have received, (iii) the amount of your Claim, (iv) obtaining or replacing a Ballot, or (v) obtaining an additional copy of the Plan, this Disclosure Statement, or any exhibits to such documents, please contact the Debtor's counsel, Meland Russin & Budwick, P.A., 3200 Southeast Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131, ATTN: James C. Moon, telephone: 305.358.6363, email: jmoon@melandrussin.com or ATTN: Peter D. Russin, telephone: 305.358.6363, email: prussin@melandrussin.com.

## II.    BACKGROUND INFORMATION

### A.    Overview of the Debtor's Business

The Debtor developed a condominium hotel project commonly known as "Costa Hollywood Beach Resort" located at 777 North Ocean Drive, in Hollywood, Florida (the "***Condo-Hotel***"). The Condo-Hotel contains 307 residential units, 15 commercial units, and 1 Shared Facilities Unit and related improvements. The Debtor (i) owns 43 residential units, 9 commercial units and 1 Shared Facilities Unit (ii) controls the Condominium Association[3] and shares common

---

[3] Costa Hollywood Condominium Association, Inc. The Debtor is the developer, and the Condominium Association has not been turned over to the condominium owners.

operating expenses with the Condominium Association,[4] and (iii) has established a rental management program pursuant to which the Debtor acts as the rental agent for "Third Party Controlled Units"[5] that are under contract for the "Rental Management Program" from time to time, and for the Owner Controlled Units. All units within the Rental Management Program are operated as hotel rooms in the Costa Hollywood Beach Resort.

### B.    Organizational Structure and Management of the Debtor

The Debtor is a Delaware limited liability company authorized to do business in Florida. The Debtor's President is Moses Bensusan who is the manager and sole member of Liberty Grande, LLC, a Florida limited liability company which is the sole member of Costa Hollywood Development Holdings LLC, a Delaware limited liability company which is the manager and sole member of the Debtor.

## III.    EVENTS LEADING TO THE CHAPTER 11 FILINGS

### A.    The Reasons for the Debtor's Chapter 11 Case

As a result of its liquidity constraints, the Debtor has been unable to pay its expenses as they became due, including its obligations under certain loan agreements. Thus, the Debtor filed this Chapter 11 proceeding to effectively and efficiently facilitate a sale of substantially all of the Debtor's assets in order maximize the return to creditors through a bankruptcy plan of liquidation.

### B.    Prepetition Secured Loan from 777 N. Ocean Drive, LLC ("*Secured Lender*")

On or about July 1, 2016, the Debtor obtained a loan from Secured Lender in the original principal sum of up to $70,000,000 (the "*Loan*"). The Loan is evidenced by an Amended and Restated Construction Loan Note dated July 1, 2016, executed by the Debtor in favor of Secured Lender (the "*Note*") in the principal sum of up to $70,000,000.

As security for the repayment of the Note, Debtor executed and delivered to Secured Lender a Certificate of Future Advance and Amended and Restated Mortgage and Security Agreement ("*Mortgage*") which was recorded on July 20, 2016.

Between August 22, 2017 and September 30, 2018, the Debtor and the Secured Lender entered into three successive forbearance agreements (collectively, the "*Forbearance Agreements*") with the final forbearance agreement being the Third Amended Forbearance Agreement (the "*Final Forbearance Agreement*") dated September 30, 2018.

Pursuant to the Mortgage, the Debtor granted the Secured Lender a continuing security interest in and lien on, among other things, all of the Debtor's real and personal property and fixtures which it now owns or are in existence or hereafter acquired or created, wherever located, of whatever kind and description, tangible or intangible, including without limitation, all money,

---

[4] The Condominium Association has its own budget that is paid for by all condominium unit owners, including the Debtor as developer. Debtor allows the owners the right to use the "Shared Facilities," and condominium unit owners pay an assessment to use the Shared Facilities.

[5] The condominium units owned or controlled by third parties (and which are not owned by Owner), from time to time.

instruments, documents, deposit accounts, chattel paper, accounts and general intangibles, as these terms are defined in the Uniform Commercial Code ("***Collateral***").

As of the Petition Date, the Debtor owes the Secured Lender approximately $47,189,513.79, plus interest. The Collateral is valued at approximately $50,525,000.

### C.    Pending Litigation

On March 24, 2016, Design Engineering Group, LLC filed a complaint to foreclose a construction lien against the Debtor, case styled *Design Engineering Group, LLC v. Costa Hollywood Property Owner, LLC*, case no. CACE-16-005451, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

On March 13, 2017, Beauchamp Construction Co., Inc. filed a complaint to foreclose a construction lien against the Debtor, case styled *Beauchamp Construction Co., Inc. v. Costa Hollywood Property Owner, LLC*, case no. CACE-17-004911, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

On May 22, 2018, Costa Investors, LLC filed a counterclaim for damages against the Debtor in the case styled *Costa Hollywood Property Owner, LLC v. Alexey Burya, Costa Investors Manager, LLC & Costa Investors, LLC*, case no. CACE-18-011130, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

On August 22, 2018, Professional Blinds Systems Inc. filed a complaint for damages against the Debtor, case styled *Professional Blind Systems Inc. v. Costa Hollywood Property Owner, LLC, et al.,* case no. 2018-028519-CA-01, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

On November 16, 2018, National Service Group & Associates, Inc. filed a complaint for damages against the Debtor, case styled *National Service Group & Associates, Inc. v. Costa Hollywood Property Owner, LLC*, case no. CACE-18-026915, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

On December 27, 2018, Betje Investments, LLC filed a complaint for rescission and damages against the Debtor, case styled *Betje Investments, LLC v. Costa Hollywood Property Owner*, case no. 2018-042794-CA-01, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

On January 8, 2019, New Continent Ventures filed an amended complaint in the case styled *New Continent Ventures, Inc. v. Liberty Grande LLC, Costa Hollywood Property Owner, LLC & Moses Bensusan*, case no. 17-09278, in the Circuit Court of the Ninth Judicial Circuit in and for Orange County Florida, alleging claims for damages against the Debtor.

On April 23, 2019, the Secured Lender filed a complaint to foreclose the Mortgage against the Debtor, case styled *777 N. Ocean Drive LLC v. Costa Hollywood Property Owner, LLC, et al.,* case no. CACE-19-009153, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

On May 9, 2019, plaintiff Baker Concrete Construction, Inc. filed an action for damages and foreclosure of a construction lien against the Debtor, case styled *Baker Concrete Construction, Inc. v. Costa Hollywood Property Owner LLC & 777 N. Ocean Drive, LLC*, case no. CACE-19-010135, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

On June 6, 2019, plaintiffs Costa 402 Inc., *et. al*., filed a complaint for injunctive relief and damages against the Debtor, case styled *Costa 402 Inc., et. al. v. Costa Hollywood Property Owner, LLC*, case no. CACE-19-012062, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida (the "***State Court Action***").

On July 3, 2019, plaintiff PSO Investments LLC filed a complaint for injunctive relief and damages against the Debtor, case styled *PSO Investments LLC v. Costa Hollywood Property Owner, LLC*, case no. CACE-19-013967, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

On September 15, 2019, Modulex Miami LLC filed a complaint for damages against the Debtor, case styled *Modulex Miami, LLC v. Costa Hollywood Property Owner LLC*, case no. CACE-19-018829, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

## IV.    EVENTS OCCURRING DURING DEBTOR'S CHAPTER 11 CASE

### A.    Bankruptcy Filings and First Day Orders and Other Initial Matters

On September 19, 2019 (as defined, the "***Petition Date***"), the Debtor filed a Voluntary Petition for relief under chapter 11 of the United States Bankruptcy Code [ECF No. 1].[6]

The Debtor continues to manage its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

On September 26, 2019, the Debtor filed its Expedited Motion for Authorization to (I) Continue Insurance Programs; and (II) Pay all Insurance Obligations [ECF No. 18], which was granted per Court Order [ECF No. 147].

On September 26, 2019, the Debtor filed its Expedited Motion for (A) Authority to (I) Maintain Certain Bank Accounts and Continue to Use Existing Business Forms and Checks, and (II) Continue to Use Existing Cash Management System, and (B) Waiver of Certain Investment and Deposit Guidelines [ECF No. 19], which was granted on an interim basis per Court Order [ECF No. 78] and on a final basis per Court Order [ECF No. 103].

On September 26, 2019, the Debtor filed its Expedited Motion Pursuant to Sections 105(A), 363(B), and 503(B)(1) of the Bankruptcy Code for Authorization to Honor Certain Prepetition Customer Programs [ECF No. 20], which was granted per Court Order [ECF No. 146].

---

[6] The references to "ECF" in this Disclosure Statement are to the "Electronic Case File" system which is the docket number in this Chapter 11 Case for the referenced item.

On September 26, 2019, the Debtor filed its Amended Expedited Motion of the Debtor for Interim (1 Month) Use of Cash Collateral *Nunc Pro Tunc* to September 19, 2019 [ECF No. 23], which was granted on an interim basis per Court Order [ECF No. 69].

On October 2, 2019, PSO Investments LLC filed a Motion for Stay Relief [ECF No. 36] and the Debtor filed its Response [ECF No. 91], which remains pending.

On October 2, 2019, Costa 402 Inc., *et al*. filed their Motion for Stay Relief [ECF No. 37] and the Debtor filed its Response [ECF No. 92], which was granted per Court Order [ECF No. 176] and the automatic stay was terminated so as to permit Costa 402 Inc., *et al*. to pursue the State Court Litigation for injunctive relief only.

On October 4, 2019, the United States Trustee's (I) Emergency Motion to Dismiss or Convert this Case to Chapter 7 or Alternatively, to Direct the Appointment of a Chapter 11 Trustee and (II) Request for an Expedited Hearing (the "*Motion to Dismiss*") [ECF No. 46] and non-substantive joinders were filed by various parties, including the hotel manager Evolution Hospitality, LLC at ECF Nos. 49, 51-68. The Debtor and the Secured Lender filed a Response in Objection [ECF No. 94 and 96, respectively] and, after notice and a hearing, the Court denied the Motion to Dismiss [ECF No. 112].

On October 15, 2019, the Debtor filed its Expedited Motion for Interim and Final Orders (I) Authorizing Debtor to (A) Use Cash Collateral *Nunc Pro Tunc* to September 19, 2019 (B) Obtain Postpetition Financing from [Secured Lender] (II) Granting Adequate Protection and (III) Scheduling Final Hearing [ECF No. 97], which was granted on a final basis per Court Order [ECF No. 189].

On October 15, 2019, the Debtor filed its Expedited Motion for an Order Authorizing Payment of Prepetition Claims of Critical Vendors [ECF No. 98], which was granted per Court Order [ECF No. 116].

The 341 Meeting of Creditors was held on October 28, 2019 [ECF No. 34].

On November 27, 2019, Maxcom Advisors, LLC filed an adversary proceeding against the Debtor, case styled *Maxcom Advisors, LLC v. Costa Hollywood Property Owner, LLC*, Adv. Case No. 19-01909, seeking substantially similar injunctive relief as in the State Court Action.

On March 11, 2020, the Debtor filed its Chapter 11 Plan of Liquidation ("***Original Plan***") [ECF No. 247] and Disclosure Statement Under 11 U.S.C. § 1125 in Support of the Liquidating Chapter 11 Plan Proposed by the Debtor ("***Original Disclosure Statement***") [ECF No. 248].

### B.    Schedules and Statements

The Debtor filed its Schedules and Statements of Financial Affairs on October 3, 2019 [ECF No. 39]. The Debtor filed its Amended Summary of Schedules and Amended Schedules D, E/F, and G on February 19, 2020 [ECF No. 235] and provided notice to affected parties [ECF No. 236].

C.      **Retention and Employment of Bankruptcy Professionals**

On September 26, 2019, the Debtor filed its Application of the Debtor for an Order, on an Interim Basis, Authorizing the Employment and Retention of Meland Russin & Budwick, P.A. as Attorneys for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date [ECF No. 21], which was granted on a final basis per Court Order [ECF No. 113].

On October 31, 2019, the Debtor filed its Application for an Order Authorizing the Employment and Retention of Robb E. Udell, Esq. and Rennert Vogel Mandler & Rodriguez, P.A. as Special Tax Appeal Counsel *Nunc Pro Tunc* to September 19, 2019 [ECF No. 124], which was granted per Court Order [ECF No. 167].

On December 19, 2019, the Debtor filed its Expedited Application for an Order Authorizing the Employment and Retention of Michael R. Kassower, Esq. and Frank Weinberg Black, P.L. as Special Counsel *Nunc Pro Tunc* to December 9, 2019 [ECF No. 191], which was granted per Court Order [ECF No. 207].

D.      **No Appointment of Creditors' Committee**

The United States Trustee docketed a Notice of No Appointment of Committee of Creditors Holding Unsecured Claims pursuant to 11 U.S.C. § 1102 [ECF No. 134].

E.      **Post Petition DIP Loan from Secured Lender**

On October 15, 2019, the Debtor filed its Expedited Motion for Interim and Final Orders (I) Authorizing Debtor to (A) Use Cash Collateral *Nunc Pro Tunc* to September 19, 2019 (B) Obtain Postpetition Financing from [Secured Lender] (II) Granting Adequate Protection and (III) Scheduling Final Hearing [ECF No. 97], which was granted per Court Order [ECF No. 189] and authorized, on a final basis, the Debtor to obtain secured post-petition financing from the Secured Lender (the "***Post-Petition Financing***") in the total amount not to exceed $726,000.00.

F.      **Bid Procedures/Sale Motion, Marketing, Auction and Sale**

Contemporaneously with, or subsequent to, the filing of this Disclosure Statement and the Plan, the Debtor has filed/will file its Motion for Entry of (A) an Order Approving Bidding Procedures, (B) Approving Certain Protections to Stalking Horse Purchaser, (C) Approving Notice Procedures, and (D) and Order (i) Approving the Stalking Horse Purchase and Sale Agreement, (ii) Authorizing the Sale of All or Substantially All of the Assets of the Debtor Free and Clear of All Liens, Claims, Encumbrances and other Interests, (iii) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale, and (iv) Granting Related Relief [ECF No. **TBD**] (the "***Secured Lender Sale Motion***"). In the Secured Lender Sale Motion, the Debtor requests the entry of (a) an order approving the bidding procedures and the bid protections described therein; and (b) an order (i) approving the purchase and sale agreement for the sale of all of the Debtor's assets to the Secured Lender or other successful bidder, (ii) authorizing the sale of all or substantially all of the assets of the Debtor free and clear of all claims and interests, (iii) granting any relief otherwise related or appropriate to the matters addressed in the Secured Lender Sale Motion.

As described in the Plan and Secured Lender Sale Motion, the Bankruptcy Court, the Debtor, or a designee may, if necessary, conduct an auction sale of the Collateral for the highest or best offer in accordance with the Plan, the Secured Lender Sale Motion and any order granting the Secured Lender Sale Motion. The sale of the Collateral at an auction or otherwise shall be done in connection with and as part of the implementation of the Plan for all purposes, including specifically Section 1146(a) of the Bankruptcy Code.

Upon conclusion of any auction for the Collateral, the Debtor shall seek an order of the Bankruptcy Court approving the sale of the Collateral as contemplated in and pursuant to the Plan, the Secured Lender Sale Motion and any order granting the Secured Lender Sale Motion.

If the Secured Lender is the successful purchaser of the Collateral at an auction or otherwise pursuant to the Plan, the Secured Lender Sale Motion and any order granting the Secured Lender Sale Motion, the Secured Lender or its nominee or designee may take title to the Collateral subject to the Mortgage, which Mortgage may be assigned to any such nominee's or designee's lender.

### G.    Exclusivity Extension

Unless a trustee is appointed, only the debtor may file a plan during the first 120 days of a Chapter 11 case. This 120-day period is called the "Exclusive Period." On January 9, 2020, the Debtor filed its Expedited Motion Pursuant to Section 1121(D) of the Bankruptcy Code for an Extension of Exclusive Right to File a Plan of Reorganization and to Solicit Acceptances [ECF No. 211] which was granted by the Court on January 16, 2020 [ECF No. 222]. Accordingly, the Debtor's exclusive deadline to file a plan is March 17, 2020.

### H.    Turnover Action

On April 10, 2020, Debtor filed an adversary proceeding against Greenberg Traurig, P.A. ("**GT**") and Stewart Title Guaranty Company ("**Stewart**") styled *Costa Florida Hollywood Property Owner, LLC v. Greenberg Traurig, P.A., et al.*, Adv. Case No. 20-01129 (the "Turnover Action") pursuant to 28 U.S.C. § 2201, Fla. Stat. Ch.86, 11 U.S.C. § 542, seeking, *inter alia*, an order directing the turnover of funds held in escrow by Greenberg Traurig P.A. on behalf of Stewart Title Guaranty Company.

Prior to the Petition Date, Debtor and Stewart entered into two indemnity agreements ("**Indemnity Agreements**") pursuant to which funds were escrowed from sale proceeds of unit sales to address so-called "identified risks" to Stewart and the law firm GT. Specifically, the Indemnity Agreements relate to 2 lawsuits: one involving Design Engineering Group (the "**Design Indemnity Agreement**") and the other involving Costa Investors LLC (the "**Costa Investors Indemnity Agreement**"). Pursuant to the Indemnity Agreements a total of $1,425,139.55 was escrowed (the "**Escrowed Funds**") with GT prepetition. GT continues to hold these funds to this day.

Claims against Debtor raised in a lawsuit by Costa Investors LLC have been dismissed with prejudice, and the dismissal of those claims was affirmed on appeal. Therefore, there are no pending claims against Debtor by Costa Investors LLC.

Design Engineering Group has not filed any proof of claim in the bankruptcy case, and upon the sale of Debtor's property it will be paid in accordance therewith and its purported construction lien against the Debtor's property will be extinguished. Despite there no longer being any claims against Debtor by Design Engineering Group and Costa Investors LLC, GT and Stewart have failed and refused to comply with Debtor's turnover demand.

Moreover, even if Design Engineering Group had a valid claim (and it does not), its interest is subordinate to the Secured Lender, by virtue of a Subordination Agreement, dated July 1, 2016, and recorded in the Official Records of Broward County, Florida on July 20, 2016 under Instrument No. 113820795.

In addition. the funds are escrowed from sale proceeds of unit sales. Thus, the proceeds from the Turnover Action as they are escrowed from sale proceeds, belong to the Secured Lender.

To the extent there are proceeds from the Turnover Action, such proceeds shall, in the Debtor's sole discretion, either be paid upon the Confirmation Date or anytime thereafter to Secured Lender to either (1) reimburse the Secured Lender for funds it has or will advance to the Debtor pursuant to any order entered by the Court on the use of Cash Collateral or DIP Financing or (2) pay the amounts that Secured Lender may have to pay in connection with the Plan, including without limitation, the payments relating to the Secured Lender Contribution. The remainder of any proceeds from the Turnover Action shall be paid to the Secured Lender upon the Confirmation Date or anytime thereafter..
.

## V.   EXPLANATION OF CHAPTER 11

### A.   Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor-in-possession attempts to reorganize or liquidate in an orderly fashion its business and financial affairs for the benefit of the debtor, its creditors, and other interested parties.

The commencement of a Chapter 11 case creates an estate comprising all of the debtor's legal and equitable interests in property as of the date the petition is filed. Unless the Bankruptcy Court orders the appointment of a trustee, Bankruptcy Code sections 1101, 1107 and 1108 provide that a Chapter 11 debtor may continue to operate its business and control the assets of its estate as a "debtor-in-possession."

The filing of a Chapter 11 petition also triggers the automatic stay under Bankruptcy Code section 362. The automatic stay essentially halts all attempts to collect prepetition claims from the debtor or to otherwise interfere with the debtor's business or its bankruptcy estate.

Formulation of a plan of reorganization or liquidation is the principal purpose of a Chapter 11 case. The plan sets forth the means for satisfying the claims of creditors against, and interests of equity security holders in, the debtor. Unless a trustee is appointed, only the debtor may file a plan during the first 120 days of a Chapter 11 case. This 120-day period is called the "Exclusive Period." After the Exclusive Period has expired, a creditor or any other interested party may file a plan, unless the debtor files a plan within the Exclusive Period.

### B.    Liquidation Plan

The Debtor is filing this Plan as a liquidating plan and is not reorganizing to do further business.

After a plan has been filed, the holders of claims against, or equity interests in, a debtor are permitted to vote on whether to accept or reject the plan. Chapter 11 does not require that each holder of a claim against, or equity interest in, a debtor vote in favor of a plan in order for the plan to be confirmed. At a minimum, however, a plan must be accepted by a majority in number and two-thirds in dollar amount of those claims actually voting from at least one class of claims impaired under the plan. The Bankruptcy Code also defines acceptance of a plan by a class of equity interests as acceptance by holders of two-thirds of the number of shares actually voted.

Classes of claims or equity interests that are not "impaired" under a plan of reorganization or liquidation are conclusively presumed to have accepted the plan, and therefore are not entitled to vote. A class is "impaired" if the plan modifies the legal, equitable, or contractual rights attaching to the claims or equity interests of that class. Modification for purposes of impairment does not include curing defaults and reinstating maturity or payment in full in cash.

Conversely, classes of claims or equity interests that receive or retain no property under a plan of reorganization or liquidation are conclusively presumed to have rejected the plan, and therefore are not entitled to vote.

Even if all classes of claims and equity interests accept a plan of reorganization or liquidation, the Bankruptcy Court may nonetheless deny confirmation of the plan. Bankruptcy Code section 1129 sets forth the requirements for confirmation and, among other things, requires that a plan be in the "best interests" of impaired and dissenting creditors and interest holders and that the plan be "feasible". The "best interests" test generally requires that the value of the consideration to be distributed to impaired and dissenting creditors and interest holders under a plan may not be less than those parties would receive if the debtor were liquidated under a hypothetical liquidation occurring under Chapter 7 of the Bankruptcy Code. A plan must also be determined to be "feasible," which generally requires a finding that there is a reasonable probability that the debtor will be able to perform the obligations incurred under the plan.

The Bankruptcy Court must further find that the economic terms of the particular plan meet the specific requirements of Bankruptcy Code section 1129(b) with respect to the subject objecting class. If the proponent of the plan proposes to seek confirmation of the plan under the provisions of Bankruptcy Code section 1129(b), the proponent must also meet all applicable requirements of Bankruptcy Code section 1129(a) (except section 1129(a)(8)). Those requirements include the requirements that (i) the plan comply with applicable Bankruptcy Code provisions and other applicable law, (ii) that the plan be proposed in good faith, and (iii) that at least one impaired class of creditors or interest holders has voted to accept the plan.

### C.    Bar Date for Filing Proofs of Claim

The Bankruptcy Court established January 27, 2020 as the general deadline for filing proofs of claim and proof of interests in this Bankruptcy Case and the deadline for filing a proof

of claim by any governmental unit (as defined by section 101(27) of the Bankruptcy Code) is March 17, 2020.

### D.    Definition of Impairment

Under Bankruptcy Code section 1124, a class of Claims or Equity Interests is impaired under a plan of reorganization or liquidation unless, with respect to each Claim or Equity Interests of such class, the Plan:

> leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to receive accelerated payment of such claim or equity interest after the occurrence of a default: cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Bankruptcy Code section 365(b)(2) or of a kind that section 365(b)(2) expressly does not require to be cured; reinstates the maturity of such claim or equity interest as it existed before the default; compensates the holder of such claim or equity interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to Bankruptcy Code section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and does not otherwise alter the legal, equitable, or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

### E.    Confirmation of Plan

#### 1.    Solicitation of Acceptances

The Plan Proponent is soliciting your vote.

NO REPRESENTATIONS OR ASSURANCES, IF ANY, CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE, OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED ON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO DEBTOR'S COUNSEL FOR APPROPRIATE ACTION.

THIS IS A SOLICITATION SOLELY BY THE PLAN PROPONENT, AND IS NOT A SOLICITATION BY ANY SHAREHOLDER, ATTORNEY, ACCOUNTANT, OR OTHER PROFESSIONAL FOR THE PLAN PROPONENT. THE REPRESENTATIONS, IF ANY, MADE IN THIS DISCLOSURE STATEMENT ARE THOSE OF THE PLAN PROPONENT

AND NOT OF SUCH SHAREHOLDERS, ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS, EXCEPT AS MAY BE OTHERWISE SPECIFICALLY AND EXPRESSLY INDICATED.

> 2.    Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of Bankruptcy Code section 1129 have been satisfied, in which event the Bankruptcy Court shall enter an order confirming the Plan. For the Plan to be confirmed, Bankruptcy Code section 1129 requires that:

(a) The Plan complies with the applicable provisions of the Bankruptcy Code;

(b) The Debtor has complied with the applicable provisions of the Bankruptcy Code;

(c) The Plan has been proposed in good faith and not by any means forbidden by law;

(d) Any payment or distribution made or promised by the Debtor or by a Person issuing securities or acquiring property under the Plan for services or for costs and expenses in connection with the Plan has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(e) The Debtor has disclosed the identity and affiliation of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the Plan; the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and interest holders and with public policy; and the Debtor has disclosed the identity of any insider that will be employed or retained by the Debtor and the nature of any compensation for such insider;

(f) Any government regulatory commission with jurisdiction (after confirmation of the Plan) over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval;

(g) With respect to each impaired Class of Claims or Equity Interests, either each holder of a Claim or Equity Interest of the Class has accepted the Plan, or will receive or retain under the Plan on account of that Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code. If Bankruptcy Code section 1111(b)(2) applies to the Claims of a Class, each holder of a Claim of that Class will receive or retain under the Plan on account of that Claim property

14

of a value, as of the Effective Date, that is not less than the value of that holder's interest in the Debtor's interest in the property that secures that claim;

(h) Each Class of Claims or Equity Interests has either accepted the Plan or is not impaired under the Plan;

(i) Except to the extent that the holder of a particular Allowed Administrative Claim, Allowed Priority Unsecured Tax Claim, or Allowed Priority Unsecured Non-Tax Claim has agreed to a different treatment of its Claim, such Claims shall be paid in accordance with the provisions of Bankruptcy Code section 1129(a)(9);

(j) If a Class of Claims or Equity Interests is impaired under the Plan, at least one such Class of Claims or Equity Interests has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim or Equity Interest of that Class; and

(k) Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Plan Proponent believes that the Plan satisfies all of the statutory requirements of the Bankruptcy Code for confirmation and that the Plan was proposed in good faith. The Plan Proponent believes it has complied, or will have complied, with all the requirements of the Bankruptcy Code governing confirmation of the Plan.

3.      Acceptances Necessary to Confirm the Plan

Voting on the Plan by each holder of a Claim (or its authorized representative) is important. Chapter 11 of the Bankruptcy Code does not require that each holder of a Claim vote in favor of the Plan in order for the Court to confirm the Plan. Generally, to be confirmed under the acceptance provisions of Bankruptcy Code section 1126(a), the Plan must be accepted by each Class of Claims that is impaired under the Plan by parties holding at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class actually voting in connection with the Plan. Even if all Classes of Claims accept the Plan, the Bankruptcy Court may refuse to confirm the Plan.

4.      Cramdown

In the event that any impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A plan of liquidation does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or equity interests. "Fair and equitable" has different meanings for holders of secured and unsecured claims and equity interests.

With respect to a secured claim, "fair and equitable" means either (i) the impaired secured

creditor retains its liens to the extent of its allowed claim and receives deferred cash payments at least equal to the allowed amount of its claims with a present value as of the effective date of the plan at least equal to the value of such creditor's interest in the property securing its liens; (ii) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (i) and (iii) hereof; or (iii) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the plan.

With respect to an unsecured claim, "fair and equitable" means either (i) each impaired creditor receives or retains property of a value equal to the amount of its allowed claim or (ii) the holders of claims and equity interests that are junior to the claims of the dissenting class will not receive any property under the plan.

With respect to equity interests, "fair and equitable" means either (i) each impaired equity interest receives or retains, on account of that equity interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, or the value of the equity interest, or (ii) the holder of any equity interest that is junior to the equity interest of that class will not receive or retain under the plan, on account of that junior equity interest, any property.

The Plan Proponent believes that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired Class of Claims and Equity Interests. In the event at least one Class of impaired Claims or Equity Interests rejects or is deemed to have rejected the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired Class of Claims or Equity Interests.

## VI.    DESCRIPTION OF THE PLAN

### A.    Introduction

A summary of the principal provisions of the Plan and the treatment of Classes of Allowed Claims and Allowed Equity Interests is outlined below. The summary is entirely qualified by the Plan. This Disclosure Statement is only a summary of the terms of the Plan; it is the Plan (and not the Disclosure Statement) that governs the rights and obligations of the parties.

### B.    Designation of Claims and Equity Interests/Impairment

The following is a designation of the classes of Claims and Equity Interests under the Plan. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, and Priority Unsecured Claims (with the exception of Priority Deposit Claims) have not been classified and are excluded from the following Classes. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in another Class(es) to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Class(es). A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class. Notwithstanding anything to the contrary in the Plan, no Distribution shall be made on account of any Claim that is not an Allowed Claim.

Holders of Equity Interest are not receiving any Distributions on account of such Claims under the Plan. Under Bankruptcy Code section 1126(g), such Interest holders and Claimholders are conclusively presumed to have rejected the Plan, and therefore the Debtor will not solicit their votes.

### C.    Treatment of Claims and Interests

1.    Administrative Expense Claims

All Administrative Expense Claims of the Debtor shall be treated as follows:

a)    Each Holder of an Allowed Administrative Expense Claim shall receive the full amount thereof without interest in Cash, except to the extent that any Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment thereof, as soon as practicable after the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date that is 10 Business Days after an order of the Bankruptcy Court allowing such Administrative Expense Claim becomes a Final Order or (iii) as mutually agreed by the Liquidating Trustee and the Holder of such Allowed Administrative Expense Claim and approved by the Court.

b)    All requests for payment of Administrative Expense Claims (or any other means of preserving and obtaining payment of Administrative Expense Claims found to be effective by the Bankruptcy Court) shall be filed by any applicable Bar Date established by the Bankruptcy Court and noticed separately by the Plan Proponent; and if such requests for payment of Administrative Expense Claims are not so filed, the Holders of such Claims shall be forever barred and shall not be able to assert such Claims in any manner against the Debtor, the Secured Lender, the Liquidating Trustee, or the Remaining Assets of the Debtor

c)    Each Holder of an Allowed Professional Claim shall be paid from the Professional Claims' Fund included in the Secured Lender's Contribution.

2.    Priority Claims

Each Holder of an Allowed Priority Claim (including Allowed Priority Tax Claims) shall receive on account of such Claim, (a) Cash equal to the amount of such Allowed Priority Claim, without post-petition interest or penalty, on the later of (i) the Effective Date or as soon as practicable thereafter or (ii) the date that is 10 Business Days after an order of the Bankruptcy Court allowing such Priority Claim becomes a Final Order; or (b) deferred cash payment in the amount of allowed claims; or (c) such other treatment as each Holder and the Liquidating Trustee may agree. The Holders of such Priority Claims shall be forever barred and shall not be able to assert such Claims in any manner against the Debtor, the Secured Lender, the Liquidating Trustee, or the Trust Assets of the Debtor. Allowed Priority Claims shall be paid from the Unsecured Creditors' Fund included in the Secured Lender's Contribution.

3.      Claims for Statutory Fees

The Liquidating Trustee shall pay within ten (10) days after the Effective Date all fees incurred under 28 U.S.C. and 1930(a)(6) for the period ending on the Effective Date. All fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date will be assessed based solely on the disbursements made by the Liquidating Trustee and shall be paid by the Liquidating Trustee through the earlier of the closing of the Bankruptcy Case by the issuance of a final decree by the Bankruptcy Court or upon entry of an order dismissing or converting the Bankruptcy Case to Chapter 7. The Liquidating Trustee shall provide an appropriate affidavit indicating the cash disbursements made for all relevant periods.

4.      Protective Advance Claim

The Protective Advance Claim shall be allowed in the full amount due and owing under the Cash Collateral Orders as of the Effective Date, including any and all expenditures related to the Properties referenced in said orders made by Secured Lender to pay pre and post-petition real estate taxes due at the Properties or any other pre and post-petition expenses including, without limitation, maintenance and other capital advances. Except to the extent that the holder of a Protective Advance Claim agrees in writing to a different treatment, to the extent not otherwise repaid prior to the Effective Date, the amount of Protective Advance Claim will be added to the Secured Lender's Allowed Secured Claim and treated in accordance with Class 2 herein.

**D.      Classification, Impairment and Treatment of Claims and Equity Interests**

1.      Classification

All Claims and Equity Interests, except Administrative Expenses, Priority Claims and Claims for Statutory Fees, are placed in Classes as set forth below. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class, and such Claim has not been disallowed, paid or released prior to the Effective Date.

It is not possible to predict precisely the total amount of Claims in a particular Class or the Distributions that will be ultimately paid to holders of Claims in the different Classes because of the variables involved in the calculations (including the results of the claims objection process). Notwithstanding, the estimates specified for each Class as set forth on the Liquidation Analysis attached hereto as Exhibit 2 are based on information known to the Debtor on the date of this Disclosure Statement.

| Class | Claim | Treatment | Voting Rights |
|-------|-------|-----------|---------------|
| Class 1 | Secured Tax Claims | Unimpaired. | Not Entitled to Vote |

| | | If Secured Lender closes on the purchase of the Properties[7] as set forth in the Plan, then the Class 1 Claim shall be paid in full and fully satisfied upon such closing. In the event the Secured Lender is not the successful purchaser for the Properties, then the Class 1 Claim shall be paid from the sale proceeds of such sale as a first priority lien thereon, and upon such payment the Class 1 Claim shall be deemed paid in full and fully satisfied. | |
| Class 2 | Allowed Secured Claim of City of Hollywood | Unimpaired.<br><br>If Secured Lender closes on the purchase of the Properties as set forth in the Plan, then the Class 2 Claim shall be paid in full at closing and fully satisfied upon such closing. In the event the Secured Lender is not the successful purchaser for the Properties, then the Class 2 Claim shall be paid from the sale proceeds of such sale, and upon such payment the Class 2 Claim shall be deemed paid in full and fully satisfied. | Not Entitled to Vote |
| Class 3 | Allowed Secured Claim of United Leasing, Inc. | Impaired.<br><br>To the extent that United Leasing, Inc. has an Allowed Secured Claim and such claim is higher in legal priority than that of the Secured Lender, if Secured Lender closes on the purchase of the Properties as set forth in the Plan, then the Class 3 Claim shall be paid in full at closing and fully satisfied upon such closing. In the event the Secured Lender is not the successful purchaser for the Properties, then the Class 3 Claim shall be paid from the sale proceeds of such sale, and upon such payment the Class 3 Claim shall be deemed paid in full and fully satisfied. | Entitled to Vote |

---

[7] Capitalized terms used in this Table shall have the meaning ascribed to them in the Plan unless otherwise defined.

| | | | |
|---|---|---|---|
| | | To the extent that United Leasing, Inc.'s Allowed Secured Claim is subordinate in priority to the Secured Lender, United Leasing, Inc.'s Allowed Secured Claim shall be treated as a Class 6 Claim. | |
| Class 4 | Allowed Secured Claim of 777 N. Ocean Drive, LLC (Secured Lender) | Impaired.<br><br>The Secured Lender has an Allowed Secured Claim in the amount of $47,189,513.79 plus interest, attorneys' fees and expenses, and the Protective Advance Claim. Pursuant to the Secured Lender Sale Motion to be filed contemporaneously with or subsequent to the Plan, the Debtor will seek to sell the Properties to the Secured Lender as the Stalking Horse Bidder, subject to the receipt of higher and/or better bids. The Secured Lender has agreed to acquire the Properties for an initial credit bid in the amount of $43,000,000.00, subject to the right to increase the purchase price through a credit bid up to and in the full amount of its Class 4 Claim.<br><br>In the event the Secured Lender is not the successful purchaser for the Properties, then the Class 4 Claim shall be paid from the sale proceeds of such sale and all then existing cash collateral after the payment of the Class 1 Claims, Class 2 Claim and Class 3 Claim (to the extent the Class 3 Claim has higher legal priority than Secured Lender's Class 4 Claim).<br><br>In either case, pursuant to the Secured Lender Settlement, the Secured Lender shall make the Secured Lender Contribution on the Effective Date, subject to the entry of an Order of the Bankruptcy Court approving the Secured Lender Settlement under Bankruptcy Rule 9019 as more fully set forth below..<br><br>To the extent there are proceeds from the Turnover Action, such proceeds shall, in | Entitled to Vote |

| | | the Debtor's sole discretion, either be paid upon the Confirmation Date or anytime thereafter to Secured Lender to either (1) reimburse the Secured Lender for funds it has or will advance to the Debtor pursuant to any order entered by the Court on the use of Cash Collateral or DIP Financing or (2) pay the amounts that Secured Lender may have to pay in connection with the Plan, including without limitation, the payments relating to the Secured Lender Contribution. The remainder of any proceeds from the Turnover Action shall be paid to the Secured Lender upon the Confirmation Date or anytime thereafter. | |
|---|---|---|---|
| Class 5 | Allowed Secured Mechanic's Lien Claims | Impaired.<br><br>Paid in order of legal priority in class from the net proceeds of the sale of the Properties after all Class 1 Claims, Class 2 Claims, Class 3 Claims (to the extent the Class 3 Claim has legal priority higher than the Class 4 Claim) and Class 4 Claims are paid in full. Any deficiency claim will be treated as Class 8 Allowed General Unsecured Claim. | Entitled to vote. |
| Class 6 | Allowed Other Secured Claims | Impaired.<br><br>Paid in order of legal priority in class from the net proceeds of the sale of the Properties after all Class 1 Claims, Class 2 Claims, Class 3 Claims and Class 4 Claims are paid in full. Any deficiency claim will be treated as Class 8 Allowed General Unsecured Claim. | Entitled to vote. |
| Class 7 | Allowed Priority Deposit Claims | Unimpaired.<br><br>Unless such Holder agrees to accept a lesser treatment of an Allowed Priority Deposit Claim, each Holder of an Allowed Priority Deposit Claim shall receive, as soon as practicable in the discretion of the Liquidating Trustee, up to $3,025 of the | Not entitled to vote. |

| | | | |
|---|---|---|---|
| | | Unsecured Creditors' Fund before payment of or reserve for the Allowed General Unsecured Claims. Any deficiency claim will be treated as Class 8 Allowed General Unsecured Claim. | |
| Class 8 | Allowed General Unsecured Claims | Impaired.<br><br>Unless such Holder agrees to accept a lesser treatment of an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, as soon as practicable in the discretion of the Liquidating Trustee, (i) a Pro Rata Share of the Unsecured Creditors' Fund after payment of or reserve for the Allowed Priority Claims therefrom, and (ii) distributions from the Trust Assets after the Effective Date in the discretion of the Liquidating Trustee. | Entitled to vote. |
| Class 9 | Equity Interests in the Debtor | Impaired.<br><br>Equity Interests shall be canceled as of the Effective Date. | Not entitled to vote |

2.      Separate Classes and Treatment

No Class, member of any Class or Holder of any Claim against the Debtor shall be entitled to or receive Cash or other property allocated for distribution to any other Class or to a Holder of a Claim, except as expressly specified in the Plan. The Liquidating Trustee shall not distribute any Cash or other property allocated to a Class, member of any Class or a Holder of a Claim to any other Class or member thereof or Holder of a Claim, except as expressly specified in the Plan or the Confirmation Order.

3.      Claims May Be in More Than One Class

A Claim is part of a particular Class only to the extent that the Claim qualifies within the definition of that Class and such Claim is part of a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

4.    Summary of Claims

Not including unsecured rejection damage claims, and assuming that certain objections to claims, to be filed, which seek to reclassify certain claims or disallow duplicative claims are sustained, the following is an approximate summary of claims (scheduled and filed).

The creditors by class currently consist of: [8]

- Secured Tax Claims (Class 1);
- Secured Claim of City of Hollywood (Class 2);
- Secured Claim of United Leasing, Inc. (Class 3);
- Secured Lender's claim (Class 4);
- Secured Mechanic's Lien Claims (Class 5);
- Other Secured Claims (Class 6);
- Priority Deposit Claims (Class 7);
- Priority Tax Claims;
- General Unsecured Claims (Class 8); and
- Equity Interests in the Debtor (Class 9).

The secured claims are comprised of 7 secured tax claims in the aggregate approximate amount of $1,077,000 (Class 1), the City of Hollywood's claim in the approximate amount of $10,604.54 (Class 2), United Leasing, Inc.'s purchase money security claim in the amount of $104,799 (Class 3), the Secured Lender's claim in the approximate amount of $47,190,000 (Class 4), plus 6 construction/mechanic secured claims in the aggregate approximate amount of $8,053,000 (Class 5), plus other secured claims in the aggregate approximate amount of $720,000 (Class 6). Any deficiency claims of holders of Allowed Secured Claims resulting from the sale of the collateral shall be Allowed General Unsecured Claims and treated *pari passu* with Class 8.

Priority Deposit Claims (Class 7) is comprised of the holders of Allowed Priority Deposit Claims. Section § 507(a)(7) of the Bankruptcy Code (2019) establishes a priority for "allowed unsecured claims of individuals, to the extent of $3,025.00 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, . . . of property, for the personal, family or household use of such individuals, that were not delivered or provided."  Class 7 is comprised of 2 claims filed in the amount of $263,025; however, per the statutory cap set forth in 11 U.S.C. § 507(a)(7) of $3,025, in no event shall any priority deposit claim exceed $3,025. Thus, Allowed Priority Deposit Claims shall not exceed $6,050.

Priority Tax Claims comprise 3 claims filed in the aggregate approximate amount of $21,300.

General Unsecured Claims (Class 8) comprise approximately 410 claims (filed and/or scheduled) in the aggregate approximate amount of $8,500,000 plus any deficiency claims of holders of Allowed Secured Claims resulting from the sale of the Collateral.

---

[8] All claims are subject to review and objection, including reclassification of claims.

Equity Interests in the Debtor (Class 9) consist of any equity interests in the Debtor. All such equity interests will be canceled as of the Effective Date.

### E.    Rejection of Executory Contracts

Each Executory Contract that has not previously been rejected or assumed and assigned shall be rejected as of the Confirmation Date (which rejection shall be effective on the Effective Date), and such rejected Executory Contracts shall no longer represent the binding obligations of the Debtor after the Confirmation Date. Entry of the Confirmation Order shall constitute approval of such rejections under Bankruptcy Code sections 365 and 1123. The owner of any property located at the Condo-Hotel and subject to a rejected executory contract shall be provided access to the Condo-Hotel (by either the Debtor or Secured Lender, as the case may be) for a period of thirty (30) days following notice of such rejection to retrieve such property, failing which the property will be deemed abandoned by the owner of the property to the Liquidating Trust.

### F.    Rejection Claims

Any Claim arising out of the rejection of an Executory Contract pursuant to the Confirmation Order must be filed with the Bankruptcy Court on or before thirty (30) days from the date of the Confirmation Order (the "***Rejection Claim Bar Date***"), and shall be served on counsel for the Debtor and the U.S. Trustee. Any such Claims not filed by the Rejection Claim Bar Date shall be discharged and forever barred. Each Allowed Claim arising from the rejection of an Executory Contract shall be treated as an Allowed General Unsecured Claim.

### G.    Injunction Under the Plan

The Plan contains an injunction as follows:

As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all Persons that have held, currently hold or may hold a Claim, Equity Interest or other debt or liability that is treated pursuant to the terms of the Plan are enjoined from taking any of the following actions on account of any such Claims, Equity Interests, debts or liabilities, other than actions brought to enforce any rights or obligations under the Plan, against the Debtor, the Liquidating Trustee, the Estate, the Remaining Assets or Estate property: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff of any kind against any debt, liability or obligation; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## VII.    MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### A.    Introduction

The Plan will be implemented through a distribution of the proceeds of the liquidation of the Remaining Assets and the continued prosecution of Causes of Action through a liquidating trust (the "***Liquidating Trust***"). The Debtor shall complete the sale of all of its tangible assets during this Chapter 11 Case (the "***Asset Sales***"). The following discussion outlines the general

terms of certain actions that will be taken to close the transactions contemplated by the Plan.

**B.    Sale of the Collateral**

As described in the Plan and Secured Lender Sale Motion, the Bankruptcy Court, the Debtor, or a designee may, if necessary, conduct an auction sale of the Collateral for the highest or best offer in accordance with the Plan, the Secured Lender Sale Motion and any order granting the Secured Lender Sale Motion. The sale of the Collateral at an auction or otherwise shall be done in connection with and as part of the implementation of the Plan for all purposes, including specifically Section 1146(a) of the Bankruptcy Code.

Upon conclusion of any auction for the Collateral, the Debtor shall seek an order of the Bankruptcy Court approving the sale of the Collateral as contemplated in and pursuant to the Plan, the Secured Lender Sale Motion and any order granting the Secured Lender Sale Motion.

If the Secured Lender is the successful purchaser of the Collateral at an auction or otherwise pursuant to the Plan, the Secured Lender Sale Motion and any order granting the Secured Lender Sale Motion, the Secured Lender or its nominee or designee may take title to the Collateral subject to the Mortgage, which Mortgage may be assigned to any such nominee's or designee's lender.

**C.    Secured Lender Settlement**

The Plan shall constitute a settlement and compromise of all claims and causes of action by and between the Debtor and the Debtor's bankruptcy estate and the Secured Lender pursuant to and under Bankruptcy Rule 9019 (the "***Secured Lender Settlement***"). Pursuant to the Secured Lender Settlement, the Secured Lender has agreed (i) to be the Stalking Horse Purchaser for the Debtor's Properties, subject in all events to the receipt of higher and/or better bids, (ii) to fund the Protective Advance Claim pursuant to the Cash Collateral Orders, and (iii) to fund the Secured Lender Contribution. In exchange, the Secured Lender shall be entitled to the Third Party Release as set forth below and the Debtor has agreed as follows:

The Debtor, on behalf of itself, the Debtor's bankruptcy estates, any person or entity claiming by or through the Debtor's bankruptcy estate, and each of their officers, directors, shareholders, members, managers, agents, employees, attorneys, partners, associates and insurers, including specifically Moses Bensusan (collectively the "***Debtor Releasors***") agree to and shall be deemed to have fully and generally released and discharged the Secured Lender and each of its officers, directors, shareholders, members, managers, agents, employees, attorneys, partners, associates and insurers (collectively the "***Secured Lender Released Parties***") from and against any and all manner of claims, whether asserted or unasserted, contemplated or raised, causes of actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, losses, damages, liabilities and demands of any kind whatsoever in law or in equity, whether known or unknown, suspected or unsuspected, contingent or fixed, including attorneys' fees and costs that any of the Debtor Releasors now have, have had or in the future may have against any of the Secured Lender Released Parties arising out of, related to or in connection with, directly or indirectly, the Debtor, the Debtor's bankruptcy estate, the Mortgage, the Properties, and/or the facts and circumstances related thereto (the "***Debtor Released Claims***"). Notwithstanding anything herein to the contrary,

the release of the Secured Lender Released Parties herein shall not release the Secured Lender from any of its obligations under this Plan or the Secured Lender Sale Motion.

The obligations of the Debtor and the Secured Lender shall be subject to the entry of an order of the Bankruptcy Court, which may be part of the Confirmation Order, approving the Secured Lender Settlement under the pursuant to Bankruptcy Rule 9019 in a form and content, and with findings, reasonably acceptable to the Secured Lender, including that the Secured Lender Settlement is fair and reasonable and falls well above the lowest point in the range of reasonableness.

Additionally, the Debtor released the Secured Lender in connection with the Cash Collateral Orders and the Challenge period therein has since expired with no claims being asserted against the Secured Lender.

The standards for approval of a settlement are well settled and requires a consideration of the reasonableness of the proposed settlement. *See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). The inquiry need only determine whether the settlement falls below the lowest point of the range of reasonableness. *See W.T. Grant Co.*, 699 F.2d at 608; *see also In re Martin*, 91 F.3d 389 (3rd Cir. 1996); *In re Van Diepen, P.A.*, 236 Fed. Appx. 498, 501 (11th Cir. 2007). Certain factors are used in evaluating a settlement, including: (i) the probability of success in litigation, (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors. *Wallis v. Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir, 1990).

The Debtor asserts that the Secured Lender Settlement falls well above the lowest point in the range of reasonableness when considering these factors. There are significant risks inherent in all litigation and the Secured Lender may ultimately prevail in any litigation it brings, particularly as the Debtor believes it has no legitimate defenses to any litigation brought by the Secured Lender. If the Secured Lender prevails in claims against the Debtor, it will be able to collect a large portion of the debt by foreclosing the Debtor's interest (as well as the interest of any and all junior lienholders) on the Properties. The complexity of the litigation involved and attendant expense, inconvenience and delay militates in favor of approval of the Secured Lender Settlement. While the claims litigated between the Debtor and the Secured Lender are likely typical, they will require potential discovery, and the expense of these efforts will be prohibitive to the Debtor and decrease potential recovery to other creditors. Finally, the Secured Lender Settlement gives certainty and avoids risk, expense and delay attendant with litigation. Importantly, pursuant to the Secured Lender Settlement, the Secured Lender will make the Secured Lender Contribution to provide for recovery by other creditors, which would not exist absent such settlement. As such, the Secured Lender Settlement is in the paramount interest of the creditors.

Notwithstanding the foregoing, a replacement stalking horse purchaser shall be permitted to replace the Secured Lender, provided the replacement stalking horse bid is no less than $43,000,000 and such stalking horse bidder provides a contract deposit equal to no less than five percent (5%) of the stalking horse purchase price.

### D.  Purpose of the Liquidating Trustee

The liquidating trustee ("***Liquidating Trustee***"), selected on or before Confirmation and appointed by the Bankruptcy Court, will hold and monetize all the Remaining Assets for the benefit of the Creditors of the Debtor's Estate, and for payments of all Allowed Claims in accordance with the provisions of this Plan, pursuant to a liquidating trust agreement (the "***Liquidating Trust Agreement***"). The Liquidating Trustee will not be selected nor supervised by the United States Trustee, and will not be bonded in favor of the United States in an amount set by the United States Trustee.

### E.  Authority and Limitations of Liquidating Trustee

All remaining rights and claims of the Debtor's Estate at the time of confirmation of the Liquidating Plan, including but not limited to the right to object to claims or to pursue causes of actions including, but not limited to actions under Chapter 5 of the Bankruptcy Code, shall be assigned to the Liquidating Trust upon confirmation of the Liquidating Plan.

The Liquidating Trust and Liquidating Trustee is entitled to section 108(a) tolling insofar as the Liquidating Trustee is acting on behalf of, as an agent of, and/or as a representative of the Debtor's estate to pursue claims that belonged to the Debtor for the benefit of the Debtor's creditors.

The Liquidating Trustee shall have the power and authority to perform the following acts (subject to Court approval), in addition to any powers granted by law or conferred to it by any other provision of the Plan of the Liquidating Trust Agreement; provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Trustee to act as specifically authorized by any other provision of the Plan or Liquidating Trust Agreement and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect Remaining Assets or to confer on the Creditors the benefits intended to be conferred upon them by this Plan:

(a)  To open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Liquidating Trust.

(b)  To receive, conserve and manage the assets of the trust (the *"Trust Assets,"* as further defined in the Plan).

(c)  To hold legal title to any and all Trust Assets.

(d)  Subject to the applicable provisions of the Plan, to prosecute, collect and liquidate the Trust Assets.

(e)  To take discovery from third parties, including but not limited to, issuing Fed.R.Bankr.P. 2004 subpoenas and discovery requests.

(f)  Make decisions regarding the retention or engagement of Trustee's Professionals and to pay, from the Trust Assets and the proceeds thereof, the fees and charges incurred by the Liquidating Trust and the fees and

expenses of Liquidating Trustee's Professionals, as well as the disbursements, expenses or related support services relating to the implementation of the Plan and performance by the Liquidating Trustee of his duties under the Liquidating Trust Agreement.

(g)     To pay all lawful, expenses, debts, charges and liabilities of the Liquidating Trust.

(h)     To wind down the affairs of the Liquidating Trust including the filing of final tax returns, establish any administrative reserves necessary to close the Trust and make all Distributions to the Beneficiaries provided for or contemplated by the Plan.

(i)     To withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Liquidating Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of its discretion and judgment, the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(j)     To enter into any agreement or execute any document required by or consistent with the Plan and perform all obligations thereunder.

(k)     To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets if it concludes that they are of no significant value or benefit to the Liquidating Trust.

(l)     If any of the Trust Assets are situated in any state or other jurisdiction in which the Liquidating Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee some form of adequate security as designated by the Liquidating Trustee; confer upon such trustee all the rights, powers, privileges and duties of Trustee, subject to the conditions and limitations of this Liquidating Trust, except as modified or limited by the Liquidating Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such trustee is acting shall prevail to the extent necessary); require such other trustee to be answerable to the Liquidating Trustee for all monies, assets and other property that may be received in connection with the administration of all property; and remove such other trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Liquidating Trustee of a written instrument declaring such other trustee removed from office, and specifying the effective date and time of removal.

(m)     Except as otherwise set forth in the Liquidating Trust Agreement, to have exclusive power to prosecute and/or settle all causes of actions including, without limitation, Avoidance Actions or any other causes of action or counterclaims (collectively, the "***Actions***") and exercise, participate in or

28

initiate any proceeding before the Bankruptcy Court or any other court of competent and appropriate jurisdiction and voluntarily participate as a party or otherwise in any administrative proceeding, arbitration, mediation, or other nonjudicial proceeding and litigate or settle such Actions on behalf of the Liquidating Trust, and pursue such actions to settlement or final order, all in accordance with the terms of the Liquidating Trust Agreement.

(n)    To hold any unclaimed Distributions or payment to a Beneficiary (as defined in the Liquidating Trust) in accordance with the Liquidating Trust Agreement, the Confirmation Order and the Plan.

(o)    To purchase or create and carry all insurance policies and pay all insurance premiums and costs it deems necessary or advisable.

(p)    To implement and/or enforce all provisions of the Plan.

(q)    To collect and liquidate all Trust Assets pursuant to the Plan, the Confirmation Order and the Liquidating Trust Agreement and to ultimately close the Chapter 11 Case.

(r)    To object to Claims and supervise and administer the resolution, settlement and payment of such Claims and the distribution to the Beneficiaries in accordance with the Liquidating Trust Agreement and the Plan. Specifically, the Liquidating Trustee may compromise or settle any such Claim (disputed or otherwise) free of any restrictions other than those restrictions expressly imposed by the Plan, the Confirmation Order or the Liquidating Trust Agreement.

(s)    Exercise such rights of setoff as the Debtor or the Estate may have had against any Beneficiary and/or seek Court approval of such exercise.

(t)    Voluntarily engage in arbitration or mediation with regard to any dispute

(u)    To (i) seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file, if necessary, any and all tax information returns required with respect to the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treas. Reg. 1.67-4(a) or otherwise, (iii) make tax elections by and on behalf of the Liquidating Trust and (iv) pay taxes, if any, payable by the Liquidating Trust.

(v)    To make all distributions to holders of Allowed Claims provided for or contemplated by the Plan.

(w)    Resolve issues pertaining to the retention or disposal of the Liquidating Trust's administrative and business records.

(x)    To perform any other actions or duties required to be performed by the Liquidating Trustee pursuant to the provisions of the Plan and/or Confirmation Order.

Limitations on the Liquidating Trustee. Notwithstanding anything in the Liquidating Trust Agreement to the contrary, the Liquidating Trustee shall not do or undertake any of the following:

(a)    Take any action in contravention of the Plan, the Confirmation Order or the Liquidating Trust Agreement.

(b)    Take any action that would significantly jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

29

(c)     Grant liens on any of the Trust Assets.

(d)     Guaranty any debt.

(e)     Loan Trust Assets to the Liquidating Trustee.

(f)     Purchase Trust Assets from the Liquidating Trust.

(g)     Transfer Trust Assets to another trust with respect to which the Liquidating Trustee serves as trustee.

(h)     Settle any Actions.

## F.     Operations of the Liquidating Debtor

On the Effective Date, the Debtor will be deemed dissolved, to the extent its operations have continued post-petition such operations will cease, and the Remaining Assets assigned and transferred to the Liquidating Trust, which will be managed by the Liquidating Trustee.

Except as otherwise provided in the Plan, all Cash shall be invested by the Liquidating Trustee with sole and absolute discretion in only (i) direct obligations of, or obligations guaranteed by, the United States of America and in compliance with Section 345 of the Bankruptcy Code; (ii) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; (iii) AAA rated tax-free securities issued by municipalities or state governments or agencies; or (iv) such other obligations or instruments as may from time to time be approved for such investments by the Court; provided, however, that the Liquidating Trustee may, to the extent deemed necessary by the Liquidating Trustee with sole and absolute discretion to implement the provisions of this Agreement, deposit moneys in demand deposits (including money market funds) at any U.S. Trustee approved bank, trust company or other financial institution which has, at the time of such deposit a capital stock and surplus aggregating at least $100,000,000. The investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Remaining Assets, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings or financial institutions, or other temporary, liquid investments, such as U.S. Treasury Bills. Such investments shall mature in such amounts and at such times as may be deemed necessary by the Liquidating Trustee with sole and absolute discretion to provide funds when needed to make payments from the Remaining Assets, as the case may be.

In no case shall any party dealing with the Liquidating Trustee in any manner whatsoever in relation to the Remaining Assets or to any part or parts thereof, be obligated to see that the provisions of the Plan or any direction from the Court have been complied with, or be obligated or privileged to inquire into the authority of the Liquidating Trustee to act, or to inquire into any other limitation or restriction of the power and authority of the Liquidating Trustee, but as to any party dealing with the Liquidating Trustee in any manner whatsoever in relation to the Remaining Assets, the power of the Liquidating Trustee to act or otherwise deal with the Remaining Assets shall be absolute.

The Liquidating Trustee shall be responsible for making distributions to holders of Allowed Claims from the General Distribution Fund pursuant to Articles II and III of the Plan. Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other similar activity except as specifically provided herein or otherwise

reasonably necessary and advisable for the orderly liquidation of the Remaining Assets.

The Liquidating Trustee shall keep an accounting of receipts and disbursements, which shall be open to inspection and review by the Court and creditors of the Debtor (upon reasonable notice, and without unduly interfering with the operations of the Liquidating Trustee).

All costs, expenses and obligations incurred by the Liquidating Trustee in administering the Remaining Assets or in any manner connected, incidental or related thereto, including but not limited to the fees and expenses of professionals retained by the Liquidating Trustee and its professionals to assist in carrying out its duties pursuant to the Plan, post-confirmation U.S. Trustee fees, and fees and expenses of the Liquidating Trustee and its professionals in pursuing ongoing litigation, shall be a charge against the Remaining Assets, and the Liquidating Trustee shall pay same, maintaining at all times adequate reserves for such payments prior to making distributions to the Creditors.

The Liquidating Trustee shall maintain an adequate reserve fund after payment of all fees, expenses, taxes, etc. which shall be available to cover all expenses and costs associated with carrying out the provisions of the Plan. The balance of the reserve fund shall be included in the final disbursement to holders of Allowed Claims prior to dissolution of the Liquidating Trustee's corporate existence.

Neither the Liquidating Trustee, or any partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidating Trustee ("***Indemnified Persons***") shall be personally liable in connection with the affairs of the Liquidating Trust to any person, including any Beneficiary of the Liquidating Trust, or to the Liquidating Trust, except for acts or omissions of the Indemnified Person that constitute any self-dealing, breach of fiduciary duty, fraud, gross negligence or willful misconduct. Persons dealing with Indemnified Persons in connection with the Liquidating Trust, or seeking to assert claims against the Liquidating Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Indemnified Persons to such persons in carrying out the terms of this Trust Agreement, except for acts or omissions of the Indemnified Persons that constitute any self-dealing, breach of fiduciary duty, fraud, gross negligence or willful misconduct.

Except as otherwise set forth in the Plan or Confirmation Order, Indemnified Persons, including, without limitation, any firm in which the Liquidating Trustee is a partner, member, shareholder or employee ("***Firm***"), shall be defended, held harmless and indemnified from time to time by the Liquidating Trust against any and all losses, claims, costs, expenses and liabilities to which such Indemnified Persons may be subject by reason of such Indemnified Party's execution in good faith of its duties pursuant to the discretion, power and authority conferred on such person by the Liquidating Trust Agreement, the Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this section shall not indemnify any Indemnified Person for any actions taken by an Indemnified Person which constitute fraud, willful misconduct or gross negligence of his or her duties hereunder, or willful material breach of the Plan. Satisfaction of any obligation of an Indemnified Person arising pursuant to the terms of this section shall be payable only from the Trust Assets and such right to payment shall be prior and superior to any rights of Beneficiaries to receive a Distribution of the Trust Assets.

The Liquidating Trustee shall not be liable for any act it may do, or omit to do hereunder or acting in good faith and in the exercise of his, her or its best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Liquidating Trustee shall be conclusive evidence of such good faith and best judgment. However, the limited liability described in this paragraph shall not apply to any self-dealing, breach of fiduciary duty, fraud, gross negligence or willful misconduct by the Liquidating Trustee's officers or employees.

The Liquidating Trustee shall maintain a bond in favor of the estate in an amount to be determined prior to or at the Confirmation Hearing and established in the Confirmation Order, which will be paid by the estate for the benefit of holders of Allowed Claims of the estate.

### G.    Compensation of Liquidating Trustee

The Liquidating Trustee shall be paid in accordance with section 326 of the Bankruptcy Code.

### H.    Dissolution of Corporate Existence

On the Effective Date, the Debtor will be deemed dissolved without the necessity of any further action, notice or filing.

### I.    Termination of Employees/Limitation of Liability/Release of Professionals

The Debtor does not have employees. However, as of the Effective Date, the Debtor's officers and directors, including, without limitation, the Debtor's President, shall be terminated for all purposes. On the ninety first (91) day after the Effective Date, any causes of action, claims, liabilities, counterclaims, and damages belonging to the Debtor, the Estate or the holder of any claim (regardless of whether such Claim is ultimately Allowed or Disallowed) relating to participation in the Debtor's bankruptcy case against such officers, directors or employees of the Debtor, shall be released, except for any acts of self-dealing, breach of fiduciary duty, fraud, gross negligence, professional negligence, or willful misconduct. Moreover, as of the Effective Date, the Debtor and the Estate shall release each attorney, accountant or other professional employed by the Debtor from any and all causes of action, claims, liabilities, counterclaims and damages relating in any manner to such professional's participation in this Chapter 11 Case, except for any acts of self-dealing, breach of fiduciary duty, fraud, gross negligence, professional negligence, or willful misconduct.

## VIII.   RISK FACTORS IN CONNECTION WITH THE PLAN

A Claimholder should carefully consider the following factors, as well as the other information contained in this Disclosure Statement (as well as the documents delivered herewith or incorporated by reference herein), before deciding whether to vote to accept or to reject the Plan.

The principal purpose of the Debtor's Bankruptcy Case is the formulation of the Plan, which liquidates the Debtor's business and operations and establishes how Claims against and Equity Interests in the Debtor will be satisfied. Under the Plan, certain Claims may receive partial distributions, and other Claims may not receive any distributions at all. Equity Interests will

receive no distributions.

### A.    Bankruptcy Considerations

Although the Debtor believes the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

In addition, the occurrence of the Effective Date is conditioned on the satisfaction (or waiver) of the conditions precedent set forth in Article IX of the Plan, and there can be no assurance that such conditions will be satisfied or waived. In the event the conditions precedent described in Article IX of the Plan have not been satisfied, or waived (to the extent possible) by the Debtor or applicable parties (as provided for in the Plan) as of the Effective Date, then the Confirmation Order will be vacated, no Distributions will be made pursuant to the Plan, and the Debtor and all holders of Claims and Equity Interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtor believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each Class of Claims and Equity Interests encompass Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### B.    Claims Estimates May Be Incorrect

There can be no assurance that the estimated Claim amounts set forth herein are correct. The actual allowed amounts of Claims may differ materially from the estimates.

### C.    No Duty to Update Disclosures

The Debtor has no duty to update the information contained in this Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless the Debtor is required to do so pursuant to an order of the Bankruptcy Court. Delivery of the Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

### D.    Representations Outside this Disclosure Statement

This Disclosure Statement contains representations concerning or related to the Debtor and the Plan that are approved by the Bankruptcy Code and the Bankruptcy Court. Please be advised that any representations or inducements outside this Disclosure Statement and any related documents which are intended to secure your acceptance or rejection of the Plan should not be relied upon by holders of Claims that are entitled to vote to accept or reject the Plan.

### E.    No Admission

The information and representations contained herein shall not be construed to constitute an admission of, or be deemed evidence of, any legal effect of the Plan on the Debtor or holders of Claims and Equity Interests.

### F.    Tax and Other Related Considerations

A discussion of potential tax consequences of the Plan is provided in Section XI hereof; however, the content of this Disclosure Statement is not intended and should not be construed as tax, legal, business or other professional advice. Holders of Claims and/or Equity Interests should seek advice from their own independent tax, legal or other professional advisors based on their own individual circumstances.

## IX.    LEGAL PROCEEDINGS

### A.    Retention of Causes of Action

Pursuant to the Bankruptcy Code, a debtor may seek to recover, through adversary proceedings in the bankruptcy court, certain transfers of the debtor's property, including payments of cash, made while the debtor was insolvent during the ninety (90) days immediately prior to the commencement of the bankruptcy case (or, in the case of a transfer to, or on behalf of, an "insider," one year prior to the commencement of the bankruptcy case) in respect of antecedent debts to the extent the transferee received more than it would have received on accounts of such pre-existing debt had the debtor been liquidated under chapter 7 of the Bankruptcy Code. Such adversary proceedings typically arise under sections 542, 543, 544, 547 through 551, and/or 553 of the Bankruptcy Code.

However, there are certain defenses to claims seeking to avoid and recover transfers made by a debtor described above. For example, transfers made in the ordinary course of the debtor's and the transferee's business according to ordinary business terms are not recoverable. Furthermore, if the transferee extended credit contemporaneously with or subsequent to the payment, and prior to the commencement of the bankruptcy case, for which the defendant was not repaid, such extension constitutes an offset against an otherwise recoverable transfer of property. If a payment is recovered by a debtor, the defendant has a general unsecured claim against the debtor to the extent of the recovery.

During the ninety (90) day period immediately preceding the Petition Date, while the Debtor was presumed to be insolvent, the Debtor made various payments and other transfers of its property to creditors on account of antecedent debts. In addition, during the one-year period before the Petition Date, the Debtor may have made certain transfers of its property to, or for the benefit of, certain "insiders." Some of the aforementioned payments or transfers may be subject to adversary proceedings seeking to avoid and recover the payments or transfers by the Debtor's bankruptcy Estate pursuant to sections 329, 542, 543, 544, 547 through 551, and/or 553 of the Bankruptcy Code.

The Liquidating Trustee will hold all Claims, Causes of Action, and other legal and equitable rights that the Debtor had (or had power to assert) immediately prior to confirmation of

the Plan, including actions for the avoidance and recovery of Estate property under Bankruptcy Code sections 329 and 550, or transfers avoidable under sections 542, 543, 544, 547 through 551, and/or 553 of the Bankruptcy Code. The Plan preserves all of the Debtor's rights in respect of all Claims and Causes of Action, transfers the Debtor's rights in respect of such Claims and Causes of Action to the Liquidating Trust, and empowers the Liquidating Trustee on behalf of the Liquidating Trust to investigate, prosecute, collect, and/or settle the Claims and Causes of Action as the Liquidating Trustee, in his business judgment, may deem appropriate.

The Debtor's Schedules of Assets and Liabilities, as amended, identify creditors whose Claims are disputed, and the Debtor's Statement of Financial Affairs identifies the parties (known to the Debtor as of the Petition Date) who received payments and transfers from the Debtor, which payments and transfers may be avoidable under the Bankruptcy Code. Moreover, the Liquidating Trustee will investigate Avoidance Actions and Causes of Action the Liquidating Trust may have against both insiders and third parties, including but not limited to directors, officers, affiliates, parent companies, subsidiaries, landlords, contract counterparties, service providers, employees, and/or investors. Said Avoidance Actions and Causes of Action include, but are not limited to, potential causes of action for breach of contract, negligence, and/or intentional torts against the Debtor's members, officers, directors, affiliates, employees, agents, landlords, and/or partners. However, the Debtor is preserving all Causes of Action against Secured Lender for any amounts due and owing by Secured Lender pursuant to the APA (and Final Sale Order) not yet paid, and Secured Lender is preserving all Causes of Action against the Debtor and the Estate for any of the Debtor's obligations owing to Secured Lender under the APA. The Liquidating Trustee will investigate potential objections to Claims, Avoidance Actions, and Causes of Action; therefore, the Debtor is unable to provide any meaningful estimate of amounts that could be recovered. THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY SUCH AFOREMENTIONED AVOIDANCE ACTIONS, CAUSES OF ACTION, OR OBJECTIONS TO PROOFS OF CLAIM. ENTRY OF THE CONFIRMATION ORDER SHALL NOT CONSTITUTE A WAIVER OR RELEASE BY THE DEBTOR OR ITS ESTATE OF ANY AVOIDANCE ACTION, CAUSE OF ACTION, OR OBJECTION TO PROOF OF CLAIM, EXCEPT AS EXPRESSLY PROVIDED FOR BY THE PLAN OR BY FINAL ORDER OF THE BANKRUPTCY COURT. ON AND AFTER THE EFFECTIVE DATE, AND PURSUANT TO BANKRUPTCY CODE SECTION 1123(b)(3), THE LIQUIDATING TRUSTEE SHALL BE DESIGNATED REPRESENTATIVE OF THE ESTATE WITH RESPECT TO, AND SHALL BE ASSIGNED, ALL AVOIDANCE ACTIONS AND CAUSES OF ACTION ARISING UNDER SECTIONS 542, 543, 544, 547 THROUGH 551, AND 553 OF THE BANKRUPTCY CODE AND ALL CAUSES OF ACTION BELONGING TO THE DEBTOR WHICH EXIST OUTSIDE OF BANKRUPTCY (THE "***TRANSFERRED CAUSES OF ACTION***"). THE LIQUIDATING TRUSTEE SHALL BE AUTHORIZED TO INVESTIGATE, ENFORCE, PROSECUTE, SETTLE, COLLECT, OR COMPROMISE THE TRANSFERRED CAUSES OF ACTION.

Creditors should understand that legal rights, Claims, and Causes of Action the Debtor may have against them, if any exist, are retained under the Plan for prosecution unless a specific order of the court authorizes the Debtor to release such legal rights, Claims, and Causes of Action. AS SUCH, CREDITORS ARE CAUTIONED NOT TO RELY ON (I) THE ABSENCE OF THE LISTING OF ANY LEGAL RIGHT, CLAIMS, OR RIGHT OF ACTION AGAINST A PARTICULAR CREDITOR IN THE DISCLOSURE STATEMENT, PLAN, SCHEDULES OF ASSETS AND LIABILITIES, OR STATEMENT OF FINANCIAL AFFAIRS OR (II) THE

ABSENCE OF LITIGATION OR DEMAND PRIOR TO THE EFFECTIVE DATE OF THE PLAN AS ANY INDICATION THAT THE DEBTOR DOES NOT POSSESS OR DOES NOT INTEND TO PROSECUTE A PARTICULAR RIGHT, CLAIM, OR RIGHT OF ACTION IF A PARTICULAR CREDITOR VOTES TO ACCEPT THE PLAN. IT IS THE EXPRESSED INTENTION OF THE PLAN TO PRESERVE ALL RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTOR, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE DEBTOR'S ESTATE AND ITS CREDITORS.

IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN, CREDITORS AND INTEREST HOLDERS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTOR WITHIN NINETY (90) DAYS PRIOR TO THE PETITION DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ALL AVOIDANCE ACTIONS, CAUSES OF ACTION, AND OBJECTIONS TO CLAIMS, AND THAT THE PLAN AUTHORIZES THE LIQUIDATING TRUST TO PROSECUTE THE SAME.

## X.    ALTERNATIVES TO PLAN AND LIQUIDATION ANALYSIS

There are three possible consequences if the Plan is rejected or if the Bankruptcy Court refuses to confirm the Plan: (a) the Bankruptcy Court could dismiss the Debtor's Chapter 11 Bankruptcy Case, (b) the Debtor's Chapter 11 Bankruptcy Case could be converted to a liquidation case under Chapter 7 of the Bankruptcy Code, or (c) the Bankruptcy Court could consider an alternative plan of liquidation proposed by the Debtor or by some other party.

### A.    Dismissal

The most remote possibility is dismissal. If the Debtor's Bankruptcy Case were to be dismissed, the Debtor would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code. Dismissal would force a race among creditors to take over and dispose of the Debtor's available assets. Even the most diligent unsecured creditors would likely fail to realize any significant recovery on their claims.

### B.    Chapter 7 Liquidation

A straight liquidation bankruptcy, or Chapter 7 case, requires liquidation of the bankruptcy debtor's assets by an impartial trustee. In a Chapter 7 case, the amount unsecured creditors receive depends on the net estate available after all assets of the debtor have been reduced to cash. The cash realized from liquidation of the debtor's assets would be in accordance with the order of distribution prescribed in Bankruptcy Code section 507.

If the Plan or an alternative plan is not confirmed, it is likely that the Debtor's Bankruptcy Case will be converted to a case under Chapter 7 of the Bankruptcy Code, in which case a trustee would be appointed to monetize the Debtor's assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. Whether a bankruptcy case is one under Chapter 7 or Chapter 11, Secured Claims, Administrative Claims (to the extent allowed by the Court), and Priority Unsecured Claims, are entitled to be paid in full before unsecured creditors receive any funds.

If the Debtor's Bankruptcy Case is converted to Chapter 7, the present Administrative Claims may have a priority lower than priority claims generated by the Chapter 7 case, such as the Chapter 7 trustee's fees or the fees of attorneys, accountants and other professionals engaged by the trustee.

If this Bankruptcy Case is converted, the Bankruptcy Court will appoint a trustee to monetize the Debtor's property and assets and distribute the proceeds to creditors in accordance with the Bankruptcy Code's priority scheme. It is likely that the Chapter 7 trustee would have little or no experience or knowledge of the Debtor's businesses or their records or assets. A substantial period of education, which would include added time and cost, would be required in order for any Chapter 7 trustee to wind the case up effectively.

The Chapter 7 trustee would be entitled to receive the compensation allowed under Bankruptcy Code section 326. The trustee's compensation is based on 25% of the first $5,000 or less; 10% of any amount in excess of $5,000 but not in excess of $50,000; 5% of any amount in excess of $50,000 but not in excess of $1 million; and reasonable compensation not to exceed 3% of any amount in excess of $1 million, on all funds disbursed or turned over in the bankruptcy case by the trustee to parties in interest (excluding the Debtor, but including the holders of Secured Claims). The trustee would be compensated for any distribution made to secured creditors and administrative claimants. The trustee's compensation would be paid as a cost of administration of the Chapter 7 estate, and may have priority over the costs and expenses incurred in the Chapter 11 case and any payment to unsecured creditors.

It is very likely that the Chapter 7 trustee would retain his own professionals (including attorneys and financial advisors) whose fees would also constitute priority claims in the Chapter 7 case, with a priority that may be higher than those claims arising as part of the administration of the Chapter 11 case. The Plan Proponent anticipates that a new set of professionals would incur substantial time and expense familiarizing themselves with the complexity of this case, with no corresponding benefit. The fees to be paid to these new professionals would be paid in full prior to any distribution to unsecured creditors. Even if a trustee were to retain MRB as litigation counsel on a pure contingency basis, a trustee would likely retain separate general counsel who would be completely new to the case and incur substantial fees becoming educated about the history of the case and the Causes of Action.

The Plan Proponent believes that liquidation under Chapter 7 would result in smaller distributions being made to Claimholders than those provided for in the Plan. Pursuant to the terms of the proposed Plan, the Secured Lender has committed to providing the Secured Lender's Contribution which will be used to pay pro rata distributions to holders of allowed priority and general unsecured claims. The Secured Lender Contribution will not be paid in the event this case converts to Chapter 7. Moreover, as previously noted, conversion to Chapter 7 would give rise to (a) additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee and (b) additional expenses and Claims, some of which would be entitled to priority. In a Chapter 7 liquidation, it is expected that general unsecured creditors would receive a lower recovery on their claims. The Liquidation Analysis is attached as "**Exhibit 2**." The Debtor prepared a Liquidation Analysis under two (2) separate scenarios: (1) the first assumes no conversion to Chapter 7 and that the Estate will not realize any additional recoveries from the prosecution of litigation claims; and (2) the second assumes conversion to

Chapter 7, that the Estate will not realize any additional recoveries from the prosecution of litigation claims, and the Chapter 7 trustee will seek his/her trustee distribution on the disbursement of $43,000,000, plus $50,000 for the administrative professional fees of the Chapter 7 trustee. These amounts are not estimates or upper-bounds of potential recoveries, but merely illustrative because the amount of net litigation recoveries cannot be estimated with any certainty since all litigation contains inherent risks and is subject to many factors. While there can be no assurances regarding the amount of any additional litigation revenues received by the Estate, the Debtor reasonably believes that the Liquidating Trustee's retention will yield a significant savings to the Estate and its creditors. The Liquidation Analysis does not include the fees and costs that may be incurred, if any, in the event of an appeal of the order confirming the Plan.

### C. Alternative Plan

No alternative plan has been filed.

## XI. Injunction and Releases

**As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all Persons that have held, currently hold or may hold a Claim, Equity Interest or other debt or liability that is treated pursuant to the terms of the Plan are enjoined from taking any of the following actions on account of any such Claims, Equity Interests, debts or liabilities, other than actions brought to enforce any rights or obligations under the Plan or against the Debtor, the Liquidating Trustee, the Estate, the Trust Assets or Estate property: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff of any kind against any debt, liability or obligation; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.**

**On the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, in exchange for the Secured Lender Contribution and the other obligations of the Secured Lender hereunder and in the Secured Lender Sale Motion, in consideration for the obligations under the Plan, the rights as otherwise set forth in the Plan to distributions (if any), and the Cash and other contracts, instruments, releases, agreements or documents to be delivered in connection with the Plan (if any), each Person or Entity that has held, holds or may hold a Claim or Interest, as applicable, in the Chapter 11 Case will be deemed to forever release, waive, and discharge all claims, demands, debts, rights, causes of action or liabilities against the Secured Lender and its present or former officers, directors, shareholders, members, managers, agents, employees, attorneys, partners, associates and insurers advisors, attorneys or brokers, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence arising out of, related to or in connection with, directly or indirectly, the Debtor, the Debtor's bankruptcy estate, the Mortgage, the Properties, and/or the facts and circumstances related thereto.**

## XII.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

A summary description of certain material United States federal income tax consequences of the Plan is provided below. This description is for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various tax consequences of the Plan as discussed herein. Only the principal United States federal income tax consequences of the Plan to the Debtor and to holders of Claims who are entitled to vote or to accept or reject the Plan are described below. No rulings or determination of the IRS or any other tax authorities have been sought or obtained with respect to any tax consequences of the Plan, and the discussion below is not binding upon the IRS or such other authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Plan to the Debtor or any holder of the Claim. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.

The discussion of the United States federal income tax consequences below is based on the Internal Revenue Code of 1986, as amended (the "***Tax Code***"), Treasury Regulations, judicial authorities, published positions of the IRS and other applicable authorities, all as in effect on the date of this document and all of which are subject to change or differing interpretations (possibly with retroactive effect).

The following discussion does not address foreign, state or local tax consequences of the Plan, nor does it purport to address the United States federal income tax consequences of the Plan to special classes of taxpayers (e.g., banks and certain other financial institutions, insurance companies, tax-exempt organizations, governmental entities, Person that are, or hold their Claims through, pass-through entities, Persons whose functional currency is not the United States dollar, foreign Persons, dealers in securities or foreign currency, employees, Persons who received their Claims pursuant to the exercise of an employee stock option or otherwise as compensation and Persons holding Claims that are hedge against, or that are hedged against, currency risk or that are part of a straddle, constructive sale or conversion transaction). Furthermore, the following discussion does not address United States federal taxes other than income taxes.

Each Claimholder is strongly urged to consult its own tax advisor regarding the United States federal, state, and local and foreign tax consequences of the transactions described herein and in the Plan. The following summary is not a substitute for careful tax planning and advice based on individual circumstances. All creditors are advised to consult their own tax advisors.

### A.    United States Federal Income Tax Consequences to the Debtor

*Cancellation of Indebtedness Income*

Upon implementation of the Plan, the amount of the Debtor's aggregate outstanding indebtedness will be reduced substantially. In general, the discharge of a debt obligation in exchange for an amount of cash and other property having a fair market value (or, if applicable, in the case of a new debt instrument, an "issue price") less than the "adjusted issue price" of the debt gives rise to cancellation of indebtedness ("***COD***") income that passes through from the debtor to

partners on Schedule K-1; COD income will not be taxable to a partner if the partner is bankrupt or insolvent, to the extent of such insolvency.

**B.    United States Federal Income Tax Consequences to Claimholders of Debtor**

The United States federal income tax consequences to Claimholders (including the character, timing and amount of income, gain or loss recognized) will depend upon, among other things, (1) whether the Claim and the consideration received in respect thereof are "securities" for the United States federal income tax purposes; (2) the manner in which a holder acquired a Claim; (3) the length of time the Claim has been held; (4) whether the Claim was acquired at a discount; (5) whether the holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years; (6) whether the holder has previously included in its taxable income accrued but unpaid interest with respect to the Claim; (7) the holder's method of tax accounting; and (8) whether the Claim is an installment obligation for United States federal income tax purposes. Therefore, Claimholders should consult their own tax advisors for information that may be relevant to their particular situations and circumstances and the particular tax consequences to them of the transactions contemplated by the Plan.

1.      Gain or Loss Recognition on the Satisfaction of Claims

Each Creditor will generally recognize gain or loss with respect to its Claim in an amount equal to the difference between (i) the "amount realized" with respect to its Claim and (ii) the tax basis of its Claim. A Creditor's "amount realized" will equal the sum of the cash and the fair market value of other property, including New Common Stock, if any, received by the Creditor.

2.      Character of Gain or Loss

In general, the character of any gain or loss recognized by a Creditor as capital or ordinary will depend on whether the Claim constitutes a capital asset in the hands of the Creditor. To the extent a debt instrument is acquired after its original issuance for less than the issue price of such instrument, however, it may have market discount. A holder of a Claim with market discount must treat any gain recognized on the satisfaction of such Claim as ordinary income to the extent that it does not exceed the market discount that has already been accrued with respect to such Claim.

3.      Information Reporting and Backup Withholding

Certain payments, including payments in respect of accrued interest or market discount, are generally subject to information reporting by the payor to the IRS. Moreover, such reportable payments are subject to backup withholding under certain circumstances. Under the Tax Code's backup withholding rules, a United States holder may be subject to backup withholding at the applicable rate with respect to certain distributions or payments pursuant to the Plan, unless the holder comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or provides a correct United States taxpayer identification number and certifies under penalty of perjury that the holder is a U.S. Person, the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividend and interest income.

Backup withholding is not an additional tax. Amounts withheld under the backup

withholding rules may be credited against a holder's United States federal income tax liability, and a holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS.

### C.    Importance of Obtaining Professional Tax Assistance

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIMHOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, CLAIMHOLDERS ARE STRONGLY URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE, AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN, INCLUDING WITH RESPECT TO TAX REPORTING AND RECORD KEEPING REQUIREMENTS.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

ב"ד

### XIII.  CONCLUSION

This Disclosure Statement provides information regarding the Debtor's bankruptcy and the potential benefits that might accrue to holders of Claims against and Equity Interests in the Debtor under the Plan as proposed. The Debtor believes that the recoveries under the Plan to the holders of Allowed Claims will exceed the recoveries that may be available under chapter 7 liquidation. The Debtor has reached an agreement with the Liquidating Trustee whereby the Liquidating Trustee will receive compensation as described herein. The Plan Proponent, therefore, urges interested parties to vote in favor of the Plan.

Costa Hollywood Property Owner LLC,
a Delaware limited liability company

    By: Costa Hollywood Development Holdings LLC,
    a Delaware limited liability company
    Its:    Manager and Sole Member

        By:    Liberty Grande, LLC
        a Florida limited liability company
        Its:    Sole Member

            By:    _____
                  Moses Bensusan
            Its:    Manager and Sole Member

            E-filed by:    _s/ James C. Moon_
                  James C. Moon, Esquire
                  Florida Bar No. 938211
                  jmoon@melandrussin.com
                  Peter D. Russin, Esquire
                  Florida Bar No. 765902
                  prussin@melandrussin.com

                  MELAND RUSSIN & BUDWICK, P.A.
                  3200 Southeast Financial Center
                  200 South Biscayne Boulevard
                  Miami, Florida 33131
                  Telephone: (305) 358-6363
                  Telecopy: (305) 358-1221

                  *Attorneys for Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                        Chapter 11

COSTA HOLLYWOOD PROPERTY OWNER, LLC[1]          Case No. 19-22483-AJC

      Debtor.

_____/


# FIRST AMENDED
## CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE DEBTOR


**MELAND RUSSIN & BUDWICK, P.A.**
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
James C. Moon, Esquire
Florida Bar No. 938211
jmoon@melandrussin.com
Meaghan E. Murphy, Esquire
Florida Bar No. 102770
mmurphy@melandrussin.com
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida, 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for the Debtor in Possession*

Dated: April 22, 2020

---

[1] The Debtor's current mailing address is 777 North Ocean Drive, Hollywood, FL 33019. The Debtor's EIN is 47-4883778.

Exhibit 1

## TABLE OF CONTENTS

Pages

INTRODUCTION ................................................................................................... 1

**ARTICLE I  DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME** ................................................................................................. 1

1.1     *Scope of Definitions.* ........................................................................ 1

1.2     *Definitions.* ...................................................................................... 1

1.3     *Interpretation.* .................................................................................. 9

1.4     *Computation of Time.* ....................................................................... 9

2.1     *Administrative Expense Claims and Professional Claims.* ................ 9

2.2     *Priority Claims* .............................................................................. 10

2.3     *Claims for Statutory Fees.* .............................................................. 10

**ARTICLE III  CLASSIFICATION, IMPAIRMENT AND TREATMENT OF  CLAIMS AND EQUITY INTERESTS** ...................................................... 11

3.1     *Classification.* ................................................................................ 11

3.2     *Separate Classes and Treatment* .................................................... 15

3.3     *Claims May Be in More Than One Class* ........................................ 15

3.4     *Class 1 – Secured Tax Claims* ....................................................... 15

3.5     *Class 2 – Allowed Secured Claim of City of Hollywood* ................. 15

3.6     *Class 3 – Allowed Secured Claim of United Leasing, Inc.* ............. 15

3.7     *Class 4 - Allowed Secured Claim of 777 N. Ocean Drive, LLC (Secured Lender)* ....................................................................................... 16

3.8     *Class 5 – Allowed Secured Mechanic's Lien Claims* ..................... 16

3.9     *Class 6 – Allowed Other Secured Claims* ...................................... 17

3.10    *Class 7 – Allowed Priority Deposit Claims.* .................................... 17

3.11    *Class 8 – Allowed General Unsecured Claims* ................................ 17

3.12    *Class 9 – Equity Interests* .............................................................. 18

**ARTICLE IV  MEANS OF IMPLEMENTING THE PLAN** ................................ 18

4.1     Funding of Plan. .............................................................................. 18

4.2     Secured Lender Settlement. ............................................................. 18

4.3     Dissolution of Corporate Entity. ..................................................... 20

4.4     Corporate Action. ........................................................................... 20

4.5     Cancelled Documents. ..................................................................... 20

4.6     Investments. .................................................................................... 20

i

4.7 Release of Liens. ...................................................................................... 21

4.8 Further Actions to Effectuate Plan. ......................................................... 21

**ARTICLE V THE LIQUIDATING TRUSTEE** ................................................. 21

5.1 *Selection of Liquidating Trustee.* ............................................................ 21

5.2 *Purpose of the Liquidating Trustee.* ........................................................ 21

5.3 *Compensation.* ......................................................................................... 21

5.4 *Payment of Professionals Retained by the Liquidating Trustee.* ........... 21

5.5 *Resignation, Death or Removal of the Liquidating Trustee.* .................. 22

5.6 *Authority and Limitations.* ...................................................................... 22

5.7 *Liquidating Trustee's Limitation of Liability and Indemnification Rights.* ......... 24

5.8 *Operations of the Debtor.* ....................................................................... 25

5.9 *Vesting of Assets of the Debtor.* ............................................................. 27

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTION** ......................... 28

6.1 *Distributions.* .......................................................................................... 28

6.2 *Delivery of Distributions.* ....................................................................... 29

6.3 *Unclaimed Property.* ............................................................................... 29

6.4 *No Interest Unless Otherwise Provided.* ................................................. 29

6.5 *De Minimis Distributions.* ....................................................................... 29

6.6 *Manner of Payment.* ................................................................................ 29

6.7 *Timing of Distributions.* .......................................................................... 29

6.9 *Fractional Cents.* .................................................................................... 30

**ARTICLE VII PROCEDURES FOR RESOLVING AND  TREATING DISPUTED AND CONTINGENT CLAIMS** .............................................................................. 30

7.1 *Prosecution of Objections.* ..................................................................... 30

7.2 *Administration of Disputed Claims.* ....................................................... 30

7.3 *Estimation of Claims.* .............................................................................. 31

7.4 *Objections to Fully Impaired Claims.* ..................................................... 31

7.5 *Disallowance of Claims.* .......................................................................... 32

**ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ....... 32

8.1 *General Treatment: Rejected if not Previously Assumed.* ...................... 32

8.2 *Bar to Rejection Damages.* ...................................................................... 32

8.3 *Rejection Claims.* .................................................................................... 32

**ARTICLE IX CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN** ...... 33

9.1 *Conditions to Effectiveness of Plan.* ....................................................... 33

9.2     *Notice of Confirmation of the Plan.* ............................................................. 33

**ARTICLE X  RETENTION OF JURISDICTION** ................................................... 33

10.1    *Retention of Jurisdiction.* ......................................................................... 33

10.2    *Abstention and Other Courts.* ................................................................... 35

**ARTICLE XI  INJUNCTION AND RELEASE** ..................................................... 35

11.1    *Injunction.* ................................................................................................ 35

11.2    *Releases.* ................................................................................................... 35

**ARTICLE XII  MISCELLANEOUS PROVISIONS** ............................................. 36

12.1    *Section 1146 Exemption* ........................................................................... 36

12.2    *Severability.* .............................................................................................. 36

12.3    *Setoffs and Recoupments* .......................................................................... 36

12.4    *Binding Effect* ........................................................................................... 37

12.5    *Governing Law.* ......................................................................................... 37

12.6    *Timing of Distributions.* ............................................................................ 37

12.7    *Payment of Statutory Fees and Compliance with Reporting Requirements.* ......... 37

12.8    *Termination of Independent Contractors and Limitation of Liability/Release of Professional.* .................................................... 37

12.9    *Tax Liability.* ............................................................................................. 38

12.10   *Revocation or Withdrawal of Plan:* .......................................................... 38

12.11   *Nonmaterial Modifications.* ...................................................................... 38

12.12   *Material Modifications.* ............................................................................. 38

12.13   *Cramdown.* ................................................................................................ 38

12.14   *Notices.* ..................................................................................................... 39

12.15   *Successors and Assigns.* ............................................................................ 39

# INTRODUCTION

Costa Hollywood Property Owner, LLC, debtor in possession in the above-captioned Chapter 11 Case (the "*Debtor*") proposes the following First Amended Chapter 11 Plan of Liquidation (as amended from time to time, and including all addenda, exhibits, schedules and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference, the "*Plan*"), pursuant to the provisions of chapter 11 of the Bankruptcy Code (as defined in Section 1.2. below).

For a discussion of the Debtor's history, business, operations, assets and liabilities and for a summary and analysis of the Plan, reference should be made to the Disclosure Statement. All Creditors are encouraged to read the Disclosure Statement and the Plan carefully before voting to accept or reject the Plan.

# ARTICLE I

# DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME

1.1    *Scope of Definitions.*

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in Article I of the Plan. Any term used in the Plan that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules (as defined below), shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2    *Definitions.*

a)    "Actions" or "Causes of Action" means, except as provided otherwise in the Plan, the Confirmation Order or any document, instrument, release or other agreement entered into in connection with the Plan, all claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to, any Avoidance Actions) whether known or unknown, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertible directly or derivatively in law, equity, or otherwise, that are or may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date against any Person based on law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown. Actions include, without limitation, those which are: (i) property of the bankruptcy estate under and pursuant to section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for avoidable transfers and preferences under and pursuant to sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under section 506(c) of the Bankruptcy Code; (vii) for subordination under section 510 of the Bankruptcy Code; (viii) related to federal or

1

state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) against any and all current and/or former officers and directors of the Debtor, including but not limited to for breach of fiduciary duty or aiding and abetting breach of fiduciary duty; (xi) under and pursuant to any policies for insurance, including for bad faith, maintained by the Debtor, including, without limitation, any liability insurance policy; (xii) for theft of corporate opportunity; (xiii) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xiv) for the right to seek a determination by the bankruptcy court of any tax, fine or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code; (xv) which arise under or as a result of any section of the Bankruptcy Code; and (xvi) for common law torts or aiding and abetting common law torts.

b)      "Administrative Bar Date" means the date fixed by the Bankruptcy Court as the last date for filing requests for allowance and payment of Administrative Expense Claims as set forth in Article II, Section 2.1(b).

c)      "Administrative Expense Claim" means a Claim for costs and expenses of administration allowed under sections 503, 507(a)(1) or 507(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed pursuant to Sections 330 or 503 of the Bankruptcy Code, the Protective Advance Claim (as defined herein), and any fees or charges assessed against the Estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

d)      "Affiliate" means any Person that is an "affiliate" of the Debtor within the meaning of section 101(2) of the Bankruptcy Code.

e)      "Allowed" when used with respect to a Claim, means a Claim: (a) which has been listed on the Schedules of the Debtor as other than disputed, contingent or unliquidated and as to which no proof of Claim or objection has been timely filed; (b) as to which a proof of Claim has been timely filed and either (i) no objection thereto has been timely filed or (ii) the Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (c) which has been allowed under the provisions of this Plan; (d) which is a Professional Claim for which a fee award amount has been approved by Final Order of the Bankruptcy Court; or (e) which is allowed pursuant to any stipulation of amount and nature of Claim executed by the Liquidating Trustee and Holder of the Claim on or after the Effective Date. For the avoidance of doubt, other than the Claims of Secured Lender, all claims against the Debtor, including those identified as "Allowed" herein, remain subject to review by parties-in-interest, including the Debtor, any official committee appointed by the United States Trustee, and the Liquidating Trustee, and to objection. To the extent any claim is referred to herein as "Allowed", it is only for purposes of providing a description of such claim's treatment under the Plan if ultimately allowed. In the event an objection is filed to a claim deemed "Allowed" for purposes of voting on the Plan, the claim may later be disallowed by the Court.

f)      "Avoidance Action" means a Cause of Action assertible by the Debtor or Liquidating Trustee, as successor to the Debtor, under sections 544, 547, 548, 549 or 550 of the Bankruptcy Code.

2

g)      "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each Holder of a Claim entitled to vote to accept or reject this Plan.

h)      "Bankruptcy Code" means title 11 of the United States Code, sections 101 *et seq*., as now in effect or as hereafter amended.

i)      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, or such other court having jurisdiction over the Chapter 11 Case.

j)      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended and the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

k)      "Bar Date" means January 27, 2020 (excluding government claims which must be filed by March 17, 2020) the date or dates established by the Bankruptcy Court as the last date for filing proofs of claim against the Debtor.

l)      "Beneficiary" means holder of an Allowed Claim.

m)      "Bidding Procedures Order" means that certain Order of the Bankruptcy Court granting the Secured Lender Sale Motion to the extent of approving certain bidding procedures and related protections and scheduling in connection with the Debtor's proposed sale of the Properties.

n)      "Business Day" means any day that is not a Saturday, a Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

o)      "Cash" means cash or cash equivalents, including but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

p)      "Cash Collateral Orders" shall mean those certain Interim Cash Collateral Orders [ECF Nos. 69, 129] and/or the Final Cash Collateral Order [ECF No. 189].

q)      "Chapter 11 Case" means the chapter 11 case pending for the Debtor in the Bankruptcy Court case number 19-22483-AJC.

r)      "Claim" has the same meaning ascribed in 11 U.S.C. § 101(5).

s)      "Class" means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

t)      "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

u)      "Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

3

v)	"Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code; as such order may be amended, modified or supplemented.

w)	"Creditor" has the same meaning ascribed in 11 U.S.C. § 101(10) and shall refer to any Holder of a Claim against the Debtor or Holder of any Claim against property of the Debtor as defined in section 102(2) of the Bankruptcy Code.

x)	"Debtor" means Costa Hollywood Property Owner, LLC.

y)	"Debtor in Possession" means the Debtor with the status and rights conferred by sections 1107 and 1108 of the Bankruptcy Code.

z)	"Disclosure Statement" means the disclosure statement for the Plan approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code (including all schedules and exhibits thereto) as such disclosure statement may be amended or modified from time to time.

aa)	"Disclosure Statement Approval Order" means that certain order of the Bankruptcy Court, dated **[TBD]**, 2020 [ECF No. **TBD**] approving, among other things, the Disclosure Statement as containing adequate information pursuant to Section 1125 of the Bankruptcy Code, and setting various deadlines in connection with Confirmation of the Plan.

bb)	"Disputed Claim" means any Claim against the Debtor or property of the Debtor to the extent that: (a) the Allowance of such Claim is the subject of an objection, appeal or motion to estimate that has been timely filed by a party in interest and which objection, appeal or motion has not been determined by a Final Order. In the event that any part of a Claim is disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless the Debtor or the Liquidating Trustee, as applicable, and the Holder thereof agree otherwise.

cc)	"Disputed Claims Reserve" means a reserve established to receive and hold, in a segregated account in a domestic banking institution, to be established by the Liquidating Trustee, Cash in an amount equal to the aggregate of amounts thereof or such other amounts as the parties may agree or the Bankruptcy Court may order, that would have been distributed on the Effective Date on account of such Disputed Claims against the Debtor or its property (had they been Allowed at that time).

dd)	"Effective Date" means the Business Day designated by the Proponent which is at least ten days after the date on which all of the conditions specified in Article IX of this Plan are first satisfied or waived.

ee)	"Entity" has the meaning ascribed in 11 U.S.C. § 101(15).

ff)	"Equity Interest" means any ownership interest or share in any of the Debtor (including, without limitation all rights to obtain such an interest or share in any of the Debtor).

4

gg)    "Estate" means the estate created in this Chapter 11 Case for the Debtor pursuant to section 541 of the Bankruptcy Code.

hh)    "File," "Filed" or "Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

ii)    "General Distribution Fund" means the fund created as of the Effective Date under the control of the Liquidating Trustee into which the following amounts shall be deposited in accordance with this Plan (i) that portion of the Secured Lender's Contribution designated as the Professional Claims' Fund, which shall be used by the Liquidating Trustee to pay Allowed Professional Claims, (ii) that portion of the Secured Lender's Contribution designated as the Unsecured Creditors' Fund, which shall be used by the Liquidating Trustee solely to make a distribution to holders of Allowed Priority Claims and Allowed General Unsecured Claims under the Plan, (iii) that portion of the Secured Lender's Contribution designated as the Liquidating Trust Fund, which shall be used to fund the operations and efforts of the Liquidating Trustee after the Effective Date, and (iv) any and all proceeds of Trust Assets generated by the Liquidating Trustee after the Effective Date.

jj)    "General Unsecured Claim" means a Claim that is not an Administrative Expense, a Secured Claim, a Priority Claim or a Subordinated Claim.

kk)    "Holder" means an Entity or individual holding a Claim or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

ll)    "Condo-Hotel" shall mean the Debtor's business located at 777 North Ocean Drive, Hollywood, FL 33019.

mm)    "Impaired" means impaired within the definition of section 1124 of the Bankruptcy Code.

nn)    "Insider" has the meaning ascribed in 11 U.S.C. § 101(31).

oo)    "Lien" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind affecting any asset or any property of the Debtor contemplated by section 101(37) of the Bankruptcy Code.

pp)    "Liquidating Trust Agreement" shall mean the Costa Hollywood Property Owner, LLC Liquidating Trust Agreement, a copy of which will be supplemented as **Exhibit** "**A**."

qq)    "Liquidating Trust" shall mean the Costa Hollywood Property Owner, LLC Liquidating Trust.

rr)    "Liquidating Trustee" shall mean a disinterested person selected on or before Confirmation and appointed by the Bankruptcy Court to undertake the acts and obligations set forth in this Plan.

5

ss)  "Liquidating Trust Fund" shall have the meaning set forth in the Secured Lender's Contribution.

tt)  "Mortgage" shall mean that certain Certificate of Future Advance and Amended and Restated Mortgage and Security Agreement, dated as of July 1, 2016, which was recorded on July 20, 2016 in the Official Records of Broward County, Florida as Instrument No. 1138200788, by and from the Debtor to the Secured Lender and which encumbers the Properties as a first mortgage lien.

uu)  "Person" means an individual, corporation, limited partnership, general partnership, association, limited liability company, estate, trust, joint venture, unincorporated organization, any governmental unit, other entity or group.

vv)  "Petition Date" means September 19, 2019, the date on which the Debtor commenced its Chapter 11 Case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

ww)  "Plan" means this chapter 11 liquidating plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

xx)  "President" of the Debtor shall mean Moses Bensusan.

yy)  "Priority Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under sections 507(a)(3), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8) or (a)(9) of the Bankruptcy Code.

zz)  "Priority Deposit Claim" means an unsecured claim of an individual, to the extent of $3,025.00 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, . . . of property, for the personal, family or household use of such individuals, that were not delivered or provided pursuant to section 507(a)(7) of the Bankruptcy Code. A Priority Deposit Claim is a type of Priority Non-Tax Claim.

aaa)  "Priority Non-Tax Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under sections 507(a)(3), (a)(4), (a)(5), (a)(6), (a)(7) or (a)(9) of the Bankruptcy Code, that is not a Priority Tax Claim.

bbb)  "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

ccc)  "Protective Advance Claim" shall mean any claim of Secured Lender arising under the Cash Collateral Orders, including but not limited to, amounts owed to the Secured Lender under any Debtor-in-Possession loan authorized and funded pursuant thereto, and any super-priority administrative expense claim granted to the Secured Lender thereunder.

ddd)  "Professional" means any professional employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

eee) "Professional Claim" means a Claim for compensation and/or reimbursement of expenses pursuant to section 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in this Chapter 11 Case.

fff) "Professional Claims Fund" shall have the meaning set forth in the Secured Lender's Contribution.

ggg) "Proponent" means the Debtor as proponent of the Plan.

hhh) "Properties" shall mean all of the real and personal property owned by the Debtor and located at or used in connection with the operations of the property commonly known as 327 & 319 Pierce Street and 330 & 348 Indiana Street, Hollywood, FL 33019.

iii) "Pro Rata Share" means, with respect to any distribution on account of any Allowed Claim in any Class, the ratio of (a) the amount of such Allowed Claim to (b) the sum of (i) all Allowed Claims in such Class and (ii) the aggregate maximum allowable amount of all Disputed Claims in such Class for which a reserve must be established under the Plan.

jjj) "Rejection Claim" means a Claim for damages resulting from the rejection of an executory contract by the Debtor pursuant to Section 8.3 of the Plan.

kkk) "Sale Order" shall mean that certain Order of the Bankruptcy Court granting the Secured Lender Sale Motion and approving the sale of the Debtor's Properties to the Secured Lender or the highest and/or best bidder therefor.

lll) "Schedules" means the Debtor's schedules of assets and liabilities filed with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

mmm) "Secured Tax Claim" means a Secured Claim for taxes or assessments held by a Governmental Unit, to the extent, if any, that such taxes and assessments are entitled to a security interest under applicable non-bankruptcy law that as priority over Secured Lender's Claim, as well as holders of tax certificates.

nnn) "Secured Claim" means a Claim that is secured by a Lien on, or security interest in, property of the Debtor, or that has the benefit of rights of setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in section 506 of the Bankruptcy Code.

ooo) "Secured Lender" means 777 N. Ocean Drive, LLC.

ppp) "Secured Lender's Contribution" means the aggregate amount contributed by the Secured Lender on and subject to the occurrence of the Effective Date of the Plan and the approval of the Secured Lender Settlement (i) for the payment of Allowed Professional Claims (the "**Professional Claims' Fund**"), (ii) for distribution to the Holders of Allowed Priority Claims and Allowed General Unsecured Claims under the Plan in the amount of $475,000.00 (the "**Unsecured Creditors' Fund**"); and (iii) a contribution to the Liquidated Trust on the Effective

7

Date for purposes of funding the Liquidating Trust in the amount of $100,000.00, plus $100,000 of the funds currently held in escrow by GreenbergTraurig on behalf of Stewart Title Guaranty Company, to be funded upon turnover of such funds to the Estate (the "***Liquidating Trust Fund***").

qqq)    "Secured Lender Sale Motion" shall mean that certain *Motion For The Entry Of (A) An Order Approving Bidding Procedures, (B) Approving Certain Protections to Stalking Horse Purchaser, (C) Approving Notice Procedures, and (D) an Order (i) Approving the Stalking Horse Purchase and Sale Agreement, (ii) Authorizing the Sale of Substantially all of the Assets of the Debtor Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (iii) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale, and (iv) Granting Related Relief* [ECF No. **TBD**] to be filed by the Debtor pursuant to the terms of which the Debtor proposes to sell the Properties to the Secured Lender or the highest or best bidder in connection therewith and pursuant to the Bidding Procedures Order

rrr)    "Secured Lender Settlement" means that certain settlement and compromise by and between the Debtor and the Secured Lender under and pursuant to Bankruptcy Rule 9019 as more particularly described in the Plan.

sss)    "Subordinated Claim" means, in accordance with section 510(b) of the Bankruptcy Code, any Claim arising from rescission of a purchase or sale of a security of the Debtor, for damages arising from the purchase or sale of such a security or for reimbursement of contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim or for any fine or penalty.

ttt)    "Trust Assets" means any and all Cash, assets, or other property of the Debtor of every kind and character existing and remaining with the Debtor as of the Effective Date and which is not otherwise subject to the Secured Lender's cash collateral in accordance with the Cash Collateral Orders, including without limitation (i) the General Distribution Fund (to be used solely for the purposes set forth therein), and (ii) Causes of Actions that are property of the Estate.

uuu)    "Turnover Action" means the adversary proceeding commenced on April 10, 2020 (20-01129-AJC) by Debtor against Greenberg Traurig, P.A. and Stewart Title Guaranty Corporation pursuant to 28 U.S.C. § 2201, Fla. Stat. Ch.86, 11 U.S.C. § 542, seeking, *inter alia*, an order directing the turnover of funds held in escrow by Greenberg Traurig P.A. on behalf of Stewart Title Guaranty Company.

vvv)    "Unimpaired" means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

www)   "Unsecured Creditors' Fund" shall have the meaning set forth in the Secured Lender's Contribution.

xxx)    "Voting Deadline" means the date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

1.3     *Interpretation.*

For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (c) unless otherwise specified, all references in the Plan to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of or to the Plan (d) the words "herein" and "hereto" refer to the Plan in their entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.4     *Computation of Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL CLAIMS, PRIORITY CLAIMS, PROTECTIVE ADVANCE CLAIMS AND STATUTORY FEES

2.1     *Administrative Expense Claims and Professional Claims.*

All Administrative Expense Claims of the Debtor shall be treated as follows:

a)      Each Holder of an Allowed Administrative Expense Claim shall receive the full amount thereof without interest in Cash, except to the extent that any Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment thereof, as soon as practicable after the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date that is 10 Business Days after an order of the Bankruptcy Court allowing such Administrative Expense Claim becomes a Final Order or (iii) as mutually agreed by the Liquidating Trustee and the Holder of such Allowed Administrative Expense Claim and approved by the Court.

b)      All requests for payment of Administrative Expense Claims (or any other means of preserving and obtaining payment of Administrative Expense Claims found to be effective by the Bankruptcy Court) (other than payment of the Protective Advance Claim) shall be filed by any applicable Bar Date established by the Bankruptcy Court; and if such requests for payment of Administrative Expense Claims are not so filed, the Holders of such Claims shall be forever barred and shall not be able to assert such Claims in any manner against the Debtor, the Secured Lender, the Liquidating Trustee, or the Trust Assets of the Debtor.

c)      Each Holder of an Allowed Professional Claim shall be paid from the Professional Claims' Fund included in the Secured Lender's Contribution.

d)      On or prior to the deadline set by the Bankruptcy Court for Professionals to file final fee applications, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the respective Petition Date through the Confirmation Hearing.

2.2   *Priority Claims*.

Each Holder of an Allowed Priority Claim shall receive on account of such Claim, (a) Cash equal to the amount of such Allowed Priority Claim, without post-petition interest or penalty, on the later of (i) the Effective Date or as soon as practicable thereafter or (ii) the date that is 10 Business Days after an order of the Bankruptcy Court allowing such Priority Tax Claim becomes a Final Order; or (b) deferred cash payment in the amount of allowed claims; or (c) such other treatment as each Holder and the Liquidating Trustee may agree. The Holders of such Claims shall be forever barred and shall not be able to assert such Claims in any manner against the Debtor, the Secured Lender, the Liquidating Trustee, or the Trust Assets of the Debtor. Allowed Priority Claims shall be paid from the Unsecured Creditors' Fund included in the Secured Lender's Contribution.

2.3   *Claims for Statutory Fees.*

Liquidating Trustee shall pay within ten (10) days after the Effective Date all fees incurred under 28 U.S.C. §1930 (a)(6) for the period ending on the Effective Date. All fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date will be assessed based solely on the disbursements made by the Liquidating Trustee and shall be paid by the Liquidating Trustee through the earlier of the closing of the Bankruptcy Case by the issuance of a final decree by the Bankruptcy Court or upon entry of an order dismissing or converting the Bankruptcy Case to Chapter 7. The Liquidating Trustee shall provide an appropriate affidavit indicating the cash disbursements for the period ending on the Confirmation Date and all relevant periods thereafter.

2.4   *Protective Advance Claim.*

The Protective Advance Claim shall be allowed in the full amount due and owing under the Cash Collateral Orders as of the Effective Date, including any and all expenditures related to the Properties referenced in said orders made by Secured Lender to pay pre and post-petition real estate taxes due at the Properties or any other pre and post-petition expenses including, without limitation, maintenance and other capital advances. Except to the extent that the holder of a Protective Advance Claim agrees in writing to a different treatment, to the extent not otherwise repaid prior to the Effective Date, the amount of Protective Advance Claim will be added to the Secured Lender's Allowed Secured Claim and treated in accordance with Class 2 herein.

## ARTICLE III

## CLASSIFICATION, IMPAIRMENT AND TREATMENT OF
## CLAIMS AND EQUITY INTERESTS

3.1 *Classification*.

All Claims and Equity Interests, except Administrative Expenses, Priority Tax Claims, Claims for Statutory Fees and the Protective Advance Claim, are placed in Classes as set forth below. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class, and such Claim has not been disallowed, paid or released prior to the Effective Date.

| Class | Claim | Treatment | Voting Rights |
|---|---|---|---|
| Class 1 | Secured Tax Claims | Unimpaired.<br><br>If Secured Lender closes on the purchase of the Properties as set forth in the Plan, then the Class 1 Claim shall be paid in full at closing and fully satisfied upon such closing. In the event the Secured Lender is not the successful purchaser for the Properties, then the Class 1 Claim shall be paid from the sale proceeds of such sale as a first priority lien thereon, and upon such payment the Class 1 Claim shall be deemed paid in full and fully satisfied. | Not Entitled to Vote |
| Class 2 | Allowed Secured Claim of City of Hollywood | Unimpaired.<br><br>If Secured Lender closes on the purchase of the Properties as set forth in the Plan, then the Class 2 Claim shall be paid in full at closing and fully satisfied upon such closing. In the event the Secured Lender is not the successful purchaser for the Properties, then the Class 2 Claim shall be paid from the sale proceeds of such sale, and upon such payment the Class 2 Claim shall be deemed paid in full and fully satisfied. | Not Entitled to Vote |

| Class 3 | Allowed Secured Claim of United Leasing, Inc. | Impaired.<br><br>To the extent that United Leasing, Inc. has an Allowed Secured Claim and such claim is higher in legal priority than that of the Secured Lender, if Secured Lender closes on the purchase of the Properties as set forth in the Plan, then the Class 3 Claim shall be paid in full at closing and fully satisfied upon such closing. In the event the Secured Lender is not the successful purchaser for the Properties, then the Class 3 Claim shall be paid from the sale proceeds of such sale, and upon such payment the Class 3 Claim shall be deemed paid in full and fully satisfied.<br><br>To the extent that United Leasing, Inc.'s Allowed Secured Claim is subordinate in priority to the Secured Lender, United Leasing, Inc.'s Allowed Secured Claim shall be treated as a Class 6 Claim. | Entitled to Vote |
| Class 4 | Allowed Secured Claim of 777 N. Ocean Drive, LLC (Secured Lender) | Impaired.<br><br>The Secured Lender has an Allowed Secured Claim in the amount of $47,189,513.79 plus interest, attorneys' fees and expenses, and the Protective Advance Claim. Pursuant to the Secured Lender Sale Motion to be filed contemporaneously with or subsequent to the Plan, the Debtor will seek to sell the Properties to the Secured Lender as the Stalking Horse Bidder, subject to the receipt of higher and/or better bids. The Secured Lender has agreed to acquire the Properties for an initial credit bid in the amount of $43,000,000.00, subject to the right to increase the purchase price through a credit bid up to and in the full amount of its Class 4 Claim.<br><br>In the event the Secured Lender is not the successful purchaser for the Properties, then the Class 4 Claim shall be paid from the sale | Entitled to Vote |

12

| | | | |
|---|---|---|---|
| | | proceeds of such sale and all then existing cash collateral after the payment of the Class 1 Claims, Class 2 Claim and Class 3 Claim (to the extent the Class 3 Claim has higher legal priority than Secured Lender's Class 4 Claim).<br><br>In either case, pursuant to the Secured Lender Settlement, the Secured Lender shall make the Secured Lender Contribution on the Effective Date, subject to the entry of an Order of the Bankruptcy Court approving the Secured Lender Settlement under Bankruptcy Rule 9019 as more fully set forth below.<br><br>To the extent there are proceeds from the Turnover Action, such proceeds shall, in the Debtor's sole discretion, either be paid upon the Confirmation Date or anytime thereafter to Secured Lender to either (1) reimburse the Secured Lender for funds it has or will advance to the Debtor pursuant to any order entered by the Court on the use of Cash Collateral or DIP Financing or (2) pay the amounts that Secured Lender may have to pay in connection with the Plan, including without limitation, the payments relating to the Secured Lender Contribution. The remainder of any proceeds from the Turnover Action shall be paid to the Secured Lender upon the Confirmation Date or anytime thereafter.. | |
| Class 5 | Allowed Secured Mechanic's Lien Claims | Impaired.<br><br>Paid in order of legal priority in class from the net proceeds of the sale of the Properties after all Class 1 Claims, Class 2 Claims, Class 3 Claims (to the extent the Class 3 Claim has legal priority higher than the Class 4 Claim) and Class 4 Claims are paid in full. Any deficiency claim will be treated as Class 8 Allowed General Unsecured Claim. | Entitled to vote. |

| Class 6 | Allowed Other Secured Claims | Impaired.<br><br>Paid in order of legal priority in class from the net proceeds of the sale of the Properties after all Class 1 Claims, Class 2 Claims, Class 3 Claims and Class 4 Claims are paid in full. Any deficiency claim will be treated as Class 8 Allowed General Unsecured Claim. | Entitled to vote. |
|---|---|---|---|
| Class 7 | Allowed Priority Deposit Claims | Unimpaired.<br><br>Unless such Holder agrees to accept a lesser treatment of an Allowed Priority Deposit Claim, each Holder of an Allowed Priority Deposit Claim shall receive, as soon as practicable in the discretion of the Liquidating Trustee, up to $3,025 of the Unsecured Creditors' Fund before payment of or reserve for the Allowed General Unsecured Claims. Any deficiency claim will be treated as Class 8 Allowed General Unsecured Claim. | Not entitled to vote. |
| Class 8 | Allowed General Unsecured Claims | Impaired.<br><br>Unless such Holder agrees to accept a lesser treatment of an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, as soon as practicable in the discretion of the Liquidating Trustee, (i) a Pro Rata Share of the Unsecured Creditors' Fund after payment of or reserve for the Allowed Priority Claims therefrom, and (ii) distributions from the Trust Assets after the Effective Date in the discretion of the Liquidating Trustee. | Entitled to vote. |
| Class 9 | Equity Interests in the Debtor | Impaired.<br><br>Equity Interests shall be canceled as of the Effective Date. | Not entitled to vote |

14

3.2    *Separate Classes and Treatment*

No Class, member of any Class or Holder of any Claim against the Debtor shall be entitled to or receive Cash or other property allocated for distribution to any other Class or to a Holder of a Claim, except as expressly specified in the Plan. The Liquidating Trustee shall not distribute any Cash or other property allocated to a Class, member of any Class or a Holder of a Claim to any other Class or member thereof or Holder of a Claim, except as expressly specified in the Plan or the Confirmation Order.

3.3    *Claims May Be in More Than One Class*

A Claim is part of a particular Class only to the extent that the Claim qualifies within the definition of that Class and such Claim is part of a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

3.4    *Class 1 – Secured Tax Claims*

Subject to the provisions of Article VI of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of the Secured Tax Claims, the holders of Secured Tax Claims on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Secured Tax Claim shall receive from the proceeds of the sale of the Properties payment in full of its Allowed Claim, or as may be otherwise agreed in writing between the Debtor and the holder of such Claim.

3.5    *Class 2 – Allowed Secured Claim of City of Hollywood*

Subject to the provisions of Article VI of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of its Allowed Secured Claim, City of Hollywood, on the Effective Date, or as soon as practicable after such Claim becomes an Allowed Claim, shall receive from the proceeds of the sale of the Properties payment in full of its Allowed Claim, or as may be otherwise agreed in writing between the Debtor and City of Hollywood.

3.6    *Class 3 – Allowed Secured Claim of United Leasing, Inc.*

Subject to the provisions of Article VI of the Plan with respect to Disputed Claims, to the extent that United Leasing, Inc. has an Allowed Secured Claim and such claim is higher in legal priority than that of the Secured Lender, on the Effective Date, or as soon as practicable after such Claim becomes an Allowed Claim, United Leasing, Inc. shall receive from the proceeds of the sale of the Properties payment in full of its Allowed Claim, or as may be otherwise agreed in writing between the Debtor and United Leasing, Inc.

To the extent that United Leasing, Inc.'s Allowed Secured Claim is subordinate in legal priority to the Secured Lender, United Leasing, Inc.'s Allowed Secured Claim shall be treated as a Class 6 Claim.

3.7     *Class 4 - Allowed Secured Claim of 777 N. Ocean Drive, LLC (Secured Lender)*

Secured Lender has an Allowed Secured Claim in the amount of $47,189,513.79 plus interest, attorneys' fees and expenses and the Protective Advance Claim. Pursuant to the Secured Lender Sale Motion to be filed contemporaneously with or subsequent to the Plan, the Debtor will seek to sell the Properties to the Secured Lender as the Stalking Horse Bidder, subject to the receipt of higher and/or better bids. The Secured Lender has agreed to acquire the Properties for an initial credit bid in the amount of $43,000,000, subject to the right to increase the purchase price through a credit bid up to and in the full amount of its Class 4 Claim. In the event the Secured Lender is not the successful purchaser for the Properties, then the Class 4 Claim shall be paid from the sale proceeds of such sale after the payment of the Class 1 Claims, Class 2 Claim and Class 3 Claim (to the extent the Class 3 Claim has higher legal priority than Secured Lender's Class 4 Claim).

In either case, pursuant to the Secured Lender Settlement, the Secured Lender shall make the Secured Lender Contribution on the Effective Date, subject to the entry of an Order of the Bankruptcy Court approving the Secured Lender Settlement under Bankruptcy Rule 9019 as more fully set forth below.

On the Effective Date, Secured Lender, or its nominee, shall either (i) purchase and take title to the Properties pursuant to the Bidding Procedures Order and the Sale Order free and clear of any and all liens, claims, encumbrances or interests of any kind as set forth therein, or (ii) be paid Cash in respect of its Allowed Secured Claim from the proceeds of the sale of the Properties to the successful purchaser pursuant to the Bidding Procedures Order and the Sale Order.

To the extent there are proceeds from the Turnover Action, such proceeds shall, in the Debtor's sole discretion, either be paid upon the Confirmation Date or anytime thereafter. to Secured Lender to either (1) reimburse the Secured Lender for funds it has or will advance to the Debtor pursuant to any order entered by the Court on the use of Cash Collateral or DIP Financing or (2) pay the amounts that Secured Lender may have to pay in connection with the Plan, including without limitation, the payments relating to the Secured Lender Contribution. The remainder of any proceeds from the Turnover Action shall be paid to the Secured Lender upon the. Confirmation Date or anytime thereafter.

Notwithstanding the foregoing, a replacement stalking horse purchaser shall be permitted to replace the Secured Lender, provided the replacement stalking horse bid is no less than $43,000,000 and such stalking horse bidder provides a contract deposit equal to no less than five percent (5%) of the stalking horse purchase price.

3.8     *Class 5 – Allowed Secured Mechanic's Lien Claims*

Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of all Allowed Secured Mechanic's Lien Claims (except deficiency claims), on the Effective Date, the Holders of Allowed Class 5 Claims shall receive, in order of legal priority within the class, the net proceeds from the sale of the Properties after the payment in full of the Class 1 Claims, Class 2 Claim, Class 3 Claim (to the extent the Class 3

Claim has legal priority higher than the Class 4 Claim) and the Class 4 Claim. Any deficiency claim will be treated as a Class 8 Allowed General Unsecured Claim.

### 3.9    *Class 6 – Allowed Other Secured Claims*

Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of all Allowed Other Secured Claims (except deficiency claims), on the Effective Date, the Holders of Allowed Class 4 Claims shall receive, in order of legal priority within the class, the net proceeds from the sale of the Properties after the payment in full of the Class 1 Claims, Class 2 Claim, Class 3 Claim (to the extent the Class 3 Claim has legal priority higher than the Class 4 Claim) and the Class 4 Claim. Any deficiency claim will be treated as a Class 8 Allowed General Unsecured Claim.

### 3.10    *Class 7 – Allowed Priority Deposit Claims.*

Class 6 is comprised of the holders of Allowed Priority Deposit Claims. Section § 507(a)(7) of the Bankruptcy Code establishes a priority for "allowed unsecured claims of individuals, to the extent of $3,025 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, . . . of property, for the personal, family or household use of such individuals, that were not delivered or provided." Unless such Holder agrees to accept a lesser treatment of an Allowed Priority Deposit Claim, each Holder of an Allowed Priority Deposit Claim shall receive, as soon as practicable in the discretion of the Liquidating Trustee, up to $3,025 of the Unsecured Creditors' Fund before payment of or reserve for the Allowed General Unsecured Claims. Any deficiency claim will be treated as Class 8 Allowed General Unsecured Claim.

<u>Claimants Whose Purchase and Sale Agreement(s) Have Been Properly Terminated</u>

In the event it is adjudicated by the Court that a purchaser is entitled to a return of its deposit, or if the purchaser has properly terminated its Purchase and Sale Agreement, the purchaser shall be entitled to the return of the portion of its deposit currently held in escrow. The balance of the deposit claim shall be treated as an Allowed General Unsecured Claim (Class 8), as described below. The Debtor is unaware of any such claimants.

<u>Claimants Who Breached or Defaulted Under Their Purchase and Sale Agreement</u>

In the event a purchaser breached or defaulted under their Purchase and Sale Agreement, the Debtor is entitled to retain the purchaser's entire deposit and the purchaser shall have no claim against the Debtor.

### 3.11    *Class 8 – Allowed General Unsecured Claims*

Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of all Class 8 Claims, on the Effective Date or as soon as practicable thereafter in the discretion of the Liquidating Trustee, each holder of an Allowed General Unsecured Claim shall receive on account of such claim (i) a Pro Rata Share of the Unsecured Creditors' Fund after payment of or reserve for the Allowed Priority Claims therefrom,

and (ii) distributions from the Trust Assets after the Effective Date in the discretion of the Liquidating Trustee.

3.12    *Class 9 – Equity Interests*

On the Effective Date, all Equity Interests shall be extinguished and canceled. Class 9 is deemed to reject the Plan.

**ARTICLE IV**

**MEANS OF IMPLEMENTING THE PLAN**

4.1    *Funding of Plan.*

The Sale of the Properties by the Debtor, including specifically in accordance with the Secured Lender Sale Motion, shall occur as follows:

The Bankruptcy Court, the Debtor, or a designee may, if necessary, conduct an auction sale of the Properties for the highest or best offer in accordance with this Plan, the Secured Lender Sale Motion, and the Sale Order. The sale of the Properties at an auction or otherwise pursuant to this Plan, the Secured Lender Sale Motion and the Sale Order shall be done in connection with and as part of the implementation of this Plan for all purposes, including specifically Section 1146(a) of the Bankruptcy Code.

Upon conclusion of any auction process for the Properties, the Debtor shall seek an order of the Bankruptcy Court approving the sale of the Properties as contemplated in and pursuant to this Plan, the Secured Lender Sale Motion and the Sale Order.

If the Secured Lender is the successful purchaser of the Properties at an auction or otherwise pursuant to this Plan, the Secured Lender Sale Motion and Sale Order, the Secured Lender or its nominee or designee may take title to the Properties subject to the Mortgage, which Mortgage may be assigned to any such nominee's or designee's lender. In the event Secured Lender or its nominee or designee elects to take title to the Properties subject to the Mortgage, then the Debtor shall have no further financing obligation to Secured Lender or its designee under and in respect of the Mortgage and shall be released from any and all liability to Secured Lender or any such nominee or designee upon closing.

4.2    *Secured Lender Settlement.*

The Plan shall constitute a settlement and compromise of all claims and causes of action by and between the Debtor and the Debtor's bankruptcy estate and the Secured Lender pursuant to and under Bankruptcy Rule 9019 (the "***Secured Lender Settlement***"). Pursuant to the Secured Lender Settlement, the Secured Lender has agreed (i) to be the Stalking Horse Purchaser for the Debtor's Properties, subject in all events to the receipt of higher and/or better bids, (ii) to fund the Protective Advance Claim pursuant to the Cash Collateral Orders, and (iii) to fund the Secured Lender Contribution. In exchange, the Secured Lender shall be entitled to the Third Party Release as set forth below and the Debtor has agreed as follows:

18

The Debtor, on behalf of itself, the Debtor's bankruptcy estates, any person or entity claiming by or through the Debtor's bankruptcy estate, and each of their officers, directors, shareholders, members, managers, agents, employees, attorneys, partners, associates and insurers, including specifically Moses Bensusan (collectively the "*Debtor Releasors*") agree to and shall be deemed to have fully and generally released and discharged the Secured Lender and each of its officers, directors, shareholders, members, managers, agents, employees, attorneys, partners, associates and insurers (collectively the "*Secured Lender Released Parties*") from and against any and all manner of claims, whether asserted or unasserted, contemplated or raised, causes of actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, losses, damages, liabilities and demands of any kind whatsoever in law or in equity, whether known or unknown, suspected or unsuspected, contingent or fixed, including attorneys' fees and costs that any of the Debtor Releasors now have, have had or in the future may have against any of the Secured Lender Released Parties arising out of, related to or in connection with, directly or indirectly, the Debtor, the Debtor's bankruptcy estate, the Mortgage, the Properties, and/or the facts and circumstances related thereto (the "*Debtor Released Claims*"). Notwithstanding anything herein to the contrary, the release of the Secured Lender Released Parties herein shall not release the Secured Lender from any of its obligations under this Plan or the Secured Lender Sale Motion.

Additionally, the Debtor released the Secured Lender in connection with the Cash Collateral Orders and the Challenge period therein has since expired with no claims being asserted against the Secured Lender.

The obligations of the Debtor and the Secured Lender shall be subject to the entry of an order of the Bankruptcy Court, which may be part of the Confirmation Order, approving the Secured Lender Settlement under the pursuant to Bankruptcy Rule 9019 in a form and content, and with findings, reasonably acceptable to the Secured Lender, including that the Secured Lender Settlement is fair and reasonable and falls well above the lowest point in the range of reasonableness.

The standards for approval are well settled and requires a consideration of the reasonableness of the proposed settlement. *See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). The inquiry need only determine whether the settlement falls below the lowest point of the range of reasonableness. *See W.T. Grant Co.*, 699 F.2d at 608; *see also In re Martin*, 91 F.3d 389 (3rd Cir. 1996); *In re Van Diepen, P.A.*, 236 Fed. Appx. 498, 501 (11th Cir. 2007). Certain factors are used in evaluating a settlement, including: (i) the probability of success in litigation, (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors. *Wallis v. Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir, 1990).

The Debtor asserts that the Secured Lender Settlement falls well above the lowest point in the range of reasonableness when considering these factors. There are significant risks inherent in all litigation and the Secured Lender may ultimately prevail in any litigation is brings, particularly as the Debtor believes it has no legitimate defenses to any litigation brought by the Secured Lender.

If the Secured Lender prevails in claims against the Debtor, it will be able to collect a large portion of the debt by foreclosing the Debtor's interest (as well as the interest of any and all junior lienholders) on the Properties. The complexity of the litigation involved and attendant expense, inconvenience and delay militates in favor of approval of the Secured Lender Settlement. While the claims litigated between the Debtor and the Secured Lender are likely typical, they will require potential discovery, and the expense of these efforts will be prohibitive to the Debtor and decrease potential recovery to other creditors. Finally, the Secured Lender Settlement gives certainty and avoids risk, expense and delay attendant with litigation. Importantly, pursuant to the Secured Lender Settlement, the Secured Lender will make the Secured Lender Contribution to provide for recovery by other creditors, which would not exist absent such settlement. As such, the Secured Lender Settlement is in the paramount interest of the creditors.

4.3     *Dissolution of Corporate Entity.*

On the Effective Date, the Debtor will be deemed dissolved without the necessity of any further action, notice or filing.

4.4     *Corporate Action.*

Upon entry of the Confirmation Order, the transfers and dissolutions contemplated by this Article shall be deemed authorized and approved in all respects. On the Effective Date, the matters provided under the Plan involving the corporate structures of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable state laws without any requirement of further action by the member, managing member, stockholder or directors of the Debtor. On the Effective Date, the Liquidating Trustee shall be authorized and directed to take all necessary and appropriate actions to effectuate the transactions contemplated by the Plan and the Disclosure Statement. Upon the sale of the Properties, the Debtor and any of its principals shall resign from the board of the Condominium Association.

4.5     *Cancelled Documents.*

As of the Effective Date, any security, note, instrument or other document evidencing a Claim against or Equity Interest in the Debtor shall be canceled, null and void, except for the right, if any, to receive a distribution under this Plan. However, this provision shall not apply to any security, note, instrument or other document executed in connection with Secured Lender's Claim if Secured Lender agrees that such claim shall survive and if such obligation is assumed by purchaser with the consent of Secured Lender.

4.6     *Investments.*

All Trust Assets of the Debtor shall be collected by the Liquidating Trustee, and pending distribution, such funds shall be held in accounts or otherwise invested in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by Final Order of the Bankruptcy Court. The distributable Cash will be held by the Liquidating Trustee until it is distributed to any Holder of an Allowed Claim against the Debtor pursuant to the Plan.

20

4.7     *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens or other security interests against the property of the Debtor's Estate shall be released, and the Liquidating Trustee shall own and hold good and marketable title to such property of the Estate. However, this provision shall not apply to any security, note, instrument or other document executed in connection with Secured Lender's Claim if Secured Lender agrees that such claim shall survive and if such obligation is assumed by purchaser with the consent of Secured Lender.

4.8     *Further Actions to Effectuate Plan.*

On the Effective Date or as soon thereafter as practicable, (a) the members of the board of directors of the Debtor shall be deemed to have resigned, (b) the President of the Debtor shall resign and have no further obligations with respect to the Plan, the Debtor or the case, and (c) all employment contracts with the Debtor (e.g. 1099 independent contractors) not previously assumed or rejected shall be deemed to be rejected.

# ARTICLE V

# THE LIQUIDATING TRUSTEE

5.1     *Selection of Liquidating Trustee.*

The Confirmation Order shall appoint the Liquidating Trustee. The manner for selecting the Liquidating Trustee shall be established prior to Confirmation on notice to all parties.

5.2     *Purpose of the Liquidating Trustee.*

The Liquidating Trustee will hold and monetize all the Trust Assets for the benefit of the Creditors of the Debtor's Estate, and for payments of all Allowed Claims in accordance with the provisions of this Plan. The Liquidating Trustee will not be selected nor supervised by the United States Trustee and will not be bonded in favor of the United States in an amount set by the United States Trustee.

5.3     *Compensation.*

The Liquidating Trustee shall be paid in accordance with section 326 of the Bankruptcy Code.

5.4     *Payment of Professionals Retained by the Liquidating Trustee.*

Professionals retained by the Liquidating Trustee shall submit monthly invoices to the Liquidating Trustee. The Liquidating Trustee may pay 80% of fees and 100% of disbursements for the amounts requested from the Trust Assets and the proceeds thereof. The remaining 20% of fees shall be paid when fee applications are filed and approved by the Court.

5.5     *Resignation, Death or Removal of the Liquidating Trustee.*

The Liquidating Trustee may be removed by the Bankruptcy Court upon application for good cause shown. In the event of the resignation, removal, death or incapacity of the Liquidating Trustee, the Debtor, in consultation with the United States Trustee shall, with Bankruptcy Court approval, designate another Person to become Liquidating Trustee and thereupon the successor Liquidating Trustee, without any further action, who shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.

5.6     *Authority and Limitations.*

The Liquidating Trust and Liquidating Trustee is entitled to section 108(a) tolling insofar as the Liquidating Trustee is acting on behalf of, as an agent of, and/or as a representative of the Debtor's estate to pursue claims that belonged to the Debtor for the benefit of the Debtor's creditors.

The Liquidating Trustee shall have the power and authority to perform the following acts (subject to Court approval where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan or the Liquidating Trust Agreement; provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Trustee to act as specifically authorized by any other provision of this Plan or Liquidating Trust Agreement and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect Remaining Assets or to confer on the Creditors the benefits intended to be conferred upon them by this Plan:

(a)     To open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Liquidating Trust.

(b)     To receive, conserve and manage the Trust Assets.

(c)     To hold legal title to any and all Trust Assets.

(d)     Subject to the applicable provisions of the Plan, to prosecute, collect and liquidate the Trust Assets.

(e)     To take discovery from third parties, including but not limited to, issuing Fed.R.Bankr.P. 2004 subpoenas and discovery requests.

(f)     Make decisions regarding the retention or engagement of the Liquidating Trustee's Professionals and to pay, from the Trust Assets and the proceeds thereof, the fees and charges incurred by the Liquidating Trust and the fees and expenses of the Liquidating Trustee's Professionals, as well as the disbursements, expenses or related support services relating to the implementation of the Plan and performance by the Liquidating Trustee of his duties under the Trust Agreement.

(g)     To pay all lawful, expenses, debts, charges and liabilities of the Liquidating Trust.

(h)     To wind down the affairs of the Liquidating Trust including the filing of final tax returns, establish any administrative reserves necessary to close the Liquidating Trust and make all Distributions to the Beneficiaries provided for or contemplated by the Plan.

(i)      To withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Liquidating Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of its discretion and judgment, the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(j)      To enter into any agreement or execute any document required by or consistent with the Plan and perform all obligations thereunder.

(k)     To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets if it concludes that they are of no significant value or benefit to the Liquidating Trust.

(l)      Except as otherwise set forth in the Trust Agreement, to have exclusive power to prosecute and/or settle all causes of actions including, without limitation, Avoidance Actions or any other causes of action or counterclaims (collectively, the "***Actions***") and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of competent and appropriate jurisdiction and voluntarily participate as a party or otherwise in any administrative proceeding, arbitration, mediation, or other nonjudicial proceeding and litigate or settle such Actions on behalf of the Trust, and pursue such actions to settlement or final order, all in accordance with the terms of the Liquidating Trust Agreement.

(m)    To hold any unclaimed Distributions or payment to a Beneficiary in accordance with the Liquidating Trust Agreement, the Confirmation Order and the Plan.

(n)     To purchase or create and carry all insurance policies and pay all insurance premiums and costs it deems necessary or advisable.

(o)     To implement and/or enforce all provisions of the Plan.

(p)     To collect and liquidate all Trust Assets pursuant to the Plan, the Confirmation Order and the Liquidating Trust Agreement and to ultimately close the Chapter 11 Case.

(q)     To object to Claims and supervise and administer the resolution, settlement and payment of such Claims and the distribution to the Beneficiaries in accordance with the Liquidating Trust Agreement and the Plan. Specifically, the Liquidating Trustee may compromise or settle any such Claim (disputed or otherwise) free of any restrictions other than those restrictions expressly imposed by the Plan, the Confirmation Order or the Liquidating Trust Agreement.

(r)      Exercise such rights of setoff as the Debtor or the Estate may have had against any Beneficiary and/or seek Court approval of such exercise.

23

(s)     Voluntarily engage in arbitration or mediation with regard to any dispute

(t)     To (i) seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file, if necessary, any and all tax information returns required with respect to the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treas. Reg. 1.67-4(a) or otherwise, (iii) make tax elections by and on behalf of the Liquidating Trust and (iv) pay taxes, if any, payable by the Liquidating Trust.

(u)     To make all distributions to holders of Allowed Claims provided for or contemplated by the Plan.

(v)     Resolve issues pertaining to the retention or disposal of the Liquidating Trust's administrative and business records.

(w)     To perform any other actions or duties required to be performed by the Trustee pursuant to the provisions of the Plan and/or Confirmation Order.

Notwithstanding anything in the Liquidating Trust Agreement to the contrary, the Liquidating Trustee shall not do or undertake any of the following:

(a)     Take any action in contravention of the Plan, the Confirmation Order or the Liquidating Trust Agreement.

(b)     Take any action that would significantly jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

(c)     Grant liens on any of the Trust Assets.

(d)     Guaranty any debt.

(e)     Loan Trust Assets to the Liquidating Trustee.

(f)     Purchase Trust Assets from the Liquidating Trust.

(g)     Transfer Trust Assets to another trust with respect to which the Liquidating Trustee serves as trustee.

The Liquidating Trustee will not need to obtain Bankruptcy Court approval to implement the terms of the Plan or to take actions authorized by the Plan, other than: (i) the sale or liquidation of assets; (ii) settlement of any Cause of Action; (iii) objecting to Claims, and resolving Disputed Claims; (iv) granting releases pursuant to settlements entered into on behalf of the Estate; or (v) the retention or payment of professionals or advisors. Except as provided in this Plan, payment of the monthly fee to the Liquidating Trustee shall not require separate Bankruptcy Court approval. The United States Trustee shall have no responsibility for supervising the Liquidating Trustee or the administration of the case following the Effective Date.

5.7     *Liquidating Trustee's Limitation of Liability and Indemnification Rights*.

Neither the Liquidating Trustee or any partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidating Trustee (**"Indemnified Persons"**), shall be personally liable in connection with the affairs of the Liquidating Trust to any person, including any Beneficiary of the Liquidating Trust, or to the Liquidating Trust, except for acts or omissions of the Indemnified Person that constitute any self-dealing, breach of fiduciary duty, fraud, gross negligence or willful misconduct. Persons dealing with Indemnified Persons in connection with the Liquidating Trust, or seeking to assert claims against the Liquidating Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Indemnified

24

Persons to such persons in carrying out the terms of this Trust Agreement, except for acts or omissions of the Indemnified Persons that constitute any self-dealing, breach of fiduciary duty, fraud, gross negligence or willful misconduct.

Except as otherwise set forth in the Plan or Confirmation Order, Indemnified Persons, including, without limitation, any firm in which the Liquidating Trustee is a partner, member, shareholder or employee (***"Firm"***), shall be defended, held harmless and indemnified from time to time by the Liquidating Trust against any and all losses, claims, costs, expenses and liabilities to which such Indemnified Persons may be subject by reason of such Indemnified Party's execution in good faith of its duties pursuant to the discretion, power and authority conferred on such person by the Liquidating Trust Agreement, the Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this section shall not indemnify any Indemnified Person for any actions taken by an Indemnified Person which constitute fraud, willful misconduct or gross negligence of his or her duties hereunder, or willful material breach of the Plan. Satisfaction of any obligation of an Indemnified Person arising pursuant to the terms of this section shall be payable only from the Trust Assets and such right to payment shall be prior and superior to any rights of Beneficiaries to receive a Distribution of the Trust Assets.

5.8     *Operations of the Debtor.*

a)      On the Effective Date, the Debtor will be deemed dissolved, to the extent its operations have continued post-petition such operations will cease, and the Trust Assets assigned and transferred to the Liquidating Trust, which will be managed by the Liquidating Trustee.

b)      Except as otherwise provided in this Plan, all Cash shall be invested by the Liquidating Trustee with sole and absolute discretion in only (i) direct obligations of, or obligations guaranteed by, the United States of America and in compliance with Section 345 of the Bankruptcy Code; (ii) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; (iii) AAA rated tax-free securities issued by municipalities or state governments or agencies; or (iv) such other obligations or instruments as may from time to time be approved for such investments by the Court; provided, however, that the Liquidating Trustee may, to the extent deemed necessary by the Liquidating Trustee with sole and absolute discretion to implement the provisions of this Agreement, deposit moneys in demand deposits (including money market funds) at any U.S. Trustee approved bank, trust company or other financial institution which has, at the time of such deposit a capital stock and surplus aggregating at least $100,000,000. The investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Trust Assets, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings or financial institutions, or other temporary, liquid investments, such as U.S. Treasury Bills. Such investments shall mature in such amounts and at such times as may be deemed necessary by the Liquidating Trustee

with sole and absolute discretion to provide funds when needed to make payments from the Trust Assets, as the case may be.

c)  In no case shall any party dealing with the Liquidating Trustee in any manner whatsoever in relation to the Trust Assets or to any part or parts thereof, be obligated to see that the provisions of the Plan or any direction from the Court have been complied with, or be obligated or privileged to inquire into the authority of the Liquidating Trustee to act, or to inquire into any other limitation or restriction of the power and authority of the Liquidating Trustee, but as to any party dealing with the Liquidating Trustee in any manner whatsoever in relation to the Trust Assets, the power of the Liquidating Trustee to act or otherwise deal with the Trust Assets shall be absolute.

d)  The Liquidating Trustee shall be responsible for making distributions to holders of Allowed Claims pursuant to Articles III and VI of the Plan. Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other similar activity except as specifically provided herein or otherwise reasonably necessary and advisable for the orderly liquidation of the Trust Assets Notwithstanding this provision, in the event Secured Lender is not the purchaser pursuant to the Asset Purchase Agreement, Secured Lender shall be paid directly from the sale proceeds within five (5) days after the sale under the Asset Purchase Agreement closes

e)  The Liquidating Trustee shall keep an accounting of receipts and disbursements, which shall be open to inspection and review by the Court and Creditors (upon reasonable notice, and without unduly interfering with the operations of the Liquidating Trustee).

f)  All costs, expenses and obligations incurred by the Liquidating Trustee in administering the Trust Assets or in any manner connected, incidental or related thereto, including but not limited to the fees and expenses of professionals retained by the Liquidating Trustee and its professionals to assist in carrying out its duties pursuant to the Plan, post-confirmation U.S. Trustee fees, and fees and expenses of the Liquidating Trustee and its professionals in pursuing ongoing litigation, shall be a charge against the Trust Assets, and the Liquidating Trustee shall pay same, maintaining at all times adequate reserves for such payments prior to making distributions to the Creditors.

g)  The Liquidating Trustee shall maintain an adequate reserve fund after payment of all fees, expenses, taxes, etc. which shall be available to cover all expenses and costs associated with carrying out the provisions of the Plan. The balance of the reserve fund shall be included in the final disbursement to holders of Allowed Claims prior to dissolution of the Liquidating Trustee's corporate existence.

26

h) The Liquidating Trustee and its officers and employees shall not be liable for any act they may do, or omit to do hereunder or acting in good faith and in the exercise of his, her or its best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Liquidating Trustee shall be conclusive evidence of such good faith and best judgment. However, this subparagraph 5.7(h) shall not apply to any self-dealing, breach of fiduciary duty, gross negligence or willful misconduct by the Liquidating Trustee's officers or employees.

i) The Liquidating Trustee shall maintain a bond in favor of the estate in an amount to be determined prior to or at the Confirmation Hearing and established in the Confirmation Order, which will be paid by the estate for the benefit of holders of Allowed Claims of the estate.

5.9    *Vesting of Assets of the Debtor.*

On the Effective Date, except as otherwise provided in the Plan, all right, title and interest in and to the Trust Assets of the Debtor shall vest in, and be transferred and assigned to the Liquidating Trust, free and clear of any and all Liens and other interests. However, this provision shall not apply to any mortgage, security, note, instrument or other document executed in connection with Secured Lender's Claim if Secured Lender agrees that such claim shall survive and if such obligation is assumed by purchaser with the consent of Secured Lender. All of the Debtor's rights in respect of all Claims and Causes of Action (including without limitation Avoidance Actions) shall be transferred to the Liquidating Trust, the Liquidating Trustee shall be designated the representative of the Debtor's estate for all purposes under Section 1123 of the Bankruptcy Code and the Liquidating Trustee on behalf of the Liquidating Trust shall be empowered to investigate, prosecute, collect, and/or settle the Claims and Causes of Action as the Liquidating Trustee, in his business judgment, may deem appropriate.

The Debtor's Schedules of Assets and Liabilities, as may be amended, identify creditors whose Claims are disputed, and the Debtor's Statement of Financial Affairs identifies the parties (known to the Debtor as of the Petition Date) who received payments and transfers from the Debtor, which payments and transfers may be avoidable under the Bankruptcy Code. Moreover, the Liquidating Trustee shall investigate Causes of Action (including without limitation Avoidance Actions) the Debtor may have against both insiders and third parties, including but not limited to directors, officers, affiliates, parent companies, subsidiaries, landlords, contract counterparties, service providers, employees, and/or investors. Said Causes of Action include, but are not limited to, potential causes of action for breach of contract, negligence, and/or intentional torts against the Debtor's members, officers, directors, affiliates, employees, agents, landlords, and/or partners. A list of potential litigation targets is attached as "**Exhibit B**." The Debtor has not completed its investigation of potential objections to Claims and Causes of Action; therefore, the Debtor is unable to provide any meaningful estimate of amounts that could be recovered. **THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY SUCH AFOREMENTIONED CAUSES OF ACTION (INCLUDING WITHOUT LIMITATION AVOIDANCE ACTIONS), OR OBJECTIONS TO PROOFS OF CLAIM. ENTRY OF THE CONFIRMATION ORDER SHALL NOT CONSTITUTE A WAIVER OR RELEASE BY THE DEBTOR OR ITS ESTATE OF ANY AVOIDANCE ACTION, CAUSE OF ACTION,**

OR OBJECTION TO PROOF OF CLAIM, EXCEPT AS EXPRESSLY PROVIDED FOR BY THE PLAN OR BY FINAL ORDER OF THE BANKRUPTCY COURT. ON AND AFTER THE EFFECTIVE DATE, AND PURSUANT TO BANKRUPTCY CODE SECTION 1123(b)(3), THE LIQUIDATING TRUST SHALL BE DESIGNATED REPRESENTATIVE OF THE ESTATE WITH RESPECT TO, AND SHALL BE ASSIGNED, ALL AVOIDANCE ACTIONS AND CAUSES OF ACTION ARISING UNDER SECTIONS 542, 543, 544, 547 THROUGH 551, AND 553 OF THE BANKRUPTCY CODE AND ALL CAUSES OF ACTION BELONGING TO THE DEBTOR WHICH EXIST OUTSIDE OF BANKRUPTCY (THE "TRANSFERRED CAUSES OF ACTION"). THE LIQUIDATING TRUSTEE SHALL BE AUTHORIZED TO INVESTIGATE, ENFORCE, PROSECUTE, SETTLE, COLLECT, OR COMPROMISE THE TRANSFERRED CAUSES OF ACTION.

Creditors should understand that legal rights, Claims, and Causes of Action the Debtor may have against them, if any exist, are retained under the Plan for prosecution unless a specific order of the court authorizes the Debtor to release such legal rights, Claims, and Causes of Action. **AS SUCH, CREDITORS ARE CAUTIONED NOT TO RELY ON (I) THE ABSENCE OF THE LISTING OF ANY LEGAL RIGHT, CLAIMS, OR RIGHT OF ACTION AGAINST A PARTICULAR CREDITOR IN THE DISCLOSURE STATEMENT, PLAN, SCHEDULES OF ASSETS AND LIABILITIES, OR STATEMENT OF FINANCIAL AFFAIRS OR (II) THE ABSENCE OF LITIGATION OR DEMAND PRIOR TO THE EFFECTIVE DATE OF THE PLAN AS ANY INDICATION THAT THE DEBTOR DOES NOT POSSESS OR DOES NOT INTEND TO PROSECUTE A PARTICULAR RIGHT, CLAIM, OR RIGHT OF ACTION IF A PARTICULAR CREDITOR VOTES TO ACCEPT THE PLAN. IT IS THE EXPRESSED INTENTION OF THE PLAN TO PRESERVE ALL RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTOR, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE DEBTOR'S ESTATE AND ITS CREDITORS.**

**IN REVIEWING THE DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN, CREDITORS AND INTEREST HOLDERS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTOR WITHIN NINETY (90) DAYS PRIOR TO THE PETITION DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ALL AVOIDANCE ACTIONS, CAUSES OF ACTION, AND OBJECTIONS TO CLAIMS, AND THAT THE PLAN AUTHORIZES THE LIQUIDATING TRUST TO PROSECUTE THE SAME.**

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTION

6.1    *Distributions.*

Any payment or distribution pursuant to this Plan, to the extent posted in the United States Mail, shall be deemed made when deposited by the Liquidating Trustee, or an agent authorized by

the Liquidating Trustee, into the United States Mail. Payments of Cash shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.2     *Delivery of Distributions.*

Distributions and deliveries to Holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed; or if the Liquidating Trustee has been notified of a change of address, at the address set forth in such notice).

6.3     *Unclaimed Property.*

If any distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto, such unclaimed property shall be forfeited by such Holder whereupon all right, title and interest in and to the unclaimed property shall be held in reserve by the Liquidating Trustee to be distributed to other Creditors in accordance with this Plan. The Liquidating Trustee shall not attempt to make further distribution to the Holders of such unclaimed property. Distributions unclaimed for a period of 90 days after they have been delivered (or attempted to be delivered) in accordance with the Plan to the Holders entitled thereto that (i) are intended to be final distributions; and (ii) do not exceed $10,000 in the aggregate, shall, as soon thereafter as practicable, be donated to the Bankruptcy Bar Foundation for the Southern District of Florida.

6.4     *No Interest Unless Otherwise Provided.*

No interest shall be paid on any Claim unless, and only to the extent permitted, by applicable bankruptcy law.

6.5     *De Minimis Distributions.*

No distribution of less than twenty-five dollars ($25) shall be made to any Holder of an Allowed Claim. Such undistributed amount will be retained by the Liquidating Trustee to be distributed *pro rata* at the time of final distributions to Holders of Claims in accordance with the Plan.

6.6     *Manner of Payment.*

At the option of the Liquidating Trustee, any Cash payment to be made by any Person pursuant to the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

6.7     *Timing of Distributions.*

The timing of distributions shall be in accordance with the provisions of Articles II and VI of the Plan.

6.8     *W-9 Requests*.

Any Holder of an Allowed Claim that fails to return a W9 within sixty (60) days of a request for same by the Liquidating Trustee shall forfeit its/his/her right to a distribution and shall cease being a Holder of an Allowed Claim, unless otherwise agreed to in writing by the Liquidating Trustee.

6.9     *Fractional Cents*.

When any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of $0.50 or less and rounding up in the case of more than $0.50).

## ARTICLE VII

## PROCEDURES FOR RESOLVING AND
## TREATING DISPUTED AND CONTINGENT CLAIMS

7.1     *Prosecution of Objections*.

On or before 6 months after the Effective Date (unless such deadline is extended by the Bankruptcy Court), the Liquidating Trustee shall file objections to Claims.

7.2     *Administration of Disputed Claims*.

a)      *No Distribution on Account of Disputed Claims*. Notwithstanding any other provision in the Plan, no distributions shall be made under the Plan on account of any Disputed Claim. With respect to each Class set forth in Article III, in determining the amount of Distributions due to the Holders of Allowed Claims in such Class and to be reserved for Disputed Claims, the calculation of Pro Rata Share shall be made following the funding of a reserve in respect of all Disputed Claims in such Class pursuant to section 7.2(c) below.

b)      *Disputed Claims Reserve*. In determining the amount of distributions to be made under the Plan to Holders of Allowed Claims, the appropriate distributions required by the Plan shall be made according to estimates and subject to the provisions of the Plan. To protect the interests of Holders of Disputed Claims, the Liquidating Trustee shall establish a Disputed Claims Reserve for each Disputed Claim. The Liquidating Trustee shall fund the Disputed Claims Reserve with Cash in an amount that represents the Pro Rata Share of the Cash that would otherwise be distributed to the Holders of each Disputed Claim if such Claim was Allowed in the amount set forth on the Holder's proof of Claim or as estimated by the Bankruptcy Court.

c) *Distribution After Allowance.* As soon as practicable after a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive from its Disputed Claims Reserve a distribution in an amount equal to the distribution that such Holder would have received had such Disputed Claim been an Allowed Claim on the Effective Date. Distributions to each Holder of a Disputed Claim, to the extent that such Claim becomes an Allowed Claim, shall be made, without interest, in accordance with the Class of Claims to which such Claim belongs.

d) *Distribution After Disallowance.* If and when a Disputed Claim or any portion thereof becomes a Disallowed Claim, the Pro Rata Share of the distributions to which each Holder of an Allowed Claim in the Class of Claims to which such Claim belongs is entitled, shall increase commensurately. Accordingly, the Liquidating Trustee shall have the right to make subsequent distributions in accordance with the provisions of the Plan.

7.3 *Estimation of Claims.*

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Liquidating Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor (and, after the Effective Date, the Liquidating Trustee) may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court, except that after the Effective Date, the Liquidating Trustee may compromise, settle or resolve any such Claims without Bankruptcy Court approval.

7.4 *Objections to Fully Impaired Claims.*

Certain Claims and all Equity Interests are fully Impaired under the Plan and not entitled to any distribution under the Plan. As a result, the Debtor does not intend to object to any such Claims or Equity Interests since the allowance or disallowance of such Claims or Equity Interests will have no impact on the Debtor or its Estate. However, the Debtor (and after the Effective Date, the Liquidating Trustee) reserve the right to file objections to such Claims and Equity Interests at any time they deem appropriate, if ever, until the closing of this Chapter 11 Case.

7.5     *Disallowance of Claims.*

Under section 502(d) of the Bankruptcy Code, any Claim asserted by a Creditor shall be disallowed in its entirety if such Creditor has received a transfer that is voidable under the Bankruptcy Code and has failed to surrender such transfer after written demand made by the Liquidating Trustee.

# ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     *General Treatment: Rejected if not Previously Assumed.*

Except for those executory contracts and unexpired leases (a) that are the subject of prior orders of the Bankruptcy Court approving their assumption and assignment or rejection, or (b) that are the subject of a motion pending as of the Confirmation Date, or (c) are assumed and assigned in accordance with the sale of the Properties pursuant to the Secured Lender Sale Motion, the Bidding Procedures Order and the Sale Order, are rejected. The owner of any property located at the Condo-Hotel and subject to a rejected executory contract shall be provided access to the Condo-Hotel (by either the Debtor or Secured Lender, as the case may be) for a period of thirty (30) days following notice of such rejection to retrieve such property, failing which the property will be deemed abandoned by the owner of the property.

8.2     *Bar to Rejection Damages.*

If the rejection of an executory contract or an unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or its properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Liquidating Trustee by the earlier of: (a) 30 days after notice of the Confirmation Date or (b) such other deadline as the Court has or may set for asserting a Claim for such damages.

8.3     *Rejection Claims.*

Any Rejection Claim arising from the rejection of an unexpired lease or executory contract not barred by Section 8.2 of the Plan shall be treated as a General Unsecured Claim pursuant to Article III of this Plan. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor or the Liquidating Trustee of any objections to such Claim if asserted.

## ARTICLE IX

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

9.1    *Conditions to Effectiveness of Plan.*

The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by the Debtor with the consent of the Secured Lender: (a) 14 days shall have passed from the Confirmation Date; (b) the Bankruptcy Court shall have approved the Secured Lender Settlement pursuant to Bankruptcy Rule 9019 and shall have entered the Confirmation Order, in form and substance acceptable to the Debtor and the Secured Lender; (c) the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to section 1125 of the Bankruptcy Code; (d) all documents, instruments and agreements provided for under this Plan or necessary to implement this Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby, in form and substance satisfactory to the Debtor; (e) there is sufficient Cash of the Debtor to pay all Allowed Administrative Claims and Allowed Priority Claims; (f) no order of a court restraining the Debtor from consummating the Plan shall have been entered and shall remain in effect; and (g) Secured Lender (or the highest and best bidder therefor) shall have closed on the purchase of the Debtor's Properties pursuant to the Secured Lender Sale Motion, the Bidding Procedures Order and the Sale Order.

9.2    *Notice of Confirmation of the Plan.*

Notice of entry of the Confirmation Order shall be provided as required by Bankruptcy Rule 3020(c)(2).

## ARTICLE X

## RETENTION OF JURISDICTION

10.1    *Retention of Jurisdiction.*

Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Case and the Plan, for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

a)      to hear and to determine any and all objections to or applications concerning the allowance of Claims or Equity Interests or the allowance, classification, priority, compromise, estimation, or payment of any Claim or Equity Interest;

b)      to hear and determine any and all fee applications and any other applications for allowance and/or payment of other fees or expenses to be paid or reimbursed from the Debtor's Estate under the Bankruptcy Code, and any and all objections thereto;

c)      to hear and determine pending applications for the rejection, assumption, or assumption and assignment of unexpired leases and executory contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect of the assumption or rejection of any executory contract or lease;

d)      to hear and determine any and all adversary proceedings, applications, or contested matters, including any remands from any appeals;

e)      to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, any documents related to the Plan, including Exhibits to the Plan, if any, or in connection with the enforcement of any remedies made available under the Plan;

f)      to liquidate any disputed, contingent, or unliquidated Claims or to estimate any Disputed Claims;

g)      to ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

h)      to enter and to implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

i)      to enable the Liquidating Trustee to prosecute any and all proceedings which may be brought to set aside Liens or encumbrances and to recover any transfers, assets, properties or damages to which the Liquidating Trustee may be entitled under applicable provisions of the Plan, the Bankruptcy Code or any federal, state or local laws, including Actions, controversies, disputes and conflicts between the Liquidating Trustee and any other party, including but not limited to any Avoidance Actions, objections to Claims, motions for subordination on any grounds and claims preserved under the Plan and pursuant to the Confirmation Order;

j)      to consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

k)      to enter and to implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of this Plan and the transactions contemplated hereunder;

l)      to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

m)    to hear and determine all suits, motions or controversies regarding or relating to any proposed consolidation of the Debtor with all or any Non-Debtor Affiliates;

n)    to substantively consolidate any affiliates of the Debtor with the Debtor; and

o)    to enter a final decree closing this Chapter 11 Case.

10.2   *Abstention and Other Courts.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Chapter 11 Case, this section of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter. Nothing herein shall preclude the Liquidating Trustee from prosecuting a Cause of Action in a forum other than the Bankruptcy Court.

## ARTICLE XI

## INJUNCTION AND RELEASE

11.1   *Injunction.*

**As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all Persons that have held, currently hold or may hold a Claim, Equity Interest or other debt or liability that is treated pursuant to the terms of the Plan are enjoined from taking any of the following actions on account of any such Claims, Equity Interests, debts or liabilities, other than actions brought to enforce any rights or obligations under the Plan or against the Debtor, the Liquidating Trustee, the Estate, the Trust Assets or Estate property: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff of any kind against any debt, liability or obligation; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.**

11.2   *Releases.*

**On the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, in exchange for the Secured Lender Contribution and the other obligations of the Secured Lender hereunder and in the Secured Lender Sale Motion, in consideration for the obligations under the Plan, the rights as otherwise set forth in the Plan to distributions (if any), and the Cash and other contracts, instruments, releases, agreements or documents to be delivered in connection with the Plan (if any), each Person or Entity that has held, holds or may hold a Claim or Interest, as applicable, in the Chapter 11 Case will be deemed to forever release, waive, and discharge**

35

**all claims, demands, debts, rights, causes of action or liabilities against the Secured Lender and its present or former officers, directors, shareholders, members, managers, agents, employees, attorneys, partners, associates and insurers advisors, attorneys or brokers, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence arising out of, related to or in connection with, directly or indirectly, the Debtor, the Debtor's bankruptcy estate, the Mortgage, the Properties, and/or the facts and circumstances related thereto.**

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1    *Section 1146 Exemption*

To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the execution, delivery or recording of an instrument of transfer made after the Plan is confirmed, or the transfer or sale of any real, personal or other Property, or interest by the Debtor or Liquidating Trustee made after the Plan is confirmed, shall be considered a transfer made after confirmation of the Plan and shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, pursuant to § 1142(b) of the Bankruptcy Code each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

For avoidance of doubt, the sale of the Properties to the Secured Lender or successful bidder pursuant to the Secured Lender Sale Motion shall have the full benefit of Section 1146(a) of the Bankruptcy Code. In addition, if the Secured Lender or its designee is the successful purchaser of the Properties, then in the event the Secured Lender or its designee sells the Properties within one (1) year after the Effective Date, such sale and the Secured Lender/its designee shall have the full benefit of Section 1146(a) of the Bankruptcy Code.

12.2    *Severability*.

Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Proponent may modify the Plan in accordance with sections 12.10 or 12.11 of the Plan, as applicable, so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.

12.3    *Setoffs and Recoupments*.

The Liquidating Trustee may, but shall not be required to, set off against or recoup from any Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, Claims of any nature whatsoever that the Liquidating Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder

shall constitute a waiver or release by the Liquidating Trustee of any such Claim that the Debtor may have against such Holder.

12.4    *Binding Effect.*

Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the Liquidating Trustee, the Holders of Claims and Equity Interests, and such Persons' respective successors and assigns.

12.5    *Governing Law.*

Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of the State of Florida shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

12.6    *Timing of Distributions.*

Any payment or distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

12.7    *Payment of Statutory Fees and Compliance with Reporting Requirements.*

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date. All fees payable subsequent to the Effective Date under section 1930(a)(6) of title 28 of the United States Code shall be paid by the Liquidating Trustee. All post-confirmation reporting requirements shall also be complied with, including the reporting of disbursement activity.

12.8    *Termination of Independent Contractors and Limitation of Liability/Release of Professional.*

The Debtor does not have employees. However, as of the Effective Date, the Debtor's officers and directors, including without limitation, the Debtor's President, shall be terminated for all purposes. On the ninety first (91) day after the Effective Date, any causes of action, claims, liabilities, counterclaims, and damages belonging to the Debtor, the Estate or the holder of any claim (regardless of whether such Claim is ultimately Allowed or Disallowed) relating to participation in the Debtor's bankruptcy case against such officers, directors or employees of the Debtor, shall be released, except for any acts of self-dealing, breach of fiduciary duty, fraud, gross negligence, professional negligence, or willful misconduct. Moreover, as of the Effective Date, the Debtor and the Estate shall release each attorney, accountant or other professional employed by the Debtor from any and all causes of action, claims, liabilities, counterclaims and damages relating in any manner to such professional's participation in this Chapter 11 Case, except for any acts of self-dealing, breach of fiduciary duty, fraud, gross negligence, professional negligence, or willful misconduct.

37

12.9    *Tax Liability*.

The Liquidating Trustee is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through, and including, the Effective Date.

12.10    *Revocation or Withdrawal of Plan:*

a)      The Proponent reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan is revoked or withdrawn, then the result shall be the same as if the Confirmation Order was not entered and the Effective Date did not occur. The Confirmation Order shall be null and void and of no effect if the Plan is terminated after the Confirmation Date but before the Effective Date.

b)      If the Plan is revoked or withdrawn prior to the Confirmation Date, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of such entity or any Person in any further proceedings involving such entity or Person.

12.11    *Nonmaterial Modifications.*

The Proponent may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Equity Interests, correct any nonmaterial defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.

12.12    *Material Modifications.*

Modifications of this Plan may be proposed in writing by the Proponent at any time before Confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after Confirmation and before any distributions are made pursuant to the Plan, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such modification.

12.13    *Cramdown.*

This section shall constitute the Debtor's request, pursuant to section 1129(b)(1)of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code may not be met.

12.14  *Notices.*

Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) prepaid overnight delivery service and addressed as follows:

To the Debtor:

    (1)    Meland Russin & Budwick
               200 South Biscayne Boulevard, Suite 3200
               Miami, Florida 33131
               Attention: Peter D. Russin, Esquire
               Attention: James C. Moon, Esquire

    (2)    Moses Bensusan, President
               Costa Hollywood Property Owner, LLC
               777 North Ocean Drive
               Hollywood, FL 33019

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

12.15  *Successors and Assigns.*

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

ב"סד

Costa Hollywood Property Owner, LLC,
a Delaware limited liability company

By: Costa Hollywood Development Holdings LLC,
a Delaware limited liability company
Its:      Manager and Sole Member

By:      Liberty Grande, LLC
a Florida limited liability company
Its:      Sole Member

By: _____
Moses Densusin
Its:      Manager and Sole Member

E-filed by:      s/ Peter D. Russin
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
James C. Moon, Esquire
Florida Bar No. 938211
jmoon@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Debtor in Possession*

## LIQUIDATING TRUST AGREEMENT

This Trust Agreement (the "***Trust Agreement***"), dated as of March 19, 2020, is by and among Costa Hollywood Property Owner, LLC (the "***Debtor***"), and Maria Yip, not individually but solely in his capacity as trustee hereunder (the "***Trustee***"), and is being entered into in connection with the Chapter 11 Plan of Liquidation Proposed by the Debtor (the "***Plan***"),[1] which is pending confirmation by the Bankruptcy Court by Order (the "***Confirmation Order***"), and provides for, *inter alia*:

(a)    The transfer of the Assets of the Debtor and the Debtor's chapter 11 estate (the "***Estate***") required by the Plan to be transferred as of the Effective Date to the Liquidating Trust for distribution to the holders of Allowed Claims (the "***Beneficiaries***") pursuant to and in accordance with this Trust Agreement, the Plan and the Confirmation Order;

(b)    For federal income tax purposes, (i) the Beneficiaries of the Liquidating Trust to be treated as the grantees of the Liquidating Trust and deemed to be the owners of the Trust Assets and (ii) the Debtor to treat the transfer of the Trust Assets to the Liquidating Trust as a deemed transfer to such Beneficiaries followed by a deemed transfer by such Beneficiaries to the Liquidating Trust;

(c)    The management of the Trust Assets by the Trustee; and

(d)    The liquidation of the Trust Assets and, after payment of expenses in accordance with the terms of this Agreement, the distribution of the proceeds of such liquidation to the Beneficiaries as set forth in the Plan and Confirmation Order.

NOW, THEREFORE, pursuant to the Plan and in consideration of the promises. the mutual agreements of the parties contained herein, and other good and valuable consideration,

---

[1] Any capitalized term contained herein without definition shall have the definition set forth in the Plan.



1

Exhibit A

the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

# ARTICLE I

## DECLARATION OF TRUST

1.1     **Purpose of the Liquidating Trust.** The Debtor and the Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the Bankruptcy Code, applicable tax statutes, rules and regulations, to the extent incorporated in this Trust Agreement, hereby constitute and create the Liquidating Trust for the purpose of liquidating the Trust Assets with no objective to continue or engage in the conduct of a trade or business. In particular, the Liquidating Trust, through the Trustee, shall (i) collect and reduce the Trust Assets to Cash, (ii) resolve any issues concerning the amount of the Claims of the Beneficiaries, (iii) prosecute, abandon, settle and/or defend any claims or causes of action (the "*Actions*") which are a part of the Trust Assets; (iv) file tax returns for the Trust, (v) make distributions to the Beneficiaries pursuant to the Plan and this Trust Agreement, and (vi) perform all actions required under the Plan and take such steps as are reasonably necessary to accomplish such purpose, all as more fully provided in, and subject to the terms and provisions of the Plan, the Confirmation Order and this Trust Agreement.  The Liquidating Trust shall not have authority to engage in a trade or business, and no portion of the Trust Assets shall be used in the conduct of a trade or business, except as is reasonably necessary to the prompt and orderly collection and reduction to the Trust Assets to Cash and closing the case.

1.2     **Name of the Liquidating Trust.** The Liquidating Trust established hereby shall be known as the "Costa Hollywood Property Owner, LLC Liquidating Trust." In connection with

the exercise of its powers, the Trustee may use such name or such variation thereof as it sees fit and may transact the business and affairs of the Liquidating Trust in such name.

**1.3     Transfer of Assets to Create Liquidating Trust.** The Debtor and the Estate hereby grant, release, assign, transfer, convey and deliver the Trust Assets to the Liquidating Trust as of the Effective Date, to have and to hold unto the Trustee and his successors in trust and to be applied as specified in the Plan, Confirmation Order and this Trust Agreement. To the extent required, the Debtor shall cause the Trust Assets to be transferred to the Liquidating Trust. Upon the transfer of the Trust Assets to the Liquidating Trustee, and except as otherwise provided herein or in the Plan, such assets shall become Trust Assets and the Debtor shall retain no interest in such Assets. On the Effective Date, the Debtor shall execute and deliver or cause to be executed and delivered to or upon the order of the Trustee all such documents, in recordable form where necessary or appropriate, and the Debtor shall take or cause to be taken such further or other action, as the Trustee may deem appropriate, to vest or perfect in or confirm to the Trustee, or upon the order of the Trustee, title to and possession of all of the Trust Assets.

**1.4     Acceptance by Trustee.** The Trustee hereby accepts (a) the appointment to serve as Trustee; (b) the transfer of the Trust Assets on behalf of the Liquidating Trust; and (c) the trust imposed on him by this Trust Agreement. The Trustee agrees to receive, hold, administer and distribute the Trust Assets and the income derived therefrom, if any, pursuant to the terms of the Plan, Confirmation Order and this Trust Agreement.

## ARTICLE II

## TRUSTEE - GENERALLY

**2.1     Appointment.** The initial Trustee shall be Maria Yip.

3/19/2020

**2.2    Term of Service.** The Trustee shall serve until (a) the termination of the Liquidating Trust in accordance with Article X of this Trust Agreement, or (b) the Trustee's resignation, death or removal in accordance with this Trust Agreement.

**2.3    Services.** The Trustee shall be entitled to engage in such other activities as he deems appropriate which are not in conflict with the Plan, Confirmation Order, this Trust Agreement, or the interests of the Beneficiaries. The Trustee shall devote such time as is necessary to fulfill all of its duties as Trustee.

**2.4    Resignation, Death or Removal of Trustee.** The Trustee may resign upon application to the Bankruptcy Court for good cause shown. The Trustee may also be removed by the Bankruptcy Court upon application for good cause. "Cause" for removal of the Trustee shall include negligence, fraud, wrongful action or inaction in the performance of his duties. Upon the resignation, death or removal of the Trustee, the Debtor, in consultation with the United States Trustee, shall, with Bankruptcy Court approval, designation another person as a successor Trustee, and thereupon such successor, without any further action, shall become fully vested with all of the rights, powers, duties and obligation of his, her or its predecessor.

**2.5    Trust Continuance.** The death, resignation or removal of the Trustee shall not terminate the Liquidating Trust or revoke any existing agency (other than any agency of such Trustee as a Liquidating Trustee) created pursuant to this Trust Agreement or invalidate any action theretofore taken by the Trustee. By accepting the position as Trustee, any successor Trustee agrees that the provisions of this Trust Agreement shall be binding upon and inure to the benefit of such successor Trustee and all his, her or its heirs and legal and personal representatives, successors or assigns.

*[signature]* 3/19/2020

**2.6    Compensation and Expenses of Trustee.** The Trustee shall be entitled to compensation in accordance with section 326 of the Bankruptcy Code.

**2.7    Retention of Professionals.** The Trustee may retain and engage such professionals, consultants and persons as may be necessary to carry out its duties under this Trust Agreement, subject to Bankruptcy Court approval, including, without limitation, any accounting firm of which such Trustee is a partner or otherwise affiliated from time to time (the "***Trustee's Professionals***"). The Trustee's Professionals shall submit monthly invoices to the Trustee, and the Trustee may pay 80% of fees and 100% of disbursements for the amounts requested from the Trust Assets and the proceeds thereof. The remaining 20% shall be paid when fee applications are filed and approved by the Court, as described in section 2.8 herein. The Trustee's Professionals may only be paid from the Trust Assets and the proceeds thereof to the extent there are sufficient funds available from which to make such payments, and the Trustee shall not be personally liable to any of the Trustee's Professionals for any unpaid invoices or claims for services rendered.

**2.8    Court Approval for Payment.** The Trustee shall seek Bankruptcy Court authorization before the final payment of any fees and expenses to the Trustee or Trustee's Professionals, by the filing of final fee application in the Bankruptcy Court.

# ARTICLE III

# POWERS AND LIMITATIONS OF TRUSTEE

**3.1    General Powers of Trustee.** In connection with the administration of the Liquidating Trust, except as otherwise set forth herein, the Trustee is authorized to perform only those acts necessary and desirable to accomplish the purposes of the Liquidating Trust. The Liquidating Trust shall succeed to all of the rights of the Debtor necessary to protect, conserve

and liquidate all Trust Assets as quickly as reasonably practicable. Subject to the limitations set forth in this Trust Agreement, the Plan and the Confirmation Order, the Trustee may exercise all powers granted it hereunder related to, or in connection with, the collection, prosecution, liquidation, and distribution to the Beneficiaries, of the Trust Assets. Without limiting, but subject to, the foregoing, the Trustee shall be expressly authorized:

(a)    To open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Liquidating Trust.

(b)    To receive, conserve and manage the Trust Assets.

(c)    To hold legal title to any and all Trust Assets.

(d)    Subject to the applicable provisions of the Plan, to prosecute, collect and liquidate the Trust Assets.

(e)    To take discovery from third parties, including but not limited to, issuing Fed.R.Bankr.P. 2004 subpoenas and discovery requests.

(f)    Make decisions regarding the retention or engagement of Trustee's Professionals and to pay, from the Trust Assets and the proceeds thereof, the fees and charges incurred by the Liquidating Trust and the fees and expenses of Trustee's Professionals, as well as the disbursements, expenses or related support services relating to the implementation of the Plan and performance by the Trustee of its duties under this Trust Agreement.

(g)    To pay all lawful, expenses, debts, charges and liabilities of the Liquidating Trust.

*MMS 3/19/2020*

(h)     To wind down the affairs of the Trust including the filing of final tax returns, if applicable, establish any administrative reserves necessary to close the Trust and make all Distributions to the Beneficiaries provided for or contemplated by the Plan.

(i)     To withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of its discretion and judgment, the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(j)     To enter into any agreement or execute any document required by or consistent with the Plan and perform all obligations thereunder.

(k)     To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets if it concludes that they are of no significant value or benefit to the Liquidating Trust.

(l)     Except as otherwise set forth in this Trust Agreement, to have exclusive power to prosecute and/or settle all causes of actions including, without limitation, Avoidance Actions or any other causes of action or counterclaims as described in the Plan and Disclosure Statement (collectively, the "*Actions*") and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of competent and appropriate jurisdiction and voluntarily participate as a party or otherwise in any administrative proceeding, arbitration, mediation, or other nonjudicial proceeding and litigate or settle such Actions on behalf of the

3/19/2020

Trust, and pursue such actions to settlement or final order, all in accordance with the terms of this Trust Agreement.

(m)    To hold any unclaimed Distributions or payment to a Beneficiary in accordance with this Trust Agreement, the Confirmation Order and the Plan.

(n)    To purchase or create and carry all insurance policies and pay all insurance premiums and costs it deems necessary or advisable.

(o)    To implement and/or enforce all provisions of the Plan.

(p)    To collect and liquidate all Trust Assets pursuant to the Plan, the Confirmation Order and this Trust Agreement and to ultimately close the Chapter 11 Case.

(q)    To object to Claims and supervise and administer the resolution, settlement and payment of such Claims and the distribution to the Beneficiaries in accordance with this Trust Agreement and the Plan. Specifically, the Trustee may compromise or settle any such Claim (disputed or otherwise) free of any restrictions other than those restrictions expressly imposed by the Plan, the Confirmation Order or this Trust Agreement.

(r)    Exercise such rights of setoff as the Debtor or the Estate may have had against any Beneficiary and/or seek Court approval of such exercise.

(s)    Voluntarily engage in arbitration or mediation with regard to any dispute

(t)    To (i) seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file, if necessary, any and all tax information returns required with respect to the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treas. Reg. 1.67-4(a) or otherwise, (iii) make tax elections by and on behalf of the Liquidating Trust and (iv) pay taxes, if any, payable by the General Liquidating Trust.

*MMW 3/19/2020*

(u)     To make all distributions ("**Distributions**") to holders of Allowed Claims provided for or contemplated by the Plan.

(v)     Resolve issues pertaining to the retention or disposal of the Liquidating Trust's administrative and business records.

(w)     To perform any other actions or duties required to be performed by the Trustee pursuant to the provisions of the Plan and/or Confirmation Order

**3.2     Limitations on the Trustee.** Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following:

(a)     Take any action in contravention of the Plan, the Confirmation Order or this Trust Agreement.

(b)     Take any action that would significantly jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

(c)     Grant liens on any of the Trust Assets.

(d)     Guaranty any debt.

(e)     Loan Trust Assets to the Trustee.

(f)     Purchase Trust Assets from the Liquidating Trust.

(g)     Transfer Trust Assets to another trust with respect to which the Trustee serves as trustee.

**3.3     Trustee Conflicts of Interest.** If the Trustee determines, in the exercise of the Trustee's discretion, that he has a material conflict of interest with respect to any matter, the Trustee, after notice to the United States Trustee, may request the Bankruptcy Court to approve the Trustee's choice of a designee to act on behalf of the Liquidating Trust solely with respect to

*[signature]*
3/19/2020

9

such matter, with such designee's authority to act on behalf of the Trust to terminate upon the matter's conclusion.

# ARTICLE IV

## INTENTIONALLY OMITTED

# ARTICLE V

## LIABILITY OF TRUSTEE

5.1 **Trustee's of Care; Exculpation.** Neither the Trustee nor any partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Trustee ("***Indemnified Persons***") shall be personally liable in connection with the affairs of the Liquidating Trust to any Person, including any Beneficiary of the Liquidating Trust, or to the Liquidating Trust, except for acts or omissions of the Indemnified Person that constitute fraud, willful misconduct, or gross negligence. Persons dealing with Indemnified Persons in connection with the Liquidating Trust, or seeking to assert claims against the Liquidating Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Indemnified Persons to such persons in carrying out the terms of this Trust Agreement, except for acts or omissions of the Indemnified Persons that constitute fraud, willful misconduct or gross negligence.

5.2 **Indemnification.** Except as otherwise set forth in the Plan or Confirmation Order, Indemnified Persons, including, without limitation, any firm in which the Trustee is a partner, member, shareholder or employee ("***Firm***") shall be defended, held harmless and indemnified from time to time by the Liquidating Trust against any and all losses, claims, costs, expenses and liabilities to which such Indemnified Persons may be subject by reason of such Indemnified Party's execution in good faith of its duties pursuant to the discretion, power and authority conferred on such Person by this Trust Agreement, the Plan or the Confirmation Order; provided,



however, that the indemnification obligations arising pursuant to this section shall not indemnify any Indemnified Person for any actions taken by an Indemnified Person which constitute bad faith, fraud, willful misconduct, gross negligence, willful disregard of his or her duties hereunder, or willful material breach of the Plan. Satisfaction of any obligation of an Indemnified Person arising pursuant to the terms of this Section 5.2 shall be payable only from the Trust Assets and such right to payment shall be prior and superior to any rights of Beneficiaries to receive a Distribution of the Trust Assets.

5.3     **No Liability for Acts of Predecessor Trustees.** No successor Trustee shall be in any way liable for the acts or omissions of any predecessor Trustee unless a successor Trustee expressly assumes such responsibility.

5.4     **Reliance by Trustee and Directors on Documents, Mistake of Fact or Advice of Counsel.** Except as otherwise provided in this Trust Agreement, the Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Trustee, as the case may be, to be genuine and to have been presented by an authorized party. The Trustee shall not be liable if it acts based on a mistake of fact before having actual knowledge of an event or for any action taken or suffered by such person if such person has reasonably relied upon the advice of counsel or other professionals engaged by the Trustee in accordance with this Trust Agreement.

5.5     **Insurance.** The Trustee may purchase errors and omissions insurance for himself (and any Trustee Firm) with regard to any liabilities, losses, damages, claims, costs and expenses such Person may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its



fraud, gross negligence or willful misconduct, with respect to the implementation and administration of the Plan and this Trust Agreement.

## ARTICLE VI

## DUTIES OF TRUSTEE

6.1     **General**. The Trustee shall have all duties specified in the Plan, the Confirmation Order and this Trust Agreement as being the responsibility of the Trustee.

6.2     **Books and Records**. The Trustee shall maintain, in respect of the Liquidating Trust, books and records relating to the Trust Assets, income realized therefrom and expenses of and claims against or assumed by the Liquidating Trust, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Trust Agreement, the Plan or the Confirmation Order, nothing in this Trust Agreement is intended to require the Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for making any payment or Distribution out of the Trust Assets.

6.3     **Asset Valuation.** As soon as practicable after the Effective Date, the Trustee shall apprise the Beneficiaries of the value of the Trust Assets. The valuation shall be used consistently by all parties (including the Trustee and Beneficiaries) for all federal income tax purposes. Any dispute regarding the valuation of Assets shall be resolved by the Bankruptcy Court.

6.4     **Interim Reports to Court.** Beginning with a date which is fifteen (15) days after the end of the first full month following the Effective Date, and continuing on the fifteenth (15th) day after the end of each succeeding quarter until the Final Distribution Date, the Trustee will file written reports (the "*Liquidating Trustee Accounting Reports*") with the Bankruptcy Court.



The Liquidating Trustee Accounting Reports, subject to any confidentiality or attorney work product privilege, will provide information on collections and disbursements, administrative costs, settlements, cash on hand or deposit and the Trustee's ongoing efforts to administer the Liquidating Trust.

6.5     **Final Report To Court Prior to Final Distribution.** Before making his Final Distribution, the Trustee shall file a written report with the Bankruptcy Court (which report shall constitute the final accounting of the Liquidating Trust) showing the assets administered, the distributions made by the Trustee and the Final Distributions to be made by the Trustee (the "*Final Liquidating Trustee Accounting Report*"). The Trustee shall provide notice by regular, first-class mail to all Beneficiaries of the filing of the Final Liquidating Trustee Accounting Report. Any Beneficiary who fails to file and serve on the Trustee a written objection to any Liquidating Trustee Accounting Reports or to the Final Liquidating Trustee Accounting Report within twenty (20) days after such report or account is filed shall be deemed to have assented thereto and approved the contents thereof. Any objection to any report or accounting shall be resolved by the Bankruptcy Court. If no objection is filed to the Final Liquidating Trustee Accounting Report within the time frame set forth above, then, upon making the Final Distribution in the manner set forth in the Final Liquidating Trustee Accounting Report, the Trustee and all Liquidating Trustee Professionals shall be: (a) fully discharged of their duties hereunder and under the Liquidating Trust Agreement; and (b) fully discharged and released from all duties, liabilities and obligations of every kind and nature to the Beneficiaries, except as is expressly set forth in this Trust Agreement to the contrary; provided, however, that the foregoing shall not relieve the Trustee from liability for gross negligence, fraud, willful

3/19/2020

misconduct, self-dealing or breach of fiduciary duty in the conduct of its duties as set forth herein.

6.6    **Final Accounting of Trustee Upon His Termination.** Within thirty (30) days after a Trustee's announced resignation or removal, such Trustee of former Trustee, as the case may be, shall render a final accounting (the "***Outgoing Trustee's Final Accounting***") containing at least the following information:

(a)    A description of the Trust Assets as of the last day of such Trustee's service hereunder;

(b)    A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Liquidating Trust and the Trust Assets during the Trustee's term of service, including their source and nature;

(c)    Separate entries for all receipts of principal and income;

(d)    The ending balance of all Trust Assets as of the date of the Trustee's accounting, including the Cash balance on hand and the name and location of the depository where it is kept; and

(e)    All known liabilities owed by the Liquidating Trust.

The Outgoing Trustee's Final Accounting shall be presented to the Bankruptcy Court for approval. The United States Trustee shall give notice that the Outgoing Trustee's Final Accounting has been filed and an opportunity to have a hearing on the approval of the Outgoing Trustee's Final Accounting and the discharge of the Trustee.

*[signature]* 3/19/2020

## ARTICLE VII

### BENEFICIARIES

7.1    **Effect of Death, Incapacity or Bankruptcy of Beneficiary**. The death, incapacity or bankruptcy of a Beneficiary during the term of the Liquidating Trust shall not operate to terminate the Liquidating Trust, nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Trust Assets or for a petition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Trust Agreement or in the Liquidating Trust.

7.2    **Standing of Beneficiary.** Except as expressly provided in this Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Trustee) upon or with respect to the Trust Assets.

7.3    **Release of Liability by Beneficiary**. A Beneficiary shall not release the Trustee from any duty, responsibility, restriction or liability as to such Beneficiary that would otherwise be imposed under this Trust Agreement unless such relief is approved by Final Order of the Bankruptcy Court.

## ARTICLE VIII

### DISTRIBUTIONS

8.1    **Distributions from Trust Assets.** All Distributions of Trust Assets made by the Trustee to the Beneficiaries shall be made only in accordance with the Plan, the Confirmation Order and this Trust Agreement, and only to the extent that the Liquidating Trust has sufficient Trust Assets (or income and proceeds realized from the Trust Assets) from which to make such

payments in accordance with and to the extent provided for in the Plan, the Confirmation Order and this Trust Agreement. Any Distribution made by the Trustee in good faith and if required hereby shall be binding and conclusive on all interested parties.

8.2     **Distributions; Withholding.** To the extent that sufficient funds are contained in the Liquidating Trust from which to make a Distribution, the Trustee may make Distributions on an interim basis to the Beneficiaries from all net Cash income and all other Cash held in the Liquidating Trust; provided, however, that the Liquidating Trust may retain such amounts (a) as are reasonably necessary to meet contingent liabilities of the Liquidating Trust, (b) to pay reasonable administrative expenses including, without limitation, the compensation to and reasonable, actual and necessary costs and expenses of the Trustee, including, without limitation, the fees and expenses of Trustee's Professionals, in connection with the performance of the Trustee's duties in connection with this Trust Agreement, and (c) to satisfy all other liabilities incurred or assumed by the Liquidating Trust (or to which the Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order and this Trust Agreement. All such Distributions shall be made as provided, and subject to any withholding, in this Trust Agreement, the Plan or the Confirmation Order. Additionally, the Trustee may withhold from amounts distributable to the Beneficiaries any and all amounts, determined in the Trustee's reasonable sole direction, to be required for any trust expense or by any law, regulation, rule, ruling, directive or other governmental requirement. In no event shall the Trustee be required to make any Distribution if the same would be administratively burdensome or unreasonably expensive in relation to the dollar amount of the total cash to be distributed.

Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such

disputes by settlement or Final Order. Unless otherwise agreed by the Trustee, a Beneficiary who holds both (an) Allowed Claim(s) and (a) Disputed Claim(s) will not receive a Distribution on account of either the Allowed Claim or the Disputed Claim, nor accrue interest thereon, unless the Allowed Claim is at least three hundred percent (300%) or more than the amount of the filed amount of the Disputed Claim or until such Disputed Claim is resolved by settlement or Final Order.

8.3    **Non-Cash Property.** If, in the Trustee's judgment, any Trust Asset which is not cash cannot be sold in a commercially reasonable manner, the Trustee shall have the right to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Trustee. Until such time as the Bankruptcy Case is closed, notice of such sale, transfer or abandonment shall be filed with the Bankruptcy Court. Except in the case of willful misconduct, no party in interest shall have a cause of action against the Liquidating Trust, the Trustee, or any partner, director, officer, employee, consultant of or professional employed by the Trustee in connection with the Liquidating Trust arising from or related to the disposition of non-Cash property in accordance with this Section 8.3

8.4    **Method of Cash Distributions.** Any Cash Distribution to be made by the Liquidating Trust pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Trustee, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

8.5    **Distributions on Non-Business Days.** Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

3/19/2020

8.6     Any Beneficiary that fails to return a W9 form to the Trustee within 60 days of a request of a W9 by the Trustee, in writing, shall forfeit its right to Distribution and shall cease being a Beneficiary of the Trust, unless otherwise agreed by the Trustee.

8.7     All Distributions to Beneficiaries made in the form of a check that are not negotiated within 90 days of the date of such Distribution shall be forfeited.

## ARTICLE IX

## TAXES

**9.1     Income Tax Status.** Consistent with the Revenue Procedure 94-45, 1994-28 I.R.B. 124, the Liquidating Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Sections 671-677 of the Internal Revenue Code. As such, the Beneficiaries will be treated as both the grantors and the deemed owners of the Liquidating Trust. Any items of income, deductions and credit loss of the Liquidating Trust shall be allocated for federal income tax purposes, to the Liquidating Trust.

**9.2     Tax Returns.** In accordance with Treasury Regulation Section 1.671-4(a), the Liquidating Trust shall file with the Internal Revenue Service annual tax returns on Form 1041 together with the separate statements required under such Regulation. In addition, the Trustee shall file in a timely manner such other tax returns as are required by applicable law and pay any taxes shown as due thereon.

**9.3     Withholding of Taxes Related to Liquidating Trust Operations.** To the extent that the operation of the Liquidating Trust or the liquidation of the Trust Assets creates a tax liability in excess of applicable net operating losses, the Liquidating Trust shall promptly pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Liquidating Trust payable from the Trust Assets or the proceeds of Trust Assets. The

*MM*
3/19/2020

Trustee may reserve a sum, the amount of which shall be determined by the Trustee in its sole discretion, sufficient to pay the accrued or potential tax liability arising out of the operations of the Liquidating Trust or the operation of the Trust Assets. In the exercise of discretion and judgment, the Trustee may enter into agreements with taxing authorities or other governmental units for the payment of such amounts as may be withheld.

No later than the time required under applicable law after the end of each calendar year, the Trustee shall cause to be filed all required federal, state and other tax returns. As the Trust is to be treated as a Grantor Trust, all items of income will be treated as income subject to tax on a current basis. Further, for federal income tax purposes, all items of income, gain, loss, and deduction of the Trust for such calendar year shall be allocated to all Beneficiaries on a pro rata basis, based on either their Allowed Claim(s) or, in the case of Disputed Claims, the greater of (a) the amount of the claim as scheduled by the Debtor in its bankruptcy Schedules and Statement of Financial Affairs filed by the Debtor in the Chapter 11 Case and (b) the amount set forth in any proof of claim filed by the Beneficiary in the Chapter 11 Case. Such pro-rata allocation will be calculated as of the end of each calendar year and, with respect to each Disputed Claim, until such claim either becomes an Allowed Claim or is disallowed. Further, such pro rata allocation in regard to Disputed Claims shall not in itself entitle any Beneficiary to any payment and shall be irrespective of whether any payments are actually disbursed to such Beneficiary.

## ARTICLE X

## TERMINATION OF TRUST

9.1 **Maximum Term.** The Liquidating Trust shall commence as of the Effective Date shall continue and remain in full force and until (i) the conclusion by settlement or Final Order of

19

all pending litigation to which the Trustee is a party and, in the sole opinion and discretion of the Trustee, the exhaustion of all efforts to collect thereon, (ii) all of the Trust Assets are liquidated or disposed of in accordance with the Plan and this Trust Agreement and all of the funds in the Liquidating Trust have been completely distributed in accordance with the Plan and this Trust Agreement, (iii) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and all time periods and all opportunity for such authorities to challenge such final tax returns have expired, and (iv) the order closing the Chapter 11 Case is a Final Order (the "*Trust Term*").

**9.2** **Distribution Upon Termination.** Upon the termination of the Liquidating Trust, the Trustee shall distribute the remaining Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, Confirmation Order and this Trust Agreement.

**9.3** **Winding Up and Discharge of the Trustee.** For the purposes of winding up the affairs of the Liquidating Trust at its termination, the Trustee shall continue to act as Trustee until its duties have been fully discharged. After doing so, the Trustee, its agents and employees and the Directors, their agents and employees shall have no further duties or obligations hereunder, except as required by this Trust Agreement, the Plan, or applicable law concerning the termination of a trust. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its agents and employees of any further duties, discharging the Trustee and releasing its bond, if any.

## ARTICLE XI

## ADMINISTRATIVE EXPENSES

**11.1** **Trust Administrative Expenses.** The cost and expenses of the Liquidating Trust, including, without limitation, the compensation to and the reimbursement of reasonable, actual

and necessary costs, fees and expenses of the Trustee, including, without limitation, the fees, costs and expenses of the Trustee's Professionals, in connection with the performance of the Trustee's duties in connection with this Trust Agreement, shall be paid from the Trust Assets.

At the time of making final distributions to Beneficiaries, the Trustee may reserve amounts from the Trust Assets, that the Trustee deems necessary, to wind down the Trust and close the Bankruptcy Case. In the event that the Trustee is holding funds after making the final distributions to Beneficiaries, on account of excess reserved amounts or distributions returned to the Trust due to Beneficiaries failing to negotiate distributions issued by check, the Trustee may donate such remaining funds to a not for profit organization of its choosing.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**12.1    Amendments.** The Trustee may propose to the Bankruptcy Court the modification, supplementation or amendment of this Trust Agreement. Such modification, supplementation or amendment shall be in writing and filed with the Bankruptcy Court. No modification, supplementation or amendment of this Trust Agreement shall be effective except upon a Final Order of the Court.

**12.2    Waiver.** No failure by the Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

**12.3    Cumulative Rights and Remedies.** The rights and remedies provided in this Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

3/19/2020

**12.4    Bond.** The Liquidating Trustee shall maintain a bond in favor of the estate in an amount not less than 150% of the cash held by the Liquidating Trustee as of the Effective Date, and in no event in an amount less than $75,000, which will be paid by the estate for the benefit of holders of Allowed Claims of the estate.

**12.5    Irrevocability.** The Liquidating Trust is irrevocable.

**12.6    Relationship to the Plan.** The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and, therefore, this Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order shall control.

**12.7    Division of Trust.** Under no circumstances shall the Trustee have the right or power to divide the Liquidating Trust unless authorized to do so by the Bankruptcy Court.

**12.8    Governing Law.** This Trust Agreement shall be governed and construed in accordance with the laws of the State of Florida, without giving effect to rules governing the conflict of laws.

**12.9    Retention of Jurisdiction.** Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidating Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Trustee or any professional retained by the Trustee or the Liquidating Trust, in each case in its capacity as such. Each party to this Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the

*MMJ*
*3/19/2020*

Bankruptcy Court in any action to enforce, interpret or construe any provision of this Trust Agreement or of any other agreement or document delivered in connection with this Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that (i) any action to enforce, interpret or construe any provision of this Trust Agreement will be brought only in the Bankruptcy Court and (ii) all determinations, decisions, rulings and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to reargument or reconsideration. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, to be sent to its address set forth in Section 12.12 of this Trust Agreement may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret or construe any provision of this Trust Agreement.

**12.10  Severability.** In the event that any provision of this Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

**12.11  Limitation of Benefits.** Except as otherwise specifically provided in this Trust Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

3/19/2020

23

**12.12   Notices.** All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person or by facsimile with an electromechanical report of delivery or if sent by overnight mail or by registered or certified mail with postage prepaid, return receipt requested, to the following addresses.

<u>If to the Debtor</u>:

Moses Bensusan, President
Costa Hollywood Property Owner, LLC
777 North Ocean Drive
Hollywood, FL 33019

With a copy to:
Meland Russin & Budwick, P.A.
200 South Biscayne Boulevard, Suite 3200
Miami, FL 33131
Attn: Peter D. Russin, Esq.
Attn: James C. Moon, Esq.

<u>If to the Trustee</u>:

Maria Yip
Yip Associates
2 S. Biscayne Blvd., Suite 2690
Miami, FL 33131

Notice of any application to the Bankruptcy Court shall also be provided to the Office of the United States address as follows:

<u>Office of the United States Trustee</u>:
51 S.W. First Avenue, Suite 1204
Miami, Florida
Attn: Johanna P. Armengol, Esq.

The parties may designate in writing from time to time other and additional places to which notices may be sent. All demands, requests, consents, notices and communications shall be deemed to have been given (a) at the time of actual delivery thereof, (b) if given by certified

or registered mail, five (5) business days after being deposited in the United States mail, postage prepaid and properly addressed, or (c) if given by overnight courier, the next business day after being sent, charges prepaid and properly addressed.

**12.13  Further Assurances.** From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Trust Agreement, and to consummate the transactions contemplated hereby.

**12.14  Integration.** This Trust Agreement, the Plan and the Confirmation Order constitute the entire agreement with, by and among the parties, and there are no representations, warranties, covenants or obligations except a set forth herein, in the Plan and in the Confirmation Order. This Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise provided herein, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

**12.15  Successors or Assigns.** The terms of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**12.16  Interpretation.** The enumeration and section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof. Unless the context otherwise requires, whenever used in this Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include

*Mary*
3/19/2020

the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations. The words "herein," "hereby," and "hereunder" and words with similar import, refer to this Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**12.17 Counterparts.** This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**Costa Hollywood Property Owner, LLC**

By: _____


**Maria Yip, Liquidating Trustee**

_Maria M. Yip, Trustee_
_Effective Upon Confirmation._

the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations. The words "herein," "hereby," and "hereunder" and words with similar import, refer to this Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

   **12.17  Counterparts.** This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

   IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**Costa Hollywood Property Owner, LLC**

By:  _____

**Maria Yip, Liquidating Trustee**

_____

## <u>List of Potential Litigation Targets</u>

Aimbridge Hospitality, LLC
Booking.com B.V.
Evolution Hospitality, LLC
Expedia Inc.
Guest supply, Inc.
Hotelier linen Services
Sabre Hospitality Solutions
Unique Hotel Solutions
Yes Hotel Services, Inc.
AFCO Insurance Premium Finance
ASG Maintenance Group LLC
Boucher Brothers Hollywood Beach
City of Hollywood
Comcast
Florida Power & Light Co
Frank, Weinberg & Black, P.L.
Johnson Controls Fire Protection, LP
Liberty Grande LLC
Beauchamp Construction Co., Inc.
Alexey Burya
Costa Investors Manager, LLC
Costa Investors, LLC
Airstron
Debtor's management, directors, owners, officers and/or executives
Entities affiliated with the Debtor
9217-2659 Quebec Inc.
Aachen LLC
Abimat LLC
ADK Holdings LLC
AIGUL LLC
Alegria, LLC
Alejandro Pieve
Alexandra Pelts
Amab Investments LLC
Amab Investments LLC
Anatoly Vasilyev
Andreanna Rentals  LLC
Anmary LLC
Athos Diacono LLC
Belet Investments, LLC
BERECOSTA 333 LLC
Betje Investments, LLC
Blanca and Robertilio Bermudez
Blue Jasmine Investments, LLC

Exhibit B

BOSS Matias Investments
Bugada and Carneiro LLC
Buttonwood Partners Asset Management LLC
Casa Hollywood LLC
Celebration Multiservices LLC
Chaceada LLC
Chaceada LLC
CHC Investment N417 LLC
CHC Investments N526 LLC
CHN528, LLC
CISS Inventment Corporation
Condos Miami LLC
Costa Hollywood N229 LLC
Costa Hollywood S303 Inc.
Costa Hollywood S317, LLC
Costa Hollywood S328 LLC
Costa Hollywood S330 LLC
Costa Hollywood S415 LLC
Costa Hollywood S419 LLC
Costa Hollywood S420 LLC
Costa Hollywood S427 LLC
Costa Hollywood S428 LLC
Costa Hollywood S515 LLC
Costa Hollywood S532 LLC
Costa Jai 18 LLC
Costa Monrovia Properties, LLC
Cumbre CP LLC
Cumbre CP LLC
Dania International Investment,LLC
Daniel Ades and Jose Gonzalez
Daniel Ades and Sol Belen Ades
Dark Hole LLC
Demax LLC
Derland Corporation
Double P Group LLC
Dream Properties FL, LLC
Dream Properties FL, LLC
Duo Soli LLC
Eduardo Eleicegui
El Sheik Corp
Elvigia Paredes de Jauregui
Emphrye Networks Corp
Estragiz LLC
FASEJU LLC
Flario Investments, LLC
FLDO LLC

Future Investors Group LLC
Gabriela Eleonora Borroni
Gaby Kociak
Gavin Henry
Gogrow Consulting, LLC
Guimaraes LLC
H L Alves Properties, LLC
H L Alves Properties, LLC.
Haim Tbeili
Hector Suazo and Maritza Suazo
Heleana Corp
High Horizons, LLC
Hilda Cristina Tamayo and Juan Saldarria
Holly Beach Inc.
Hollywood Rental Properties Inc.
Hollywood Rental Properties Inc.
Illusion Investments LLC
Investissement Pierre Brisson, Inc.
Isaac Dahan
Island PropertyEnterprises LLC
J Maia, LLC
JAI Properties Corp
JAI Properties Corp
JCL Costa Holding Corp
Jesus Manuel Campos Lopez
Johanne Lebrun
Jorge Salvat
Juan Ignacio Maggi
Kalevala, LLC
Kaminka LLC
Kellbrick LLC
Kissian Inc.
KSA Properties LLC
Landflex Corporation
Leaf Group Investment LLC
Leaf Group Investment LLC
Los 3 Panas LLC
Los Dos Jugadores
Los Nobles 6 LLC
Lulauma LLC
Lumath USA LLC
Lumath USA, LLC
Luz Marina Cevallos
Mabe Group LLC
Maleylu, LLC
Marcelo Goldberg

Marco Antonio Lopes de Almeida
Marco Antonio Moura Esteves
Mariana Mincev
Mark Andre Dayan Management LCC
Mark Tesoreiro
Martusan Investments LLC
MECG Commercial 2 LLC
METRUSA LLC
Miami Real Exposure, LLC
Migajas LLC
MOGF Hollywood Inc.
MOGF Hollywood Inc.
MOGF Hollywood Inc.
MOGF Hollywood Inc.
MRE7C LLC
Nakamura Mattedi
New Edge Properties LLC
New Know Consulting LLC
NGM Management LLC
Nicholas Bays and Geraldeline Bays
Olantalia LLC
Oleg Mergasov
OMCH Properties Inc
Palm Beauty of Florida, LLC
Panflona Corp
Paraggi Group LLC
Patricia Abate
Patriot Saha, LLC
Pavel Vasilyev
Perkins 99 Corp
Punta Colorada LLC
Quadrex 1, LLC
Queen International Services, LLC
Rapallo Group, LLC
RBP Management Partners, Inc.
RBP Management Partners, Inc.
RBP Management Partners, Inc.
Real Estate Hope LLC
Richard's Holding LLC
Robea LLC
Roberto Melo
Rodsol Investments Corp
Rogerio Silva P.A.
Ron Investments USA LLC
Rubi II Investments LLC
Sagek Inc.

Salomon Resler
San Clau, Inc.
San Franscisco Partners, LLC
Sandro Santarossa and Anna Manna-Santaro
Sangetha Rajalakshmi Ganesan
Segra Grup LLC
Seria Manisalu LLC
Shelton Florida LLC
Shelton Florida LLC
Slampol LLC
Slara Investment LLC
Sofel Investments LLC
Solari Company LLC
Sonkat LLC
Sonya R. Chada
Spital Fields LLC
Sunburst  LLC
The Blue Investments PFFM, LLC
The Meeting Group Corporation
Tomafabe, LLC
Trafalgar LLC
Vanuatu LLC
Veccal Group, LLC
VIFA Investments, LLC
VNK 430 LLC
Whats Contact LLC
Whats Contact LLC
Wildcat Highlands, LLC
William Scott Fitzpatrick
Ximec I, LLC
Ytafres LLC

**SUMMARY OF FEASIBILITY AND LIQUIDATION ANALYSIS**

| Assets | C11 Value | C7 Value |
|---|---|---|
| Sale Proceeds (Note 1) | $ 43,000,000.00 | $ 43,000,000.00 |
| Professional Claims' Fund (Note 2) | $ 400,000.00 | $ - |
| Unsecured Creditors' Fund (Note 3) | $ 475,000.00 | $ - |
| Liquidating Trust Fund (Note 4) | $ 200,000.00 | $ - |
| Litigation Claims Recovery (Note 5) | $ - | $ - |
| Total Assets: | $ 44,075,000.00 | $ 43,000,000.00 |

| Liabilities | C11 Value | C7 Value |
|---|---|---|
| Property Transfer Taxes (Note 6) | $ - | $ 301,000.00 |
| Trustee's Statutory Fee (Note 7) | $ - | $ 1,355,570.00 |
| Liquidating Trust Administrative Expenses | $ 200,000.00 | |
| Administrative Expense Claims (Note 8) | $ - | $ 200,000.00 |
| Professional Claims (Note 9) | $ 400,000.00 | $ 400,000.00 |
| Priority Tax Claims | $ 21,300.00 | $ 21,300.00 |
| Class 1: Secured Tax Claims | $ 1,077,000.00 | $ 1,077,000.00 |
| Class 2: Allowed Secured Claim of City of Hollywood | $ 10,604.54 | $ 10,604.54 |
| Class 3: Allowed Secured Claim of United Leasing, Inc. (Note 10) | $104,799.00 | $ 104,799.00 |
| Class 4: Allowed Secured Claim of 777 N. Ocean Drive, LLC | $ 47,190,000.00 | $ 47,190,000.00 |
| Class 5: Allowed Secured Mechanic's Lien Claims | $ 8,053,000.00 | $ 8,053,000.00 |
| Class 6: Allowed Other Secured Claims | $ 720,000.00 | $ 720,000.00 |
| Class 7: Allowed Priority Deposit Claims | $ 6,050.00 | $ 6,050.00 |
| Class 8: Allowed General Unsecured Claims (Note 11) | $ 8,500,000.00 | $ 8,500,000.00 |
| Class 9: Equity Interests in the Debtor | $ - | $ - |
| Total Liabilities: | $ 66,282,753.54 | $ 67,939,323.54 |

| Distribution | C11 Value | C7 Value |
|---|---|---|
| Property Transfer Taxes | $ - | $ 301,000.00 |
| Trustee's Statutory Fee | $ - | $ 1,355,570.00 |
| Liquidating Trust Administrative Expenses | $ 200,000.00 | $ - |
| Administrative Expense Claims | $ - | $ 200,000.00 |
| Professional Claims | $ 400,000.00 | $ 400,000.00 |
| Priority Tax Claims | $ 21,300.00 | $ 21,300.00 |
| Class 1: Secured Tax Claims | $ 1,077,000.00 | $ 1,077,000.00 |
| Class 2: Allowed Secured Claim of City of Hollywood | $ 10,604.54 | $ 10,604.54 |
| Class 3: Allowed Secured Claim of United Leasing, Inc. | $ 104,799.00 | $ 104,799.00 |
| Class 4: Allowed Secured Claim of 777 N. Ocean Drive, LLC | $ 41,786,296.46 | $ 39,529,726.46 |
| Class 7: Allowed Priority Deposit Claims | $ 6,050.00 | $ - |
| Classes 5, 6 and 8 | $ 468,950.00 | $ - |
| Class 9: Equity Interests in the Debtor | $ - | $ - |
| Total Distribution: | $ 44,075,000.00 | $ 43,000,000.00 |

**Purpose of Liquidation Analysis**

This liquidation analysis (the "*Analysis*") was prepared solely for the inclusion in the Disclosure Statement in compliance with the United States Bankruptcy Code. The Analysis involves estimating the proceeds that are expected to be generated in the liquidation of the assets of the Estate and reducing such amount by secured claims, costs of liquidation, post-confirmation administrative claims, administrative expenses and priority claims, to arrive at estimated net proceeds available for distribution to unsecured creditors. The Analysis is based on the assumptions discussed in the notes below.

Exhibit 2

*Continues on Next Page*

**Reservation of Rights**

The Debtor reserves all of its rights in connection with the estimated values of recoveries as set forth herein and the ability to pursue additional claims and causes of action and objections to claims. This analysis shall not be deemed a waiver of or estoppel in connection with such rights.

**Note 1**: In accordance with the Plan and the Secured Lender Sale Motion, the Debtor will seek to sell the Properties to the Secured Lender as the Stalking Horse Bidder, which will initial credit bid in the amount of $43,000,000 (which credit bid may be increased up to the full amount of the Secured Lender's Class 2 Allowed Secured Claim), subject to higher and better offers. Accordingly, in a Chapter 11 scenario, this figure does not represent cash sale proceeds available for distribution. In a Chapter 7 scenario, the Debtor has assumed a similar $43,000,000 purchase price, all of which would be subject to distribution in accordance with priority.

**Note 2**: The Professional Claims' Fund is part of the Secured Lender's Contribution for payment of Allowed Professional Claims in accordance with the Plan. For the purposes of this Analysis, a figure of $400,000 is assumed, however, the actual amount of the Professional Claims' Fund will be based upon the submission of fee applications and Court approval.

**Note 3**: The Unsecured Creditors' Fund is part of the Secured Lender's Contribution for payment of Allowed Priority Claims and Allowed General Unsecured Claims in accordance with the Plan.

**Note 4**: The Liquidating Trust Fund is part of the Secured Lender's Contribution for purposes of funding the Liquidating Trust in accordance with the Plan. As set forth in the Plan, $100,000 of this amount will be contributed by the Secured Lender on the Effective Date, and $100,000 of the funds currently held in esrow by GreenbergTraurig on behalf of Stewart Title Guaranty Company shall be funded upon turnover of such funds to the Estate. The remainder of such recovered funds constitute the Secured Lender's cash collateral.

**Note 5**: For the purposes of this Analysis, in either a Chapter 11 or Chapter 7 scenario, the Debtor assumes that the Estate will not realize any additional recoveries from the prosecution of litigation claims

**Note 6**: Transfer taxes are customarily paid by the seller of property. If the Properties are sold pursuant to the Plan, transfer taxes are avoided pursuant to § 1146(a) of the Bankruptcy Code. However, transfer taxes must be paid at closing if the Properties are sold in a Chapter 7.

**Note 7**: This amount is comprised of the Chapter 7 Trustee's statutory fee formula under § 326 of the Bankruptcy Code and is calculated based on an assumed $42,699,000 disbursement ($43,000,000 less property transfer taxes) in a Chapter 7 case, as well as an additional estimated $50,000.00 for the administrative professional fees of the Chapter 7 trustee.

**Note 8**: This is an assumed figure and presumes that administrative claims will arise as a result of the Debtor discontinuing operations upon conversion to Chapter 7.

**Note 9**: For the purposes of this Analysis, a figure of $400,000 is assumed for the purposes of consistency with the Professional Claims' Fund assumed amount.

**Note 10**: For the purposes of this Analysis, the Debtor assumes that United Leasing Inc.'s Class 3 Claim is higher in legal priority than the Secured Lender's Class 4 Claim and thus will be paid in full from the sale of the Properties.

**Note 11**: This amount does not include any deficiency claims of holders of Allowed Secured Claims resulting from the sale of the Properties.